**MCGUIREWOODS LLP**
David C. Powell
dpowell@mcguirewoods.com
Alicia A. Baiardo
abaiardo@mcguirewoods.com
Anthony Q. Le
ale@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

*Attorneys for Defendant Umpqua Bank*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Shela Camenisch and Dale M. Dean, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Umpqua Bank,<br><br>Defendant. | CASE NO.: 3:20-cv-05905-RS<br><br>Judge Richard G. Seeborg<br><br>**DEFENDANT UMPQUA BANK'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Proposed Order filed concurrently]*<br><br>Date:      January 28, 2021<br>Time:      1:30 p.m.<br>Place:     Courtroom 3<br><br>Complaint Filed:        August 21, 2020 |

-1-

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 28, 2021 at 1:30 p.m., in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Umpqua Bank ("Umpqua") will and hereby does bring this motion seeking an order from the Court dismissing the Complaint of Plaintiffs Shela Camenisch and Dale Dean (collectively, "Plaintiffs").

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs fail to state a claim upon which relief can be granted.  This Motion is based upon this Notice of Motion and Motion to Dismiss, the attached Memorandum of Points and Authorities, any oral arguments by counsel, and upon such other matters as the Court may allow.

DATED: October 30, 2020          **MCGUIREWOODS LLP**


                                 By:  */s/ Alicia A. Baiardo*
                                      Alicia A. Baiardo

                                      *Attorneys for Defendant Umpqua Bank*

1

**TABLE OF CONTENTS**

2

Page

3    MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

4    I.     INTRODUCTION................................................................................................1

5    II.    FACTUAL ALLEGATIONS................................................................................2

6           A.    The Alleged Underlying Scheme Perpetuated by Non-Party Ken Casey .............2

             B.    Umpqua's Alleged Involvement ...........................................................................2

7           C.    Plaintiffs' Failed Investment ...............................................................................3

8           D.    Plaintiffs' Claims Against Umpqua .....................................................................4

9    III.   LEGAL STANDARD ..........................................................................................4

10   IV.    ARGUMENT .......................................................................................................5

11          A.    Plaintiffs' Claims For Aiding and Abetting Fraud Must Be Dismissed Because
                   They Fail to Allege Each of the Required Elements...........................................5

12                1.    Plaintiffs Fail to Allege that Umpqua Had Actual Knowledge of the
                         Scheme ......................................................................................................6

13                      a)    Plaintiffs Cannot Rely on Constructive Knowledge to Establish
14                            Actual Knowledge...................................................................7

15                      b)    Plaintiffs' Allegations of "Customer Due Diligence

                              Obligations" and Purported "Red Flags" Do Not Support
16                            Actual Knowledge...................................................................9

17                2.    Plaintiffs Fail to Allege that Umpqua Substantially Assisted the
                         Scheme or Was a "Substantial Factor" in Causing Plaintiffs' Alleged
18                       Injury .......................................................................................................11

19          B.    Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claims Must
                   Additionally Be Dismissed Because They Do Not Allege Umpqua's Actual
20                 Knowledge of Any Fiduciary Duty Owed to Plaintiffs and a Breach of That
                   Duty.......................................................................................................................14

21   V.     CONCLUSION ...................................................................................................16

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*In re Agape Litig.*,
   773 F. Supp. 2d 298 (E.D.N.Y. 2011).................................................................7

5

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................4

7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................4, 5

8

9

*Berman v. Morgan Keegan & Co.*,
   455 F. App'x 92 (2d Cir. 2012)......................................................................9, 14

10

11

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995)..................................................................................5

12

13

*Casey v. U.S. Bank Nat. Assn.*,
   127 Cal. App. 4th 1138 (2005)....................................6, 7, 8, 9, 10, 12, 13, 15

14

*Chance World Trading E.C. v. Heritage Bank of Commerce*,
   438 F. Supp. 2d 1081 (N.D. Cal. 2005) ......................................................5, 10, 12

15

16

*Cotton v. Wells Fargo Bank N.A.*,
   No. SA CV 10-01758-CJC (RNB), 2011 WL 13227816 (C.D. Cal. Feb. 22, 2011)... 7, 10, 11,
   12, 15

17

18

*Cousins v. Lockyer*,
   568 F.3d 1063 (9th Cir. 2009)..............................................................................4

19

20

*Fiol v. Doellstedt*,
   50 Cal. App. 4th 1318 (1996)..............................................................................12

21

*Groom v. Bank of Am.*,
   No. 8:08–cv–2567–JDW–EAJ, 2012 WL 50250 (M.D. Fla. Jan. 9, 2012) ...........................10

22

23

*Hongying Zhao v. JPMorgan Chase & Co.*,
   No. 17 CIV. 8570 (NRB), 2019 WL 1173010 (S.D.N.Y. Mar. 13, 2019).............................15

24

*Hua Nan Commercial Bank v. HSBC Bank USA, N.A.*,
   No. CV 10-8773 PSG (EX), 2011 WL 13217782 (C.D. Cal. May 19, 2011) .......................14

25

26

*Impac Warehouse Lending Grp. v. Credit Suisse First Bos. Corp.*,
   No. SA CV 04-1234 AHS, 2006 U.S. Dist. LEXIS 101145 (C.D. Cal. June 20, 2006)...........5

27

28

*Isaiah v. JPMorgan Chase Bank, N.A.*,
  No. 16-CIV-21771, 2017 WL 5514370 (S.D. Fla. Nov. 15, 2017) ........................................ 7

*Litson-Gruenber v. JPMorgan Chase & Co.*,
  No. 7:09–CV–056–0, 2009 WL 4884426 (N.D. Tex. Dec. 16, 2009) ................................... 10

*Liu Yao-Yi v. Wilmington Tr. Co.*,
  301 F. Supp. 3d 403 (W.D.N.Y. 2017) .............................................................................. 7

