**MCGUIREWOODS LLP**
David C. Powell (SBN 129781)
dpowell@mcguirewoods.com
Alicia A. Baiardo (SBN 254228)
abaiardo@mcguirewoods.com
Anthony Q. Le (SBN 300660)
ale@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA  94111-3821
Telephone:  415.844.9944
Facsimile:  415.844.9922

*Attorneys for Defendant Umpqua Bank*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shela Camenisch and Dale Dean; Luna Baron; and Eva King, Individually and as Trustee of the Eva M. King Trust, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    vs.<br><br>Umpqua Bank,<br><br>            Defendant. | CASE NO.: 3:20-cv-05905-RS<br><br>**DEFENDANT UMPQUA BANK'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:     September 2, 2021<br>Time:    1:30 p.m.<br>Place:    Courtroom 3<br><br>Complaint Filed: August 21, 2020<br>FAC Filed:           June 30, 2021 |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 5

II. ARGUMENT ........................................................................................................................ 6

    A. Plaintiffs' FAC Must Be Dismissed Because Their Conclusory Allegations Fail to Satisfy Rule 8 ................................................................................................. 6

    B. Plaintiffs' Allegations of Actual Knowledge Are Not Plausible ............................. 8

    C. *Paskenta* Demonstrates that Conclusory Allegations of Actual Knowledge Cannot Support an Aiding and Abetting Claim ...................................................... 12

III. CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Casey v. U.S. Bank Nat. Ass'n.*,
  127 Cal. App. 4th 1138 (2005) ........................................................................................... *passim*

*Chance World Trading E.C. v. Heritage Bank of Commerce*,
  438 F. Supp. 2d 1081 (N.D. Cal. 2005), *aff'd* 263 F. App'x 630 (9th Cir. 2008) ................... 11

*Chang v. Wells Fargo Bank, N.A.*,
  No. 19-cv-01973-HSG, 2020 WL 1694360 (N.D. Cal. Apr. 7, 2020) ..................................... 13

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) ................................................................................................. 14

*Chazen v. Centennial Bank*,
  61 Cal. App. 4th 532 (1998) ................................................................................................. 5, 6

*Cotton v. Wells Fargo Bank N.A.*,
  No. SACV1001758CJCRNBX, 2011 WL 13227816 (C.D. Cal. Feb. 22, 2011) ................... 10

*Diaz v. Intuit, Inc.*,
  No. 5:15-CV-01778-EJD, 2018 WL 2215790 (N.D. Cal. May 15, 2018) ........................ 10, 12

*Lorenz v. E. W. Bancorp, Inc.*,
  No. 215CV06336CASFFMX, 2016 WL 199392 (C.D. Cal. Jan. 14, 2016) ........................... 13

*Paskenta Band of Nomlaki Indians v. Crosby*,
  122 F. Supp. 3d 982 (E.D. Cal. 2015) ................................................................................ 8, 13

*Paskenta Band of Nomlaki Indians v. Crosby*,
  No. 215CV00538MCECMK, 2016 WL 1587233 (E.D. Cal. Apr. 20, 2016) ..................... 8, 13

*Paskenta Band of Nomlaki Indians v. Crosby*,
  No. 215CV00538MCECMK, 2016 WL 6094468 (E.D. Cal. Oct. 19, 2016) *aff'd sub nom. Paskenta Band of Nomlaki Indians v. Associated Pension Consultants, Inc.*, No. 17-15483, 2021 WL 1740364 (9th Cir. May 3, 2021) ........................................ 9, 13

*Paskenta Band of Nomlaki Indians v. Umpqua Bank*,
  846 F. App'x 589 (9th Cir. 2021) ........................................................................................ *passim*

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
  509 F. Supp. 3d 1154 (N.D. Cal. 2020) ................................................................................... 12

*In re Woodbridge Investments Litig.*,
  No. 18-cv-103-DMG, 2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ....................................... 13

**Statutes**

California Financial Code § 1451 .................................................................................. 12, 14

