1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    SHELA CAMENISCH, et al.,                    Case No. 20-cv-05905-RS (AGT)

8                     Plaintiffs,

9           v.                                   **DISCOVERY ORDER**

10   UMPQUA BANK,                                Re: Dkt. No. 47

11                    Defendant.

12          The suspicious activity report (SAR) privilege applies to only some of the 136 documents

13   that Umpqua Bank submitted for *in camera* review.  Umpqua has apparently objected to producing

14   some of the 136 documents based on additional, non-SAR-privilege grounds.  *See* Dkt. 47 at 3.  The

15   Court wasn't asked to consider those objections, and so won't overrule or sustain them or order

16   Umpqua to produce the withheld documents at this time.  The bank, however, can no longer

17   withhold certain documents based on the SAR privilege.

18                          A.  Relevant Legal Principles

19          If a bank detects money laundering or other illegal conduct, it typically must file a SAR with

20   the appropriate federal authorities.  *See* 12 C.F.R. § 21.11(a), (c).  As relevant here, "[a] SAR, and

21   any information that would reveal the existence of a SAR, are confidential, and shall not be

22   disclosed."  *Id.* § 21.11(k) (Office of the Comptroller of the Currency regulation); *see also* 31 C.F.R.

23   § 1020.320(e) (nearly identical regulation from the Financial Crimes Enforcement Network).

24          Only one circuit court has considered the scope of this "privilege" in detail.  In *In re*

25   *JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 39–41 (1st Cir. 2015), the First Circuit reviewed the

26   governing regulations, agency guidance, and several district court decisions.  It then explained that

27   under the existing law and guidance, "the key query" to be used to determine if a document is

28   protected by the privilege is whether the document "suggest[s], directly or indirectly, that a SAR

was or was not filed." *Id.* at 43.

Umpqua cites *JPMorgan Chase*, but the bank also champions a somewhat broader interpretation of the privilege. It suggests that once a bank begins to investigate suspicious activity, any documents generated during that investigation should be protected. *See* Dkt. 47 at 4. The problem with this approach is that it's less faithful to the text of the governing regulations. Not every document that a bank prepares during a suspicious-activity investigation "[will] reveal the existence of a SAR," 12 C.F.R. § 21.11(k), 31 C.F.R. § 1020.320(e), or otherwise "suggest, directly or indirectly, that a SAR was or was not filed," *JPMorgan Chase*, 799 F.3d at 43. Some bank-prepared documents may simply aggregate relevant account or transactional information, flag potentially suspicious activity that needs to be investigated further, or explain what steps need to be taken as part of that investigation. Documents like these may reflect the bank's due diligence, but they won't always shed light on whether or not a SAR was filed.

The First Circuit similarly "decline[d] Chase's invitation to view the 'privilege' as extending to any document that might speak to the investigative methods of financial institutions." *Id.* at 44. Noting that Chase's approach "would see the bulk of a financial institution's investigative file in a particular case shielded from discovery," the court reasoned that "Congress and/or the agencies certainly would have used broader, less specific language had that been their intent." *Id.* This Court agrees. Consistent with the governing regulations, the key query isn't whether a document was prepared during a bank's suspicious-activity investigation, but whether it "suggest[s], directly or indirectly, that a SAR was or was not filed." *Id.* at 43.

## B. Application

1. The SAR privilege applies to document nos. 1–9, 20, 22, and 32. These documents are Umpqua-prepared spreadsheets, investigation worksheets, related write-ups, and emails, all of which are evaluative in nature. They suggest, directly or indirectly, that a SAR was or was not filed.

2. The SAR privilege doesn't apply to document nos. 10–17, 19, 21, 23–31, or 33–136. These documents are reports, emails, and screenshots of Umpqua's banking system. They compile account information (e.g., customer contact information, account balances, tax identification numbers), reflect an information-gathering process, or reflect initial reports of unusual activity.

They capture bank due diligence efforts, but they don't suggest, directly or indirectly, that a SAR was or was not filed.

     3.  The one remaining document, no. 18, is a spreadsheet that identifies suspicious-activity alerts generated by an Umpqua-utilized automated alert system.  Umpqua doesn't assert that the spreadsheet is protected by the SAR privilege.  The bank instead represents that it has already produced a copy of the spreadsheet.

C.  <u>Conclusion</u>

     The SAR privilege applies to 12 of the 136 documents that Umpqua submitted for *in camera* review.  As to those 12 documents (nos. 1–9, 20, 22, and 32), Umpqua must withhold them.  *See JPMorgan Chase*, 799 F.3d at 39–40 ("District courts have extrapolated from the [SAR] statute and regulations 'an unqualified discovery and evidentiary privilege that . . . cannot be waived.'" (omission in original) (citing *Whitney Nat. Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004))).  As to the other documents, the parties must meet and confer to discuss Umpqua's remaining objections.

     **IT IS SO ORDERED.**

Dated: September 14, 2021

_____
ALEX G. TSE
United States Magistrate Judge