*Lorenz v. E. W. Bancorp, Inc.*,
  No. 215CV06336CASFFMX, 2016 WL 199392 (C.D. Cal. Jan. 14, 2016) ......................... 9

*McFall v. Stacy & Witbeck, Inc.*,
  No. 14-CV-04150-JSC, 2016 WL 6248882 (N.D. Cal. Oct. 26, 2016) ............................... 15

*In re Meridian Asset Mgmt., Inc.*,
  296 B.R. 243 (Bankr. N.D. Fla. 2003) ............................................................................ 15

*Neilson v. Union Bank of California, N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...................................................................... 7, 14

*New World Mortgage v. TD Bank*,
  No. CV 11-00755 DMG, 2012 WL 13014965 (C.D. Cal. Jan. 3, 2012) .............................. 6

*In re Refco Inc. Sec. Litig.*,
  No. 07-MD-1902 (JSR), 2011 WL 13168450 (S.D.N.Y. Dec. 8, 2011) .............................. 13

*Rosales v. Wells Fargo Bank, N.A.*,
  No. 13-CV-01316-BLF, 2014 WL 4770572 (N.D. Cal. Sept. 24, 2014) .............................. 5

*Rosner v. Bank of China*,
  528 F. Supp. 2d 419 (S.D.N.Y. 2007) ............................................................................ 13

*Saunders v. Superior Court*,
  27 Cal. App. 4th 832 (1994) ...................................................................................... 5, 12

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2d Cir. 2005) ...................................................................................... 12, 14

*Stern v. Charles Schwab & Co.*,
  No. CV-09-1229-PHX-DGC, 2009 U.S. Dist. LEXIS 96697 (D. Ariz. Oct. 15, 2009) ......... 14

*Stoutt v. Banco Popular de Puerto Rico*,
  158 F. Supp. 2d 167 (D.P.R. 2001) .................................................................................. 6

*Strauss v. Credit Lyonnais, S.A.*
  No. CV-06-0702 (CPS), 2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006) ............................... 13

*In re Textainer P'ship Sec. Litig.*,
  No. C-05-0969 MMC, 2005 WL 3801596 (N.D. Cal. Dec. 12, 2005) ............................... 13

*Wiand v. Wells Fargo Bank, N.A.*,
  938 F. Supp. 2d 1238 (M.D. Fla. 2013) ................................................................. 8

*York v. Bank of Am.*,
  No. 14-CV-02471-RS, 2016 WL 5815264 (N.D. Cal. Oct. 5, 2016)........................ 4

**Statutes**

31 U.S.C. § 5318(g)(3)(A) .......................................................................................... 6

12 C.F.R. § 21.11(k) ................................................................................................... 6

12 C.F.R. § 208.62(j) .................................................................................................. 6

**Federaul Rules**

Fed. R. Civ. P. 9(b).............................................................................................. 5, 11

Fed. R. Civ. P. 12(b)(6)......................................................................................... 4, 5

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES
CASE NO. 3:20-CV-05905-RS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.      INTRODUCTION

Plaintiffs Shela Camenisch and Dale Dean (collectively, "Plaintiffs") bring this putative class action complaint against Umpqua Bank ("Umpqua") alleging that it aided and abetted a Ponzi scheme conceived by non-parties Kenneth Casey ("Casey"), and his entities Professional Financial Investors, Inc. ("PFI") and Professional Investors Security Fund, Inc. ("PISF"). Plaintiffs' Complaint is based upon their allegations that Casey promised the putative class of investors "safe" real estate investments with "steady returns at above-market rates" when, in reality, Casey used investor money to personally enrich himself and pay existing investors through new investors' contributions (the "Scheme"). Plaintiffs now seek to hold Umpqua liable for their failed investment. But their Complaint fails because they do not—and cannot – allege facts showing that Umpqua actually knew about the scheme or substantially assisted with Casey's scheme as required to maintain their two claims for aiding and abetting fraud and breach of fiduciary duty.

*First*, both of Plaintiffs' aiding and abetting claims fail because they do not allege any facts demonstrating Umpqua had *actual knowledge* of the alleged Scheme, including *how*, *when*, or *who* discovered the Scheme at Umpqua. To the contrary, Plaintiffs simply allege that Umpqua's knowledge of the Scheme was "inevitable," and assert a series of conclusory allegations purporting to show that Umpqua *should have known* of the Scheme based upon alleged "red flags" and inadequate due diligence pursuant to "know your customer" ("KYC") obligations to prevent wrongdoing that ultimately harmed Plaintiffs. However, the law neither requires Umpqua to police PFI and PISF's accounts, nor manage its clients' businesses for them. These generalized allegations are insufficient to allege actual knowledge for an aiding and abetting claim as a matter of law. The Court should dismiss Plaintiffs' claims on these grounds alone.

*Second*, Plaintiffs' aiding and abetting claims additionally fail because Plaintiffs cannot show that Umpqua *substantially assisted* Casey's Scheme as required to maintain these claims. Their reliance on a single generalized allegation that Umpqua's routine "banking assistance" of "receiving" funds from investors and "transferring" those funds into PFI and PISF's accounts falls far short. Because Plaintiffs' allegations do not show that Umpqua's actions were a "substantial

-1-

factor" in causing Plaintiffs' injury, Plaintiffs cannot maintain their aiding and abetting claims.

For these reasons, and as further detailed below, these deficiencies are fatal to Plaintiffs' aiding and abetting claims against Umpqua.  Accordingly, Umpqua respectfully requests that the Court dismiss Plaintiffs' entire complaint without leave to amend given that these deficiencies cannot be cured by amendment.