**Other Authorities**

Manual of Examination Policies - Bank Secrecy Act, Anti-Money Laundering, and
    Office of Foreign Assets Control, at 8.1-39, *available at*
    https://fdic.gov/regulations/safety/manual/section8-1.pdf ........................................ 9

Federal Rules of Civil Procedure, Rule 8 ............................................................... 6, 7, 8

Federal Rules of Civil Procedure, Rule 9 ................................................................. 5, 7

## I. INTRODUCTION

As unscrupulous as Kenneth Casey's ("Casey") tortious conduct and real estate Ponzi scheme may have been, Plaintiffs cannot make Umpqua the scapegoat for Casey's conduct or any losses Plaintiffs may have incurred stemming from their own voluntary decision to invest in Casey's real estate investment companies. California courts have repeatedly emphasized that the standard for adequately pleading an aiding and abetting claim against a bank based on the fraudulent conduct of its customers is very high. And, understandably so. The modern banking system recognizes the vital public function filled by, and expected of, banks and financial institutions to serve as depositories for funds and processors of millions of transactions initiated every day by consumers and businesses. These responsibilities, practically and logically, bring with it the expectation that banks have no duty to police bank accounts, supervise banking activity, or inquire into the purpose for which funds are being used. *Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005). While California law permits consumers to seek relief against banks for the fraudulent actions of a third-party, they may only proceed if they can satisfy the extremely high burden of plausibly alleging that the bank had *actual knowledge* that its depositor was committing a specific tort and nonetheless consciously decided to substantially assist with that tortious activity. Despite this mandate, Plaintiffs seek to upend the long-standing rule under California law that courts should only find actual knowledge in "extreme circumstances." *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998). This Court, respectfully, should not allow Plaintiff to depart from California law.

Plaintiffs' Opposition begins by misstating the governing standard for pleadings. Plaintiffs argue that their allegations do not need to rise to the heightened level of pleadings identified in Rule 9, but that standard is not the correct standard to apply. Instead, as Umpqua explained in its Motion, Plaintiffs need to plausibly allege actual knowledge to establish an aiding and abetting claim.

Measured up against this proper threshold, Plaintiffs clearly fail to provide the required allegations. As the Ninth Circuit recently reinforced in *Paskenta*, Plaintiffs cannot rely on conclusory allegations of actual knowledge. *Paskenta Band of Nomlaki Indians v. Umpqua Bank*,

846 F. App'x 589 (9th Cir. 2021).  Yet, Plaintiffs contend that suspicious "facts" about the Ponzi scheme, such as the size of an entities' accounts, and a third-party's felony status, business management style, or business decisions, can support an aiding and abetting claim.  Opp. 8.  But, it cannot be this simple to maintain an aiding and abetting claim against a bank that must only be present in "extreme circumstances." *Chazen*, 61 Cal. App. 4th at 537.  Indeed, perpetuating this trend effectively forecloses any possibility for a bank to successfully challenge an aiding and abetting claim on the pleadings, and allows any alleged victim to a Ponzi scheme to proceed with an aiding and abetting claim against a bank in the same relaxed manner.  California has never embraced such a rudimentary approach.  *See e.g.*, *Casey*, 127 Cal. App. 4th at 1145 (refusing to find detailed allegations of actual knowledge sufficient to plead an aiding and abetting claim against a bank).

The Ninth Circuit has just recently demonstrated that it faithfully applies California law in similar circumstances.  In *Paskenta*, Umpqua was similarly accused of aiding and abetting a criminal scheme through its accounts, and there too, the Ninth Circuit found that conclusory allegations are not enough to establish actual knowledge.  *Paskenta*, 846 F. App'x at 589.  Given the factual similarities between this case and *Paskenta*, the Ninth Circuit's opinion in that case is particularly illustrative of the outcome on this case as well.

Accordingly, as *Casey* and *Paskenta* instruct, this Court should refuse to allow conclusory allegations of actual knowledge to be used in pleadings of aiding and abetting claims, and it should instead embrace the gate-keeping function that California courts and the Ninth Circuit have traditionally applied.  Doing so here requires dismissal of Plaintiffs' claims with prejudice.