## II.    FACTUAL ALLEGATIONS

### A.    The Alleged Underlying Scheme Perpetuated by Non-Party Ken Casey

Plaintiffs allege that Casey operated a Ponzi scheme through his two companies: PISF and PFI.  ECF No. 1 ("Compl.") ¶ 13.  Casey founded PISF in 1983 and served as its sole shareholder, officer, and director until his death on May 6, 2020.  *Id*. ¶ 12-13.  Casey founded PFI in 1990 and served as its sole shareholder, officer, and director until 1998.  *Id.* ¶ 13.  In 1998, Casey "relinquished his corporate position and placed his shares in an irrevocable trust for his ex-wife, Charlene Albanese."  *Id.*  According to Plaintiffs, Casey "continued to exercise *de facto* control over PFI until his death.  *Id.* (emphasis in original).

Casey was a public accountant until his certificate was revoked in 1997 for felony convictions of fraud and tax evasion. *Id.* ¶ 11.  Casey died on May 6, 2020.  *Id.* ¶ 12.  When Casey died, the executor of his estate learned that "Casey's criminal activity did not stop in 1997" and that he had also "operated a decades-long Ponzi scheme through which he defrauded more than 1,000 victims . . . out of hundreds of millions of dollars." *Id.*

Plaintiffs allege that Casey operated a Ponzi scheme and defrauded more than a thousand investors by embezzling millions of dollars to personally enrich himself.  Compl. ¶ 14. The investors were promised steady returns at above-market rates for their investments in PFI and PISF's real estate.  *Id.* ¶¶ 15-16.  Plaintiffs allege that instead of being paid from the real property's rental income and capital appreciation, "existing investors were paid in large part through new investors' contributions."  *Id.* at ¶ 16-17.  Plaintiffs allege that "Casey's Ponzi scheme is likely to cost investors $100 million or more."  *Id.* ¶ 22.

### B.    Umpqua's Alleged Involvement

Plaintiffs contend that Umpqua's "know your customer" and "customer due diligence

obligations" should have alerted Umpqua to "red flags" and revealed that Casey operated a Ponzi scheme and personally enriched himself. *Id.* ¶¶ 24-26.   Plaintiffs also allege that Umpqua's knowledge of the Scheme "was an inevitable consequence of several factors that made the scheme obvious to someone in Umpqua's position." *Id.* ¶ 27.   Plaintiffs allege the following facts, taken together, demonstrate Umpqua's knowledge of the Scheme: Casey's companies were among Umpqua's largest clients (*id.* at ¶ 27(b)); Casey was a convicted felon (*id.* at ¶ 27(c)); Casey managed PFI and PISF, including its bank accounts that were maintained at Umpqua, and did not use outside accounting firms (*id.* at ¶¶ 27(a), (d)-(e), (f)); PFI and PISF did not provide Umpqua with any SEC filings (*id.* at ¶ 27(g), or any perfected security interest forms (*id.* at ¶ 27(h)); PFI and PISF had poor corporate governance and business dealings[1]; and Casey's death, the suspension of payments to existing investors, and PFI and PISF's bankruptcy made the Scheme "obvious" (*id.* at ¶ 27(l)).

Plaintiffs' conclusory allegations fail to show with the requisite particularity that Umpqua had "actual knowledge" of the Scheme. *See generally* Compl.   Plaintiffs allege that Umpqua knew of the fraud, but "chose to profit from—rather than expose—the illicit business." *Id.* ¶ 28.   Plaintiffs allege that Umpqua provided Casey with "banking assistance" and "Umpqua received investor funds into PFI and PISF's accounts and transferred those funds to help PFI and PISF meet its monthly obligations to existing investors." *Id.* at ¶ 29.

## C.   Plaintiffs' Failed Investment

The named Plaintiffs, Shela Camenisch (wife) and Dale Dean (husband), now reside in Richmond, Virginia.  Compl. ¶ 31.   They allege that they invested $297,450 collectively between March 19, 2020 and April 3, 2020.  *Id.*. ¶¶ 31, 33.   Specifically, "Camenisch invested $145,600 through her self-directed IRA, Dean invested $51,850 through his self-directed IRA, and the couple jointly invested another $100,000." *Id.* ¶ 33.   According to the Complaint, Neither

---

[1] Plaintiffs allege PFI and PISF provided investment offerings secured by collateral with little to no value (*id.* at ¶ 27(i)), required new investor money to meet monthly obligations (*id.* at ¶ 27(j)), commingled investor funds, used new investor funds to pay existing investors, and used investor funds to pay Casey's personal expenses (*id.* at ¶ 27(k)).

1   Camenisch nor Dean knew that they were investing in a Ponzi scheme, that the collateral for their

2   investments were "worthless" or "nearly worthless," or that "PISF did not have sufficient capital

3   to pay its monthly obligations to them without an influx of money from new investors." *Id.* ¶ 36.

4   The named Plaintiffs allege that as a result of the Scheme, they "lost a substantial portion of their

5   investments." *Id.* ¶ 38.

6       **D.      Plaintiffs' Claims Against Umpqua**

7           On August 21, 2020, Plaintiffs filed a complaint against Umpqua on behalf of themselves

8   and a putative class alleging two claims for aiding and abetting fraud and breach of fiduciary duty

9   on the basis that Umpqua substantially assisted the Scheme by receiving and transferring investor

10  funds into and out of PFI and PISF's accounts. *See generally* Compl.  Plaintiffs seek to certify a

11  class of similarly situation persons described as "[a]ll persons who invested money with and/or

12  loaned money to Kenneth J. Casey, Professional Financial Investors, Inc. and/or Professional

13  Investors Security Fund, Inc." (the "Class"). *Id.* Plaintiffs also seek to recover damages, pre-

14  judgment interest and post-judgment interest, attorneys' fees and expenses, including expert fees,

15  and such other relief as the Court deems necessary and proper. *Id*. at 11 (Prayer for Relief).