II.   **ARGUMENT**

  A.   **Plaintiffs' FAC Must Be Dismissed Because Their Conclusory Allegations Fail to Satisfy Rule 8**

Umpqua explained in its Motion that Plaintiffs failed to plausibly allege actual knowledge to satisfy the pleading requirements of Rule 8, and Plaintiffs respond in their Opposition with a strawman argument.  Opp. 7-8.  Instead of acknowledging that their allegations should be evaluated under Rule 8, Plaintiffs assert that their allegations about actual knowledge do not need

to satisfy the heightened pleading requirements of Rule 9. *Id.* They also argue that, pursuant to Rule 9(b), they can assert actual knowledge "generally." *Id.* Plaintiffs' arguments misstate the applicable standard in this case.

In its Motion, Umpqua argues that conclusory allegations of knowledge are insufficient to *plausibly allege actual knowledge* because it specifically does not meet Rule 8's plausibility requirement. Mot. 11-20. Umpqua wrote that, "[a]t best, Plaintiffs' allegations are perhaps *consistent* with their ultimate averment that Umpqua had the requisite actual knowledge but, more is required under Rule 8's plausibility requirement." Mot. at 16. Plaintiffs do not appear to dispute the applicability of Rule 8 in this case. *See generally* Opp. 7-12. Nor do Plaintiffs address Umpqua's argument that Plaintiffs failed to allege facts satisfying the plausibility threshold of Rule 8—regardless of whatever the heightened pleading standard of Rule 9 may require. *See id.* Without any affirmative allegations providing factual context to these threshold requirements, Plaintiffs' "direct allegation" of actual knowledge is nothing more than a conclusory averment of the elements of an aiding and abetting claim. *See* Opp. 8.

Plaintiffs try to adjust the threshold for their allegations by arguing that they can assert actual knowledge "generally," but they are, in effect, taking the word "generally" and using it as a justification to assert allegations that are impermissibly "conclusory." *See* Opp. 7-8. Such allegations are not permissible under well-established law. As the Ninth Circuit has held, simply parroting allegations of liability is not enough—there must also be "facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." Mot. 16. (citing *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014)). Indeed, under California law, banks, by default, have no duty to police bank accounts, supervise banking activity, or inquire into the purpose for which funds are being used. *Casey*, 127 Cal. App. 4th at 1145.

Yet, neither the FAC, nor Plaintiffs' Opposition, identifies any allegations to exclude the possibility that Umpqua did not have actual knowledge of Casey's *specific fraud* and Ponzi scheme based upon the understanding under California law that a bank not need to examine bank accounts, supervise banking activity, or investigate transactions. Plaintiffs may purport to allege that

CASE NO. 3:20-cv-05905-RS                              7
DEFENDENT UMPQUA BANK'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

Umpqua had "actual knowledge" of Casey's Ponzi scheme, but without any facts excluding the possibility that an alternative explanation is true, the generic allegations in their FAC are akin to allegations that Umpqua *should have* uncovered the alleged scheme masquerading as a "direct" allegation of actual knowledge. *See e.g.* Mot. 8, 18. Plaintiffs have not alleged any facts describing how Umpqua's anti-money laundering efforts allowed it to discover, or obtain, actual knowledge of a real estate Ponzi scheme; and, despite that knowledge, performed actions beyond routine banking activity into a conscious decision to participate in tortious activity for purposes of aiding and abetting tort liability. *See Casey*, 127 Cal. App. 4th at 1148 (holding that "actual knowledge" that a tort is being committed is required to transform a bank's ordinary processing of a depositor's transactions into the conscious participation in a tortious scheme). According to the FAC, Casey's companies, PFI and PISF, simply held business checking accounts at Umpqua. Opp. 9; FAC ¶ 29(a). There is no explanation for why the facts relating to the size of PFI and PISF, as well as Casey's previous felony status, business management practices, and business decisions, would have found their way to Umpqua, given Umpqua direct and specific knowledge of Casey's specific Ponzi scheme, and encouraged Umpqua to consciously participate in the Ponzi scheme. Plaintiffs cite to Umpqua's "customer due diligence," "know your customer" obligations, and other supposed identification of "red flags," but each of these actions deal with the prevention of money laundering activity. FAC ¶¶ 28, 29(a)-(l). Tactically refraining from using the words "should have known" does not cure Plaintiffs' deficient allegations under Rule 8.