16              **III.      LEGAL STANDARD**

17          A court must dismiss a complaint if it does not "contain sufficient factual matter, accepted

18  as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

19  678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the court must

20  take all allegations of material fact as true and construe them in the light most favorable to the

21  nonmoving party, "conclusory allegations of law and unwarranted inferences are insufficient to

22  avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  In

23  short, "a complaint . . . must plead enough facts to state a claim to relief that is plausible on its

24  face." *Id.*  "[D]etailed factual allegations are not required," but a complaint must provide sufficient

25  factual allegations to "state a claim to relief that is plausible on its face. *York v. Bank of Am.*, No.

26  14-CV-02471-RS, 2016 WL 5815264, at *2 (N.D. Cal. Oct. 5, 2016) (citing *Iqbal*, 556 U.S. at

27  678) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).

28          "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.   Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* citing *Twombly*, 550 U.S. at 555.   "[F]raud, including aiding and abetting fraud, must be pled with particularity" pursuant to Federal Rule 9(b).   *Diaz,* 2018 WL 2215790, at *6.

The court should deny leave to amend where amendment would be futile.   *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

## IV.   ARGUMENT

### A.   Plaintiffs' Claims For Aiding and Abetting Fraud Must Be Dismissed Because They Fail to Allege Each of the Required Elements

To support a claim for aiding and abetting an intentional tort, a defendant must "know[] the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Chance World Trading E.C. v. Heritage Bank of Commerce*, 438 F. Supp. 2d 1081, 1084 (N.D. Cal. 2005) (citing *Saunders v. Superior Court,* 27 Cal. App. 4th 832 (1994)), *aff'd,* 263 F. App'x 630 (9th Cir. 2008).   Knowledge cannot be presumed; and, "[u]nder California law, an aider and abettor to a fraud must have actual and not merely constructive knowledge of the fraud at the time the alleged assistance is rendered." *Impac Warehouse Lending Grp. v. Credit Suisse First Bos. Corp.*, No. SA CV 04-1234 AHS (CWx), 2006 U.S. Dist. LEXIS 101145, at *21 (C.D. Cal. June 20, 2006) (emphasis added).   Furthermore, aiding and abetting claims are subject to Rule 9(b)'s heightened pleading standard, and must be pled with particularity.   *Diaz,* 2018 WL 2215790, at *6 ("fraud, including aiding and abetting fraud, must be pled with particularity") (citations omitted); *Rosales v. Wells Fargo Bank, N.A.,* No. 13-CV-01316-BLF, 2014 WL 4770572, at *6 (N.D. Cal. Sept. 24, 2014) (same).   Plaintiffs fail to allege both elements with particularity; thus, their claims must be dismissed.

///

///

///

**1.    Plaintiffs Fail to Allege that Umpqua Had Actual Knowledge of the Scheme**

Plaintiffs allege that Umpqua's "knowledge of Casey's Ponzi scheme was an inevitable consequence of several factors that made the scheme obvious to [Umpqua]." Compl. ¶¶ 27(a)-(l). These alleged "factors"—regardless of whether the court examines them individually or takes them together—fail to meet the actual knowledge pleading requirement for an aiding and abetting claim.

"California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey*, 127 Cal. App. 4th at 1145. The *Casey* court reiterated that "aiding-abetting focuses on whether a defendant *knowingly* gave 'substantial assistance' to someone who performed wrongful conduct . . . [which] necessarily requires a defendant to reach *a conscious decision to participate in tortious activity* for the purpose of assisting another in performing a wrongful act." *Id.* at 1146 (*emph. added*).

Plaintiffs do not sufficiently allege with particularity any facts supporting their contention that Umpqua had actual knowledge of, or consciously decided to participate in, the Scheme. First, Plaintiffs only allege that Umpqua's knowledge of the Scheme was an "inevitable consequence of several factors that made the scheme obvious to someone in Umpqua's position." Compl. ¶ 27. However, these alleged "factors" are based on Casey's generic conduct, criminal record, bankruptcy, and eventual death, along with his companies' general operations and business dealings, and his banking activity with Umpqua. *Supra* at 3 (listing specific "factors" alleged by Plaintiffs); *see also* Compl. at ¶ 27(a)-(l) [2]. As in *Casey,* Plaintiffs' conclusory allegations are "too

---

[2] To the extent Plaintiffs' allegations suggest that Umpqua failed to report certain activity to regulators or failed to file a Suspicious Activity Report (SAR), these allegations would be preempted by the Bank Secrecy Act ("BSA"). *Compare* Compl. ¶ 25 (alleging that Umpqua was required "to report suspicious activity to government authorities" and implying that its failure to do so is evidence of actual knowledge) *with* 12 C.F.R. §§ 21.11(k), 208.62(j); *New World Mortgage v. TD Bank*, No. CV 11-00755 DMG (OPx), 2012 WL 13014965 (C.D. Cal. Jan. 3, 2012), *2, n. 1 (stating that SARs are highly confidential and a SAR, or any information that would reveal the existence of a SAR may be disclosed); *see also Stoutt v. Banco Popular de Puerto Rico*, 158 F. Supp. 2d 167, 176 (D.P.R. 2001) (holding that the BSA safe harbor

generic to satisfy the requirement of actual knowledge of a specific primary violation." *Casey*, 127 Cal. App. 4th at 1153.