### B. Plaintiffs' Allegations of Actual Knowledge Are Not Plausible

Even though Umpqua explained in its Motion that Plaintiffs needed to allege actual knowledge, Plaintiffs nonetheless use their Opposition to identify "several factors that made [Casey's] scheme obvious to a financial institution in Umpqua's position." Opp. 4. Plaintiffs cite Umpqua's "customer due diligence" and "know your customer" obligations and other supposed "red flags," which they attempt to utilize as a substitute for allegations of actual knowledge. *Id*. This is insufficient. *E.g.*, *Paskenta Band of Nomlaki Indians v. Crosby*, 122 F. Supp. 3d 982, 989-990 (E.D. Cal. 2015) ("*Paskenta I*"); *Paskenta Band of Nomlaki Indians v. Crosby*, No. 215CV00538MCECMK, 2016 WL 1587233, *6 (E.D. Cal. Apr. 20, 2016) ("*Paskenta II*");

*Paskenta Band of Nomlaki Indians v. Crosby*, No. 215CV00538MCECMK, 2016 WL 6094468, *7 (E.D. Cal. Oct. 19, 2016) ("*Paskenta III*") *aff'd sub nom. Paskenta Band of Nomlaki Indians v. Associated Pension Consultants, Inc.*, No. 17-15483, 2021 WL 1740364 (9th Cir. May 3, 2021).

Quite simply, Plaintiffs fail to point to any conduct suggesting that someone at Umpqua Bank had actual knowledge of Casey's fraudulent scheme. Plaintiffs assert that Umpqua learned that Casey was operating a Ponzi scheme while performing its customer due diligence obligations and, without more, ask the court to accept this conclusory allegation as true. Opp. 4, 9; FAC ¶¶ 26, 28. But "conclusory statements . . . are not entitled to the presumption of truth," and this Court should not be tempted to accept them as true without further explanation about which aspects of Umpqua's customer due diligence obligations would have given Umpqua specific, actual knowledge of Casey's Ponzi scheme. *Paskenta*, 846 F. App'x at 590.

Plaintiffs' conclusory allegations that Umpqua learned of the underlying Ponzi scheme because they were required to monitor "red flags" do not fare any better. Opp. 9. "Red flags" are not evidence of illegal activity, and do not result in actual knowledge of any specific wrongdoing by a depositor. As explained by the Federal Deposit Insurance Corporation (FDIC),

> "[Red flags] are intended to serve as a reference tool and *should not be used to make immediate and definitive conclusions that a particular activity or series of transactions is illegal*. They should be viewed as potentially suspicious warranting further review. The activity/transactions *may not be suspicious if they are consistent with a customer's legitimate business*."

Money Laundering Red Flags, FDIC: Manual of Examination Policies - Bank Secrecy Act, Anti-Money Laundering, and Office of Foreign Assets Control, at 8.1-39, available at https://fdic.gov/regulations/safety/manual/section8-1.pdf (last visited August 16, 2021). Plaintiffs' conclusory allegation that "red flags" gave Umpqua actual knowledge of Casey's Ponzi scheme cannot be presumed to be true because they are not even interpreted as definitive instances of illegal activity. Plaintiffs' FAC fails to allege any facts tending to exclude the possibility that the alternative explanation is true—that the alleged "red flags" are *not suspicious* because "*they are consistent with [PFI and PISF's] legitimate business*"; thus, Plaintiffs' allegations based on

"red flags" are not plausible.[1]  *See, e.g., Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2018 WL 2215790, at *6 (N.D. Cal. May 15, 2018) (citing to *E-Shops Corp v. U.S. Bank Nat'l Ass'n,* 678 F.3d 659, 664 (8th Cir. 2012) (affirming dismissal of aiding and abetting claim because plaintiff did not plausibly allege actual knowledge—the "suggestion that a change of address after a number of large orders signals identity theft is attenuated when, in the ordinary course of banking business, cardholders change their address for various unspecified reasons.")).