### a) Plaintiffs Cannot Rely on Constructive Knowledge to Establish Actual Knowledge

Indeed, all of Plaintiffs' alleged "factors" showing the potential of indirect and constructive knowledge do not satisfy the strict "actual knowledge" requirement to maintain aiding and abetting claims.  Courts have consistently held that constructive knowledge of a fraudulent scheme is insufficient. *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1118–19 (C.D. Cal. 2003) (dismissing aiding and abetting claims because "should have known" allegations constitute constructive knowledge and does not plead actual knowledge); *Cotton v. Wells Fargo Bank N.A.*, No. SA CV 10-01758-CJC (RNB), 2011 WL 13227816, at *2 (C.D. Cal. Feb. 22, 2011) ("Taken together, however, these allegations are not enough to show that Wells Fargo had more than a vague suspicion that the $1,780,000 transfer was fraudulent…. While these allegations may establish that Wells Fargo should have known that Mr. Cao breached his fiduciary duty by authorizing the wire transfer, they fall short of alleging actual knowledge."); *In re Agape Litig.*, 773 F. Supp. 2d 298, 311 (E.D.N.Y. 2011) ("[A] conclusory allegation that 'no legitimate business' would have the pattern of account activity present in the Agape accounts, and the assertion that the account activity was obviously inconsistent with what BOA knew about Agape's business 'at most indicate only constructive knowledge of a fraudulent scheme, and are insufficient to support a strong inference [of] actual knowledge of the underlying fraud.'") (citation omitted); *Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771, 2017 WL 5514370, at *4 (S.D. Fla. Nov. 15, 2017) ("However, even if JPMC detected suspicious activity on the accounts as alleged, this only demonstrates knowledge of the symptoms of the Ponzi scheme, not JPMC's actual knowledge of the scheme itself."); *Liu Yao-Yi v. Wilmington Tr. Co.*, 301 F. Supp. 3d 403, 420 (W.D.N.Y. 2017)

---

provision, 31 U.S.C. § 5318(g)(3)(A) "explicitly preempts state law claims filed against financial institutions complying with its requirements.").  Regardless, Plaintiffs have not alleged any facts to show that Umpqua had any knowledge of suspicious or fraudulent activity; and, thus, Umpqua would not even have had a duty to report any fraud if one existed.

("Plaintiffs' assertion that Defendant's personalized services and its obligation to 'know their customers' made it aware of the alleged wrongful conduct, at most, could only create a plausible inference of *constructive* knowledge of potential misconduct.").

Plaintiffs' purported "knowledge" by Umpqua is based upon allegations that Casey had a criminal background, raised millions of dollars from investors, kept close control over the management of PFI and PISF, did not use a third party accounting firm, had little to no value collateral securing PFI and PISF's investment offerings, passed away, and that Casey's companies were forced into bankruptcy. *See* Compl. ¶¶ 27(b), (c), (d), (f), (i), (l).  Plaintiffs fail to allege any facts showing that these constructive knowledge factors rise to the level of *actual knowledge of the Scheme*.

Similarly, Umpqua's alleged knowledge of PFI and PISF's banking activity, such as the receipt of investor money, co-mingling of investor funds with new funds, or paying personal expenses with investor funds, do not show actual knowledge by Umpqua of the underlying Scheme. *See e.g. Casey*, 127 Cal. App. 4th at 1151 ("California tort law imposes no duty on a bank to investigate or report a depositor's suspicious activities…a bank has no duty to prevent wrongdoing (such as commingling, improper disbursements, or misappropriation) in connection with fiduciary accounts."); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1248 (M.D. Fla. 2013) ("Commingling of funds, even where the bank knows that the customer holds the funds in a fiduciary or trust capacity, is not necessarily prohibited and is insufficient to allege knowledge of an underlying fraud.").  Plaintiffs fail to allege how these facts equate to Umpqua's actual knowledge that Casey ran a Ponzi scheme through PFI and PISF, committed fraud, or that PFI/ PISF breached fiduciary duties to their investors.  These *should have known* argument falls far short of *actual knowledge*.  *Id.*  At best, these allegations again seek to rely on Umpqua's constructive knowledge of the Scheme, which is insufficient to establish actual knowledge.

///

///

///

///

b) **Plaintiffs' Allegations of "Customer Due Diligence Obligations" and Purported "Red Flags" Do Not Support Actual Knowledge**

Plaintiffs also allege that Umpqua "learned that Casey was operating a Ponzi scheme" "in the course of performing customer due diligence obligations" pursuant to its KYC duties.  Compl. ¶ 24.  This is also insufficient.  Noticeably absent from the Complaint are any *facts* demonstrating that any Umpqua employee *actually discovered* fraud by virtue of Umpqua's compliance with its "know your customer" obligations, or otherwise.  As the Second Circuit has succinctly observed:

> [Defendant's] "Know Your Customer" obligations are, standing alone, far from sufficient to support a strong inference that it had actual knowledge of [the] fraud.  As an initial matter, plaintiffs do not identify any particular monitoring obligation on the part of [defendant], the proper exercise of which would have alerted it to [the] fraud.  Moreover, even if such an obligation were to be identified, the strongest inference one could draw therefrom is that [defendant] should have known of [the] wrongdoing, not that it had actual knowledge thereof.  Otherwise, brokerage firms would be liable for aiding and abetting fraud every time a fraudster used brokerage accounts in service of its fraud in a detectable manner.  That is not the law.

*Berman v. Morgan Keegan & Co.,* 455 F. App'x 92, 95-96 (2d Cir. 2012); *Lorenz v. E. W. Bancorp, Inc.*, No. 215CV06336CASFFMX, 2016 WL 199392, at *8 (C.D. Cal. Jan. 14, 2016) (holding that general allegations that enhanced due diligence procedures "*would have* set off alarm bells" is insufficient standing alone to allege actual knowledge) (emphasis in original).  Thus, as courts have held time and again, Plaintiffs' contention that Umpqua *should have* discovered the fraud through its due diligence and "know your customer obligations" fall well-short of pleading *actual knowledge* to support a claim for aiding and abetting.

Similarly, Plaintiffs get no more traction from their conclusory allegations that Umpqua learned of the underlying Scheme because they were required to monitor "red flags".  Compl. ¶ 25 ("Umpqua was [] required to monitor PFI and PISF's accounts for "red flags" indicative of potential fraud…").  It is well-accepted that alleging knowledge of so-called "red flags" is insufficient to demonstrate "actual knowledge" of the primary wrong.  In *Casey,* for example, the plaintiff:

> essentially allege[d] the banks knew something fishy was going on with the accounts opened by the DFJ fiduciaries…the banks allowed the DFJ Fiduciaries to open these accounts in the names of the Fraudulent Entities despite knowing these

-9-

1     entities were not 'legitimate' businesses, the banks knew that the DFJ Fiduciaries

2     were withdrawing money from these accounts with the use of forged checks and

checks that exceeded written limits, and, perhaps most suspiciously, that the DFJ

3     Fiduciaries were carrying large, unreported amounts of cash out of the bank in

unmarked duffel bags.