Contrary to Plaintiffs' assertion, it is well-accepted that alleging knowledge of "red flags" is insufficient to demonstrate "actual knowledge" of the primary wrong.  In *Casey,* for example, the plaintiff:

> essentially allege[d] the banks knew something fishy was going on with the accounts opened by the DFJ fiduciaries . . . the banks allowed the DFJ Fiduciaries to open these accounts in the names of the Fraudulent Entities despite knowing these entities were not "legitimate" businesses.  The banks knew that the DFJ Fiduciaries were withdrawing money from these accounts with the use of forged checks and checks that exceeded written limits, and, perhaps most suspiciously, that the DFJ Fiduciaries were carrying large, unreported amounts of cash out of the bank in "unmarked duffel bags."

*Casey*, 127 Cal. App. 4th at 1149.  After examining numerous federal and state authorities, the court in *Casey* explained: "This brief primer on California banking law makes clear that in the present case, the banks' alleged knowledge of the DFJ Fiduciaries' suspicious account activities— even money laundering—*without more,* does not give rise to tort liability for the banks."  *Id.* at 1151.  Numerous courts have faithfully applied this law.  *See, e.g.*, *Cotton v. Wells Fargo Bank N.A.*, No. SACV1001758CJCRNBX, 2011 WL 13227816, at *2 (C.D. Cal. Feb. 22, 2011) ("Taken together, however, these allegations are not enough to show that Wells Fargo had more than a vague suspicion that the $1,780,000 transfer was fraudulent.  While these allegations may establish that Wells Fargo should have known that Mr. Cao breached his fiduciary duty by authorizing the wire transfer, they fall short of alleging actual knowledge."); *Diaz*, 2018 WL 2215790, at *6

---

[1] To find otherwise creates the perverse incentive for banks to limit the reach of its automated anti-money laundering systems for fear that casting a wider net to ferret illegal money laundering exposes it to aiding and abetting liability based on conclusory allegations of the existence of "red flags."

("Although Plaintiffs' allegations may support an inference that Intuit was suspicious of potential fraud or knew that there was a risk of fraud, the allegations are insufficient to show that Intuit had 'actual knowledge' of fraud.")

Here, as in *Casey*, Plaintiffs' conclusory allegations are "too generic to satisfy the requirement of actual knowledge of a specific primary violation." *Casey*, 127 Cal. App. 4th at 1153. Plaintiffs have not alleged any facts about how any "red flags" purportedly identified by Umpqua, which are simply indicators that should be part of an expanded review of potentially unusual activity, crossed the threshold to suddenly give Umpqua actual knowledge that Casey operated a Ponzi scheme. Plaintiffs' bare assertion that "red flags" gave Umpqua "actual knowledge" of fraud is not enough. As evident from *Paskenta* and other California authorities, finding otherwise is contrary to California law. *Compare with* Third Am. Compl. ¶ 394, *Paskenta Band of Nomlaki Indians, et al. v. Crosby, et al,* No. 2:15-cv-00538-MCE-DMC (E.D. Cal. May 20, 2016), ECF No. 212 (plaintiff's allegations that transactions triggered scrutiny under internal Umpqua policies and procedures and unusual and suspicious nature was brought to the attention of Umpqua employees did not allege actual knowledge); *see also* C*hance World Trading E.C. v. Heritage Bank of Commerce*, 438 F. Supp. 2d 1081, 1086 (N.D. Cal. 2005), *aff'd* 263 F. App'x 630 (9th Cir. 2008) (finding allegations of atypical banking procedures alone insufficient to allege actual knowledge).