4

5  *Casey*, 127 Cal. App. 4th at 1149.  After examining numerous federal and state authorities, the

6  court explained:  "This brief primer on California banking law makes clear that in the present case,

7  the banks' alleged knowledge of the DFJ Fiduciaries' suspicious account activities—even money

8  laundering—*without more,* does not give rise to tort liability for the banks." *Id.*  (emph. in original).

9     Countless courts have been in accord, and reiterated this holding.  *See, e.g.*, *Chance World*

10  *Trading E.C. v. Heritage Bank of Commerce*, 438 F. Supp. 2d 1081, 1084–85 (N.D. Cal. 2005),

11  *aff'd*, 263 F. App'x 630 (9th Cir. 2008) (noting that "knowledge of such atypical banking

12  procedures [does] not constitute actual knowledge of the underlying tort required in a claim for

13  aiding and abetting.") (citing to *Casey*, 127 Cal. App. 4th at 1147); *Cotton*, 2011 WL 13227816 at

14  *2 (holding that "should have known" facts, such as facts showing that a defendant bank had "a

15  vague suspicion [of fraudulently transferred money of $1,780,00]" does not satisfy actual

16  knowledge); *Diaz*, 2018 WL 2215790, at *6 ("Although Plaintiffs' allegations may support an

17  inference that Intuit was suspicious of potential fraud or knew that there was a risk of fraud, the

18  allegations are insufficient to show that Intuit had 'actual knowledge' of fraud . . . ."); *Litson-*

19  *Gruenber v. JPMorgan Chase & Co.*, No. 7:09–CV–056–0, 2009 WL 4884426, at *3 (N.D. Tex.

20  Dec. 16, 2009) ("Plaintiff's factual narrative is, at best, merely a story of suspicious activity that

21  Plaintiff contends should have provided Defendant notice of the Ponzi scheme."); *Groom v. Bank*

22  *of Am.*, No. 8:08–cv–2567–JDW–EAJ, 2012 WL 50250, at *3 (M.D. Fla. Jan. 9, 2012) ("Such red

23  flags d[o] not constitute the conscious awareness of wrongdoing necessary to maintain an aiding

24  and abetting cause of action.") (internal quotations omitted).

25     *Cotton* is instructive on this point.  In *Cotton*, plaintiff alleged that a defendant bank had

26  "actual knowledge" that a third-party bad actor aided and abetted various torts by internationally

27  wiring money to Hong Kong.  *Cotton*, 2011 WL 13227816, at *2.  In support of the alleged "actual

28  knowledge," plaintiff alleged two facts: (1) "Wells Fargo actually knew that the PPM [Private

Placement Memorandum] misrepresented that TG Capital funds would be invested in Wells Fargo-guaranteed funds because Wells Fargo sent TG Capital a letter demanding that it remove those representations" and (2) the Wells Fargo "Financial Crimes Investigation unit found that the account activity in the TG Capital account was 'not typical.'" *Id.* The court held that, "these allegations are not enough to show that Wells Fargo had more than a vague suspicion that the $1,780,000 transfer was fraudulent." *Id.*

Here, at the outset, Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading requirement because they fail to allege a single example of any "red flags" Umpqua received. *Diaz,* 2018 WL 2215790, at *6. Instead, Plaintiffs generally allege that Umpqua's knowledge of the scheme was "inevitable." Compl. ¶ 27. This does not suffice. Moreover, like in *Cotton*, Plaintiffs fail to allege any facts showing that Umpqua had more than a "vague suspicion" that Casey was operating a Ponzi scheme. *See generally* Compl. Plaintiffs fail to allege basic facts demonstrating *who* at Umpqua had actual knowledge of the Scheme, *when* this individual discovered the Scheme, or even that Umpqua "reach[ed] a conscious decision to participate in tortious activity." *Diaz*, 2018 WL 2215790, at *6 (citing *Howard*, 2 Cal. App. 4th at 749 and *Gerard,* 204 Cal. App. 3d at 983).

Accordingly, Plaintiffs' aiding and abetting claims fail and should be dismissed because they fail to allege any facts demonstrating Umpqua's actual knowledge of the underlying alleged bad conduct. As a result, the claims must be dismissed with prejudice.

## 2.   Plaintiffs Fail to Allege that Umpqua Substantially Assisted the Scheme or Was a "Substantial Factor" in Causing Plaintiffs' Alleged Injury

Plaintiffs generically allege that Umpqua provided "banking assistance" and gave "substantial assistance" to Casey's Ponzi Scheme. Compl. ¶¶ 29, 49-50. They fail to allege any particular facts showing how Umpqua's actions constituted a "substantial factor" in the Scheme, let alone that it encouraged it. Without any facts alleged in support of substantial assistance, Plaintiffs' aiding and abetting claims fail.

To support a claim for aiding and abetting an intentional tort, a defendant must "know[] the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Chance World Trading E.C. v. Heritage Bank of Commerce*, 438 F. Supp.