Finally, Plaintiffs' remaining factual allegations also fail to show that Umpqua had actual knowledge of the Ponzi scheme. Indeed, some of the "facts" Plaintiffs cite are nothing more than descriptions of various characteristics that occur in nearly every Ponzi scheme. Every individual or bad actor with a Ponzi scheme has checking accounts with a bank. Every Ponzi scheme involves the receipt and transfer of money. Every Ponzi scheme requires the perpetual layering of new money by new investors for the benefit of old investors and to conceal the fraud. Every Ponzi scheme involves business decision making and management that appears suspect in hindsight. Plaintiffs' description of characteristics that naturally occur in Ponzi schemes does nothing to bolster their allegation that Umpqua had actual knowledge of the scheme. If they did, every Ponzi scheme that eventually unraveled would result in a lawsuit against the underlying bank that

unwittingly opened deposit accounts for the unscrupulous third-party actor.  Plaintiffs must allege more facts beyond conclusory allegations to plausibly allege an aiding and abetting claim.  They fail to do that here.[2]

In sum, Plaintiffs do not allege facts demonstrating that Umpqua "reach[ed] a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act" or "acted with the intent of facilitating the commission of [a] tort."  *Diaz*, 2018 WL 2215790, at *6 (citing *Howard v. Superior Ct.*, 2 Cal. App. 4th 745, 749 (1992)).  Without any facts supporting Plaintiffs' generic allegation that Umpqua had "actual knowledge" of Casey's fraud, Plaintiffs' aiding and abetting claims must be dismissed with prejudice.

### C. *Paskenta* Demonstrates that Conclusory Allegations of Actual Knowledge Cannot Support an Aiding and Abetting Claim

The Ninth Circuit provided on-point precedent in *Paskenta* demonstrating that courts should not accept conclusory allegations of actual knowledge, but Plaintiffs try to dismiss the relevance of the Ninth Circuit's new ruling. Plaintiffs claim that *Paskenta* is not relevant here because *Paskenta* did not change the law governing the applicable pleading standard.  Opp. 10-11.  Plaintiffs also argue that *Paskenta* is factually distinguishable from this case because *Paskenta* involved unauthorized withdrawals with regard to California Financial Code § 1451, while this case is about a Ponzi scheme.  Opp. 11-12.  These arguments, however, lack merit.

Umpqua is not arguing that *Paskenta* somehow changed the governing law, as Plaintiffs claim, but Umpqua instead argues that *Paskenta* reiterates the well-established rule that conclusory allegations cannot be used to establish actual knowledge.  This is not a novel, or even contested, proposition.  *See, e.g.*, *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1160 (N.D. Cal. 2020) (dismissing aiding and abetting fraud claim because the complaint lacks facts to support the conclusion that the defendant bank obtained actual knowledge of the fraudulent scheme);  *Diaz*, 2018 WL 2215790, at *6 ("Although Plaintiffs' allegations may support an

---

[2] Plaintiffs' failure to allege more detailed facts in support of their aiding and abetting claims despite almost nearly a year of discovery is telling.

inference that Intuit was suspicious of potential fraud or knew that there was a risk of fraud, the allegations are insufficient to show that Intuit had 'actual knowledge' of fraud."); *Lorenz v. E. W. Bancorp, Inc.*, No. 215CV06336CASFFMX, 2016 WL 199392, at *8 (C.D. Cal. Jan. 14, 2016) (identifying numerous alleged facts concerning the who, what, when, where, and how a bank obtained actual knowledge of the underlying fraud beyond generic allegations that a bank had "enhanced due diligence" obligations to support an aiding and abetting claim).