-11-

2d 1081, 1084 (N.D. Cal. 2005) (citing *Saunders v. Superior Court,* 27 Cal. App. 4th 832 (1994)), *aff'd,* 263 F. App'x 630 (9th Cir. 2008); *see also Casey v. U.S. Bank Nat. Assn.,* 127 Cal. App. 4th 1138, 1144, (2005); *Diaz,* 2018 WL 2215790, at *6. "Substantial assistance requires a significant and active, as well as a knowing participation in the wrong….a plaintiff must [also] allege that the defendant's conduct was a substantial factor in bringing about the injury allegedly suffered by the plaintiff." *Diaz,* 2018 WL 2215790, at *8 (citations omitted).  Courts are clear that "[f]ailure to act allegations … are insufficient to establish substantial assistance for purposes of aiding and abetting liability." *Id.* (citing *Fiol v. Doellstedt,* 50 Cal. App. 4th 1318, 1326 (1996) ("Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting.")); *In re Sharp Int'l Corp.,* 403 F.3d 43, 50 (2d Cir. 2005) ("[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.").

Further, "[a]lthough under California law even an 'ordinary bank transaction' may be enough to satisfy the "substantial assistance" requirement, most courts have held banks liable for aiding and abetting torts only in circumstances where the bank has repeatedly ignored or even allowed suspicious banking activities, or altered bank practices for routine bank transactions in order to provide services to the tortfeasor. *Cotton,* 2011 WL 13227816 at *3 (dismissing aiding and abetting claims because conclusory allegations of assistance without any allegations that the defendant bank "repeatedly ignored or even allowed suspicious banking activities, or altered bank practices for routine bank transactions" does not satisfy actual knowledge).

Plaintiffs have not alleged any instances of such conduct by Umpqua.  Instead, Plaintiffs allege that Umpqua "provided the banking assistance that Casey needed to successfully operate his Ponzi scheme. Among other things, Umpqua received investor funds into PFI and PISF's accounts and transferred those funds to help PFI and PISF meet its monthly obligations to existing investors." Compl. ¶ 29.  At the outset, Plaintiffs do not elaborate on what "other things" Umpqua did to substantially assist Casey and PFI and PISF carry out the Scheme.  This is telling.  Plaintiffs' silence and omission plainly demonstrate that they cannot allege any facts showing that Umpqua's assistance of the Scheme was "significant" and "active." *Diaz,* 2018 WL 2215790, at *8.

While Plaintiffs seem to suggest that Umpqua should have affirmatively policed PFI and PISF's accounts, or somehow prevented PFI and PISF from transferring money into or out of its accounts (and ultimately preventing Casey's personal use of those funds), this is normal and routine banking activity that cannot constitute substantial assistance. As numerous courts have articulated in analogous circumstances, such failure-to-act allegations are woefully insufficient, and a bank has *no duty* to "police" bank accounts. *Diaz*, 2018 WL 2215790, at *8 (holding that "failure to act allegations" "are insufficient to establish substantial assistance for the purposes of aiding and abetting liability"); *In re Textainer P'ship Sec. Litig.*, No. C-05-0969 MMC, 2005 WL 3801596, at *16 (N.D. Cal. Dec. 12, 2005) (holding that failure to act "does not constitute substantial assistance or encouragement"); *see also Casey*, 127 Cal. App. 4th 1138, 1150-1151 (noting that "a bank has no duty to 'police' accounts, . . . 'to supervise account activity' or 'to inquire into the purpose for which the funds are being used'"). None of Plaintiffs' allegations demonstrate that Umpqua took any action beyond routine banking activity at PFI and PISF's request to assist the commission of fraud or breach of fiduciary duty, or that any such action was a substantial factor in their alleged harm. Plaintiffs' failure to allege additional specific facts outside of routine banking activity is fatal to their aiding and abetting claims.

Moreover, "receiving" or "transferring" money to and from investors cannot possibly constitute substantial assistance, especially in the absence of actual knowledge that the receipts or transfers were fraudulent. *Casey,* 127 Cal. App. 4th at 1145; *In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2011 WL 13168450, at *12 (S.D.N.Y. Dec. 8, 2011) ("The courts have consistently held that a bank does not substantially assist in a customer's wrongdoing simply by transferring funds into and out of a bank account.") (citing *Strauss v. Credit Lyonnais, S.A.*, No. CV-06-0702 (CPS), 2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006) ("The maintenance of a bank account and the receipt or transfer of funds does not constitute substantial assistance.")); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007) ("the 'mere fact that participants in a fraudulent scheme use accounts at a bank to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance'") (citation omitted); *Stern v. Charles Schwab & Co.*, No. CV-09-1229-PHX-DGC, 2009 U.S. Dist. LEXIS 96697, at *23 (D. Ariz. Oct. 15, 2009)

1    ("Processing day-to-day transactions does not constitute substantial assistance unless the bank has

2    an 'extraordinary economic motivation to aid in the fraud."). These consistent holdings reaffirm

3    the well-settled rule that normal banking activities, such as receipt or transfers of money at the

4    customer's request, does not show substantial assistance.

5         In sum, Plaintiffs' conclusory allegations are insufficient to plausibly state that Umpqua

6    substantially assisted in carrying out a fraudulent Ponzi scheme. As the Court stated in *In re Sharp*

7    *Int'l Corp.,* 403 F.3d at 50, "[a]rtful pleading aside, all of these allegations come down to omissions

8    or failures to act."[3]  Indeed, if Plaintiffs' allegations were sufficient, banks would be forced to

9    answer and defend claims each and every time their accounts were used in a fraudulent manner.

10   "That is not the law." *Berman,* 455 F. App'x at 95–96. Accordingly, Plaintiffs' aiding and abetting

11   claims fail and must be dismissed.

12       **B.    Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claims Must
             Additionally Be Dismissed Because They Do Not Allege Umpqua's Actual
13           Knowledge of Any Fiduciary Duty Owed to Plaintiffs <u>and</u> a Breach of That
             Duty**
14

15       Plaintiffs' aiding and abetting breach of fiduciary claim fails for the independent and

16   additional reason that Plaintiffs fail to allege any facts establishing that Umpqua knew that PFI

17   and PISF owed Plaintiffs a fiduciary duty or that Umpqua knew PFI/PISF had breached those

18   duties.