*Paskenta* faithfully applied prior California rulings, and reaffirmed the longstanding doctrine that conclusory allegations of actual knowledge are not enough to establish an aiding and abetting claim. *Paskenta*, 846 F. App'x at 590. Plaintiffs frequently cite to *Chang* and *Woodbridge* in their brief, and those cases recognize this same rule. *Chang v. Wells Fargo Bank, N.A.*, No. 19-cv-01973-HSG, 2020 WL 1694360, at *3-5 (N.D. Cal. Apr. 7, 2020); *In re Woodbridge Investments Litig.*, No. 18-cv-103-DMG, 2020 WL 4529739, at *5-7 (C.D. Cal. Aug. 5, 2020).

The importance of *Paskenta* in Umpqua's motion to dismiss is not to describe a change in the well-established law, but to show how the Ninth Circuit recently applied that well-established law to facts that are incredibly analogous to the facts of this case. *Paskenta*, 846 F. App'x at 590. To start, Umpqua is the defendant in both cases, and in both cases, Umpqua faced allegations that it had aided and abetted various criminal activities. *See id.* In *Paskenta*, the complaint was 219 pages long and alleged that Umpqua had actual knowledge of the criminals' fraud because, among other reasons, Umpqua frequently processed checks for large sum withdrawals, Umpqua tellers were aware of the criminals' extravagant and luxurious lifestyle, and Umpqua continued to process transactions for the criminals after the local press revealed that the criminals were suspected of stealing or converting millions of dollars. *Paskenta I*, 122 F. Supp. 3d at 990; *Paskenta II*, 2016 WL 1587233, at *6; *Paskenta III*, 2016 WL 6094468, at *4, 7. Those facts are incredibly analogous to the facts here, in which Plaintiffs assert, among other allegations, that Umpqua worked with Casey because he "raised hundreds of millions of dollars from investors," Opp. 4, that Umpqua was aware of unusual business practices in which Casey "kept close control over" his companies, Opp. 4-5, and that Umpqua knew that Casey "was a convicted felon," Opp. 4. Critically, *Paskenta* emphasized that that allegations of "various irregularities requir[ing] further

investigation by Umpqua Bank" were not sufficient to allege actual knowledge. *Paskenta*, 846 F. App'x at 590 (citing *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 745 (2010) (affirming dismissal of an aiding and abetting claim because plaintiff failed to allege that "the bank had actual knowledge of the underlying wrong it purportedly aided and abetted")); *see also Chavez v. United States*, 683 F.3d 1102, 1108-10 (9th Cir. 2012) (explaining that "conclusory statements . . . are not entitled to the presumption of truth"). The facts in *Paskenta* are therefore incredibly on-point with the facts of this case.

*Paskenta* remains comparable to this case even though *Paskenta* was about unauthorized withdrawals, and not a Ponzi scheme like in this case. The Ninth Circuit did not cite or rely on California Financial Code § 1451 in its analysis of the aiding and abetting claims in *Paskenta*, and that statute was not determinative in the Ninth Circuit's conclusion. *See Paskenta*, 846 F. App'x at 589-590. Rather, the Ninth Circuit analyzed the type of allegations that a plaintiff is required to allege to support an aiding and abetting claim, and it emphasized that conclusory allegations of actual knowledge must be plausible. *See id. Paskenta* should therefore guide this Court's ruling on this motion to dismiss, and as in *Paskenta*, this Court should recognize that Plaintiffs failed to any actual knowledge.

### III. CONCLUSION

Accordingly, Umpqua respectfully requests that Plaintiffs' FAC be dismissed with prejudice, and without leave to amend.

DATED: August 18, 2021

/s/ Alicia A. Baiardo
**MCGUIREWOODS LLP**
David C. Powell (SBN 129781)
dpowell@mcguirewoods.com
Alicia A. Baiardo (SBN 254228)
abaiardo@mcguirewoods.com
Anthony Q. Le (300660)
ale@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA  94111-3821
Telephone:  415.844.9944
Facsimile:  415.844.9922

Attorneys for Defendant
Umpqua Bank

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2021, I electronically filed the foregoing document entitled **DEFENDENT UMPQUA BANK'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

Dated: August 18, 2021                                By: */s/ Alicia A. Baiardo*
                                                                                Alicia A. Baiardo