19       To plead a claim for aiding and abetting *breach of fiduciary duty*, "plaintiffs[s] must allege

20   both that the defendant had actual knowledge of the primary violator's status as a fiduciary" and

21   that the defendant had "actual knowledge that the primary violator's conduct contravened a

22   fiduciary duty." *McFall v. Stacy & Witbeck, Inc*., No. 14-CV-04150-JSC, 2016 WL 6248882, at

23   *6 (N.D. Cal. Oct. 26, 2016) (requiring actual knowledge of a fiduciary duty and knowledge that

---

24   [3] To be sure, Plaintiffs' allegations do not resemble the types of "substantial assistance" allegations
25   that courts have found sufficient to state a claim. *See, e.g., Hua Nan Commercial Bank v. HSBC
     Bank USA, N.A.,* No. CV 10-8773 PSG (EX), 2011 WL 13217782, at *17 (C.D. Cal. May 19,
26   2011) (alleging HSBC created fraudulent reference letters and false NAV reports); *Neilson,* 290
     F. Supp. 2d at 1086 (alleging individual bank officers acted as salespersons for the Ponzi schemer,
27   encouraged, and convinced individuals to invest with him, and misrepresented that the Ponzi entity
28   was audited annually even though it was not).

the fiduciary's "efforts were aimed at breaching his fiduciary duty"); *In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 264 (Bankr. N.D. Fla. 2003) ("The fatal flaw in this Count is that the Bank did not have knowledge of the fiduciary status of Meridian to its customers at the time the Bank handled the instruments; therefore, it follows that the Bank did not have knowledge of the breach by Meridian."); *Hongying Zhao v. JPMorgan Chase & Co.*, No. 17 CIV. 8570 (NRB), 2019 WL 1173010, at *5 (S.D.N.Y. Mar. 13, 2019) ("Without adequately alleging the existence or JPMC's knowledge of a fiduciary relationship between Haddow and investors, these 'red flag' allegations – which may well have 'put [JPMC] on notice that some impropriety may have been taking place,' fall short of creating the 'strong inference of actual knowledge' of a primary violation that is required to state a claim for aiding and abetting liability.").

Courts routinely require more than conclusory allegations of customer due diligence obligations to support an aiding and abetting breach of fiduciary duty claim. *See, e.g., In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 264 (Bankr. N.D. Fla. 2003) ("[T]he stylized name of the accounts in this case was not sufficient to indicate that the accounts were fiduciary and that Meridian had fiduciary duties to its investors. Additionally, in the absence of a special deposit agreement with the Bank indicating some specified purpose, an account is labeled 'general,' and is an arms-length transaction imparting no duty on behalf of the Bank to monitor and investigate.") (internal citations omitted); *see Casey*, 127 Cal. App. 4th at 1149 (finding that allegations that banks allowed primary tortfeasor to open accounts in names of fraudulent enterprises, withdraw money from accounts using forged checks, and carry large, unreported amounts of cash out of the bank in unmarked duffel bags is not enough to establish that bank had aided and abetted tortfeasor's breach of fiduciary duty by diverting funds); *Cotton v. Wells Fargo Bank N.A.*, No. SACV1001758CJCRNBX, 2011 WL 13227816, at *3 (C.D. Cal. Feb. 22, 2011) ("TG Capital alleges that by March 30, 2007, Wells Fargo knew that the PPM stated that the investors' funds would be used in guaranteed transactions, and therefore that Wells Fargo knew that Mr. Cao had a fiduciary duty to use the funds as promised. [] TG Capital also alleges that Wells Fargo knew that the $1,780,000 wire transfer was not a guaranteed transaction. While these allegations may

-15-

1  establish that Wells Fargo *should have known* that Mr. Cao breached his fiduciary duty by

2  authorizing the wire transfer, they fall short of alleging *actual knowledge*.") (emph. added).

3       In the Complaint, Plaintiffs allege "Umpqua also knew that Casey was breaching his

4  fiduciary duty . . . in the course of performing its customer-due-diligence obligations…"). Compl.

5  ¶55.  This conclusory allegation that Umpqua breached its fiduciary duty because Umpqua

6  "learned of Casey's Ponzi scheme in the course of performing its customer-due-diligence

7  obligations" is woefully insufficient.  In other words, as with their other allegations, Plaintiffs

8  allege only that Umpqua *should have known* PFI and PISF owed investors a fiduciary duty.  The

9  Complaint is devoid of any facts about *who* at Umpqua knew that PFI and PISF owed depositors

10  a fiduciary duty, *when* they knew, or *how* they knew, and whether Umpqua was aware of the breach

11  of any fiduciary duty.  Absent such allegations, Plaintiffs cannot plausibly allege that Umpqua

12  knew that Casey or PFI and PISF owed Plaintiffs a fiduciary duty or that it was aware of a breach

13  of fiduciary duty.  As a result, the aiding and abetting breach of fiduciary duty claim must be

14  dismissed for this additional reason.

15          **V.**     **CONCLUSION**

16       Plaintiffs' allegations against Umpqua fail to state a claim under even the most liberal

17  pleading standards.  Given Plaintiffs' inability to plead such a claim, their Complaint should be

18  dismissed without leave to amend.

19  DATED: October 30, 2020         **MCGUIREWOODS LLP**

20

21          By:   */s/ Alicia A. Baiardo*

22              Alicia A. Baiardo

23          *Attorneys for Defendant Umpqua Bank*

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES
CASE NO. 3:20-CV-05905-RS

1

## CERTIFICATE OF SERVICE

2    I, Alicia A. Baiardo, certify that on October 30, 2020, the foregoing document entitled

3  **DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO**

4  **F.R.C.P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES** was filed

5  electronically in the Court's EFC; thereby upon completion the ECF system automatically

6  generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail

7  addresses of parties of record in the case.

8

9    */s/ Alicia A. Baiardo*
     **ALICIA A. BAIARDO**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28