Michael L. Schrag (SBN 185832)
Linda P. Lam (SBN 301461)
Geoffrey A. Munroe (SBN 228590)
Amy M. Zeman (SBN 273100)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
lpl@classlawgroup.com
gam@classlawgroup.com
amz@classlawgroup.com

Scott L. Silver (*pro hac vice*)
Ryan A. Schwamm (*pro hac vice*)
**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, FL 33065
Telephone: 954-755-4799
Facsimile: 954-755-4684
ssilver@silverlaw.com
rschwamm@silverlaw.com

*Counsel for Plaintiffs and the Class*

David C. Powell (SBN 129781)
Alicia A. Baiardo (SBN 254228)
Anthony Q. Le (SBN 300660)
**MCGUIRE WOODS LLP**
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone: (415) 844-9944
Facsimile: (415) 844-9922
dpowell@mcguirewoods.com
abaiardo@mcguirewoods.com
ale@mcguirewoods.com

Kasey J. Curtis (SBN 268173)
**REED SMITH**
355 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 457-8089
Facsimile: (213) 457-8080
kcurtis@reedsmith.com

*Counsel for Defendant*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELA CAMENISCH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UMPQUA BANK,<br><br>Defendant. | Case No. 3:20-cv-5905-RS (AGT)<br><br>**JOINT PROPOSED OMNIBUS SEALING ORDER** |

## JOINT PROPOSED OMNIBUS SEALING ORDER

Pursuant to the Court's order (Dkt. 144 at 16), Plaintiffs and Defendant Umpqua Bank submit this joint proposed omnibus sealing order to resolve the sealing motions filed in connection with the parties' class certification and summary judgment motions (Dkt. 79, 81, 94, 118, 119, 122, and 124).

The parties have significantly narrowed the scope of materials subject to sealing or redaction, have agreed that two categories of information should remain sealed or redacted, and seek the Court's input on one narrow category where they were unable to reach agreement.

### I.   Categories of Information the Parties Agree Should Remain Sealed or Redacted

The parties propose that the following information be sealed or redacted: (1) class members' and other non-party investors' personal information (e.g., social security numbers, bank account numbers, addresses, phone numbers, etc.), and (2) Umpqua documents that would reveal the bank's Anti-Money Laundering ("AML") and related practices and policies.

#### A.   Investors' Personal Information

The parties agree that compelling reasons exist to redact class members' and non-party investors' personal information pursuant to Local Rule 79-5(c) because those individuals have an interest in protecting such personal information from public disclosure.  *See Nichols v. AARP, Inc.*, 2021 WL 1091517, at *1 (N.D. Cal. Feb. 19, 2021) (compelling reasons exist to keep personal financial information under seal).

Indeed, pursuant to Federal Rule of Civil Procedure 5.2(a), much of this information is supposed to be redacted from filings in the ordinary course.  *See* Fed. R. Civ. P. 5.2(a)(1)-(4) (requiring parties to redact social security numbers, birth years, financial account numbers, etc.).  The only additional categories of information that the parties are seeking to redact beyond those explicitly covered by Rule 5.2(a) are those that encompasses logical extensions of that rule—for instance, addresses, phone numbers, and email addresses.

If this personal information is not redacted, the public will have access to personal information that could harm investors.  *See Covert v. City of San Diego*, 2016 WL 7117364, at *3 (S.D. Cal. Dec. 6, 2016); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 524 n.2 (N.D. Cal. 2009) (granting motion to seal plaintiff's "personal financial information and investment decisions").

The specific personal information to be kept redacted or under seal are found in the docket as follows:

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| Ex. 26 to Schrag Decl. | Dkt. No. 80-27 | Only the e-mail address that appears in the "From" field of the bottom e-mail |
| Ex. 37 to Baiardo Decl. | Dkt. No. 97-37 | All addresses throughout |
| Ex. 42 to Baiardo Decl. | Dkt. No. 97-42 | The e-mail addresses in this chain other than questionspfi@gmail.com |
| Ex. 43 to Baiardo Decl. | Dkt. No. 97-43 | The e-mail address in this chain other than questionspfi@gmail.com |
| Ex. 46 to Baiardo Decl. | Dkt. No. 97-46 | The e-mail address in this chain other than questionspfi@gmail.com |
| Ex. 47 to Baiardo Decl. | Dkt. No. 97-47 | Only the e-mail address other than questionspfi@gmail.com on this chain |
| Ex. 48 to Baiardo Decl. | Dkt. No. 97-48 | Only the e-mail address other than questionspfi@gmail.com on this chain |
| Ex. 72 to Schrag Decl. | Dkt. No. 123-4 | Payor addresses and account numbers on checks dated 6/13/2018 and 6/15/2018 |
| Ex. 76 to Schrag Decl. | Dkt. No. 123-4 | The payor addresses on all checks |
| Ex. 84 to Schrag Decl. | Dkt. No. 123-4 | The addresses and account numbers of payors on all checks |
| Ex. 99 to Schrag Decl. | Dkt. No. 123-4 | The addresses and account numbers of payors on all checks except for the check from Lewis Wallach |
| Ex. 103 to Schrag Decl. | Dkt. No. 123-4 | The addresses and account numbers of payors on all checks |
| Ex. 104 to Schrag Decl. | Dkt. No. 123-4 | Only the address of the payee on the last check |
| Ex. 108 to Schrag Decl. | Dkt. No. 123-4 | The payor addresses and account numbers on all checks on the second page |
| Ex. 110 to Schrag Decl. | Dkt. No. 123-4 | The payee addresses on all checks except for the fourth check |
| Ex. 111 to Schrag Decl. | Dkt. No. 123-4 | The payee addresses on all checks except for the fourth check |
| Ex. 112 to Schrag Decl. | Dkt. No. 123-4 | The payor addresses and account numbers on all checks except for the top check from Lewis Wallach and the third check from High Country Bank |

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| Ex. 114 to Schrag Decl. | Dkt. No. 123-4 | Only the payor address and account number on the last check |
| Ex. 117 to Schrag Decl. | Dkt. No. 123-4 | The payee addresses on all checks |
| Ex. 118 to Schrag Decl. | Dkt. No. 123-4 | The payee addresses on all checks |
| Ex. 119 to Schrag Decl. | Dkt. No. 123-4 | **Page 1**, the payor address and account number on the first check<br>**Page 2**, the payor address and account number on all checks |
| Ex. 134 to Schrag Decl. | Dkt. No. 123-4 | The beneficiary address on the second wire |

### B.    Five Documents Related to Umpqua's Anti-Money Laundering Practices And Policies

The parties also agree that compelling reasons exist to seal five documents that could reveal Umpqua's Anti-Money Laundering ("AML") practices and policies under Local Rule 79-5(c) because these documents are proprietary and if made public, could give criminals a roadmap for how to avoid detection for financial crimes and misconduct. Specifically, the following exhibits (identified in the chart below) should remain under seal:[1]

**Exhibit 97:** Exhibit 97 explains the universe of rules, provides explanations about the rules underlying the alerts, how the alerts are triggered, and their titles used by Actimize, Umpqua's automated anti-money laundering system used to comply with Bank Secrecy Act ("BSA") and AML laws and regulations. This information is highly sensitive and involves a proprietary automated money laundering detection system. If these exhibits are publicly disclosed, the public may be able to understand exactly how and when alerts are triggered by third-party intelligence platforms commonly used by banks and what metrics banks use to detect money laundering. *E. W. Bank v. Shanker*, 2021 WL 3112452, at *18 (N.D. Cal. July 22, 2021) (sealing material reflecting competitively sensitive information regarding the bank's processes, relationships and information regarding

---

[1] Umpqua previously sought to seal the following types of documents and information, which it has agreed to omit from this request, including, documents showing the deposit ledger for the Novato branch, documents showing the enhanced due diligence and Know Your Customer (KYC) functions that were performed on PFI; and internal emails discussing the profitability of the Novato Branch.

Joint Proposed Omnibus Sealing Order
Case No. 3:20-cv-5905-RS (AGT)

BSA/AML/OFAC/KYC procedures); *Obesity Research Institute, LLC v. Fiber Research International, LLC*, 2017 WL 6270268, at *2 (S.D. Cal. Dec. 8, 2017) (sealing proprietary business information).

**Exhibit 64:**  Exhibit 64 is Umpqua's Due Diligence policies and procedures. Umpqua will limit the redactions to AML policies and procedures describing how it assesses risk and how it processes that information for its reporting to regulators.

**Exhibits 54, 95 & 96:** Exhibits 55, 95, and 96 are Actimize alerts spreadsheets. Specifically, Exhibit 54/95 is the Actimize spreadsheet identifying alerts triggered on PFI from Umpqua's automated AML system used to comply with BSA/AML laws and regulations. Exhibit 96 is a revised Actimize spreadsheet identifying alerts triggered on PFI from Umpqua's automated anti-money laundering system used to comply with BSA/AML laws and regulations. Umpqua uses a third-party intelligence platform/system to help, through automated means, detect potential money-laundering activity. The spreadsheets identify more than 150 automated SAM alerts, and 0 enhanced due diligence alerts, from 2018 through 2021. The spreadsheet shows the date of the alert, a unique alert identifier, the entity triggering the alert, the action taken on the alert, including if the alert closed, the Umpqua review analyst reviewing the alert, and the "rule" name, or brief explanation, for why the alert was triggered. Umpqua seeks only to redact the "rule" name, or brief explanation, for why the alert was triggered. This column in the alert spreadsheet is highly sensitive and contains information involving a proprietary automated money laundering detection system. Disclosing this to the public will put Umpqua at a competitive disadvantage, provide the public with information on how Umpqua measures risk, and, if made public, this information could give criminals a roadmap for how to avoid detection for financial crimes and misconduct. *E. W. Bank*, 2021 WL 3112452, at *18 (sealing material reflecting competitively sensitive information regarding the bank's processes, relationships and information regarding BSA/AML/OFAC/KYC procedures); *Obesity Research Institute, LLC*, 2017 WL 6270268, at *2 (sealing proprietary business information).

//

//

//

//

These specific documents are located on the docket as follows:

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| Ex. 54 to Schrag Decl. | Dkt. No. 80-55 | **Redact** entire column titled "Alert Rules" |
| Ex. 64 to Schrag Decl. | Dkt. No. 123-3 | **Page 3,** redact starting with the section titled "Actimize Alert Overview"<br>**Page 4-8,** entirety<br>**Page 9**, redact through "Recommendation Section"<br>**Page 15-25**, entirety |
| Ex. 95 to Schrag Decl. | Dkt. No. 123-4 | **Redact** entire column titled "Alert Rules" |
| Ex. 96 to Schrag Decl. | Dkt. No. 123-4 | **Redact** entire column titled "Alert Rules" |
| Ex. 97 to Schrag Decl. | Dkt. No. 123-3 | **Entirety** |

## II.     Category of Information Where the Parties Could Not Reach Agreement

### A.     Class Member and Non-Party Investor Identities

The parties were unable to agree whether class member and non-party investor identities should be kept under seal and set forth their respective positions here.

#### 1.     Plaintiffs' Position

Plaintiffs respectfully request that the Court protect victims of the PFI Ponzi scheme by keeping their identities under seal. Umpqua previously stated that it did not oppose the sealing of investor names (Dkt. 86) but has changed its mind and now opposes Plaintiffs' request.

If the names of PFI investors are not redacted, the public will have access to the identity of each person who chose to invest in PFI and PISF, how much each invested, when they invested, and how much money each lost. This information could be embarrassing for these individuals and their families and could make them attractive targets for other financial fraudsters. *See Covert,* 2016 WL 7117364 at *3 (sealing information that could embarrass a party and his family); *In re LDK Solar Sec. Litig.*, 255 F.R.D. at 524 n.2 (granting motion to seal plaintiff's "personal financial information and investment decisions").

Umpqua has argued that investor names should not be redacted because their identities can be found within PFI's voluminous bankruptcy docket. Plaintiffs, however, have been unable to locate any documents there that identify all investor names or combine the name with the level of personal

financial data and transactions that are included in this litigation. Umpqua cites to Dkt. 62 of PISF's

bankruptcy docket (Case No. 20-30579), which is a 496-page list of PISF creditors, but that document

does not include an isolated and comprehensive list of Ponzi scheme victims like the lists at issue here.

For example, it does not include the class members identified as 20004, 20044, 20056, and 20084 in

Plaintiffs' table of damages calculations. *See* Dkt. 81-1. And contrary to Umpqua's statement, the

schedules at Dkt. 62 in the bankruptcy action do not provide the level of investment detail and

calculations of investors' losses that have been disclosed here. Given the sensitive nature of financial

information and the potential for criminals to utilize this information to further victimize class members

and non-party investors, compelling reasons exist to seal class member and non-party identities.

Umpqua has further argued that class member identities should be publicly filed merely because

they are class members. Aside from the fact that class members in this matter have not yet had the

opportunity to opt out of the class, courts have often found compelling reasons to seal class member

names. *See Gonzalez v. Barr*, No. 18-CV-01869-JSC, 2020 WL 3402227, at *10 (N.D. Cal. June 19,

2020) ("The Court agrees that sealing is warranted. . . . [T]he proposed redactions are narrowly tailored

to only the names and alien registration numbers of absent class members . . . . Compelling reasons

justify sealing that identifying information because the information has no bearing on the merits of this

action, and the public's interest in the identities of absent class members is minimal to non-exist and

outweighed by the risk of harm to those individuals given that many are seeking asylum."); *Lucy Chi v.

Univ. of S. California*, No. 218CV04258SVWGJS, 2019 WL 3315282, at *9 (C.D. Cal. May 21, 2019)

("This compelling reason outweighs any contravening public interest in accessing the names of

particular class members . . . . But the forced public disclosure of certain class members' identities

could only be used for 'improper purposes.'); *O'Connor v. Uber Techs., Inc.,* No. 13-CV-03826-EMC,

2017 WL 6504064, at *2 (N.D. Cal. Sept. 6, 2017) ("[T]he Court agrees that there is good cause to

redact the name of the class member discussed in the declaration to protect that individual's privacy

interests").

//

//

//

The specific documents Plaintiffs seek to be kept under seal to protect class member and non-party investor identities are found in the docket as follows.

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| Plaintiffs' Motion for Class Certification | Dkt. No. 80 | **Page 11**, only the eight names on lines 6-7 |
| Ex. 26 to Schrag Decl. | Dkt. No. 80-27 | Only the name that appears in the "From" field of the bottom e-mail and in the body of the top e-mail |
| Ex. 41 to Schrag Decl. | Dkt. No. 80-42 | Only the name that appears in the body of e-mail sent on 3/30/16 at 4:11 p.m. |
| Ex. 47 to Schrag Decl. | Dkt. No. 80-48 | **Page 1**, only the names that appear on the two incoming wires dated 2/14 <br><br> **Page 2**, only the names that appear on the three outgoing wires dated 2/13 <br><br> **Page 3**, only the names that appear on the outgoing wire dated 2/21 and the outgoing wire dated 2/23 |
| Ex. 58 to Schrag Decl. | Dkt. No. 80-59 | **Page 1 of Nov. statement**, only the names that appear on the incoming wires dated 11/1, 11/2, 11/16, 11/19, 11/20, 11/21, 11/23 <br><br> **Page 2 of Nov. statement**, only the names that appear on the incoming wires dated 11/30 and the outgoing wires dated 11/13 and 11/15 <br><br> **Page 4 of Nov. statement**, only the name that appears on the righthand check <br><br> **Page 1 of Dec. statement**, only the names that appear on incoming wires dated 12/3, 12/7, and 12/28 <br><br> **Page 2 of Dec. statement**, only the names that appears on the 12/14 ACH credit, the 12/3 transfer, two of the 12/7 transfers, and the 12/14 outgoing wire |
| Ex. 60 to Schrag Decl. | Dkt. No. 80-61 | Only the last name that appears in body of e-mail sent on 11/18/16 at 2:35 p.m. |
| Schedule 2 to Salah Report | Dkt. No. 80-16 at 17 <br> Dkt. No. 120-2 at 3 | Names in the "UOA Name" column throughout |
| Schedule 3 to Salah Report | Dkt. No. 80-16 at 18 <br> Dkt. No. 120-2 at 4 | Names in the "UOA Name" column throughout |

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| Schedule 4 to Salah Report | Dkt. No. 80-16 at 19<br>Dkt. No. 120-2 at 5 | Names in the "UOA Name" column throughout |
| Schedule 5 to Salah Report | Dkt. No. 80-16 at 20<br>Dkt. No. 120-2 at 6 | Names in the "UOA Name" column throughout |
| Ex. 7 to Baiardo Decl. | Dkt. No. 97-7 | Only the name in this chat other than Luna Baron |
| Ex. 12 to Baiardo Decl. | Dkt. No. 97-12 | Only the full names on this chat other than Luna Baron |
| Ex. 14 to Baiardo Decl. | Dkt. No. 97-14 | Only the names of those writing messages/comments throughout this document, other than Lu Baron and Shela Dean |
| Ex. 36 to Baiardo Decl. | Dkt. No. 97-36 | Only the names of those writing messages/comments throughout |
| Ex. 37 to Baiardo Decl. | Dkt. No. 97-37 | All names throughout |
| Ex. 38 to Baiardo Decl. | Dkt. No. 97-38 | All names in "UOA_NAME" column throughout |
| Ex. 40 to Baiardo Decl. | Dkt. No. 97-40 | **Page 3**, lines 15-24, only the names<br>**Page 4**, line 4, only the name<br>**Page 174**, lines 5 and 7-9, only the names<br>**Page 175**, lines 22-23, only the two names<br>**Page 176**, line 4, only the name<br>**Page 178**, line 22, only the name<br>**Page 179**, line 5, only the name<br>**Page 180**, line 14, only the name<br>**Page 181**, lines 9 and 11, only the name<br>**Page 184**, lines 1 and 4, only the name<br>**Page 192**, lines 24-25, only the names<br>**Page 193**, lines 1-6, only the names<br>**Page 198**, lines 8-9, only the name<br>**Page 199**, lines 12-13 and 16-17, only the name |
| Ex. 42 to Baiardo Decl. | Dkt. No. 97-42 | The name in the "From" field and the names in the body of the e-mail |
| Ex. 43 to Baiardo Decl. | Dkt. No. 97-43 | The names in this e-mail chain other than "Shela" |
| Ex. 46 to Baiardo Decl. | Dkt. No. 97-46 | The full name in this e-mail chain other than "Shela" |
| Ex. 47 to Baiardo Decl. | Dkt. No. 97-47 | Only the one full name on this e-mail chain |

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| Ex. 48 to Baiardo Decl. | Dkt. No. 97-48 | Only the one full name on this e-mail chain |
| Declaration of Linda P. Lam in support of Plaintiffs' Motion for Class Certification | Dkt. No. 120-1 | **Page 2**, lines 3-8, only the names in the "Payor/(Payee)" column at lines 2-3, 5-6, 8, and 10-11 of the chart<br>**Page 2**, lines 16-17, only the four investor names |
| Plaintiffs' Opposition to Umpqua Bank's Motion for Summary Judgment | Dkt. No. 123 | **Page 8**, lines 10-16, only the names in the "Payor/(Payee)" column at lines 1-2, 4-5, and 9 of the chart<br>**Page 10**, lines 10-17, only the names in the "Payor/(Payee)" column at lines 2, 4, and 6-8 of the chart |
| Declaration of Catherine A. Ghiglieri | Dkt. No. 123-1 | **Page 22**, lines 10-16, only the names in the "Payor/(Payee)" column at lines 1-2, 4-5, and 9 of the chart<br>**Page 22**, the five names in lines 19-20<br>**Page 23**, lines 18-23, only the names in the "Payor/(Payee)" column at lines 1-3 and 5-9 of the chart<br>**Page 24**, lines 1-8, only the names in the "Payor/(Payee)" column at lines 1-6, 9, and 12 of the chart<br>**Page 24**, the two names in line 13<br>**Page 25**, lines 10-25, only the names in the "Payor/(Payee)" column at lines 1-7, 9-12, 17, 19, and 23-24 of the chart<br>**Page 36**, lines 16-26, only the names in the "Payor/(Payee)" column at lines 1-2, 4-5, 9-13 and 17-18 of the chart<br>**Page 37**, the four names in line 9<br>**Page 39**, lines 9-18, only the names in the "Payor/(Payee)" column at lines 2, 4, 6-9, 11-13, and 16 of the chart<br>**Page 39**, the five names in lines 25-26, starting after the colon<br>**Page 40**, the two names in line 1<br>**Page 41**, lines 2-23, only the names in the "Payor/(Payee)" column at lines 1-3, 5, 7-8, 10-12, 15, 20, 27-28, 30, and 37 of the chart<br>**Page 42**, the ten names in lines 4-8<br>**Page 43**, lines 6-22, only the names in the "Payor/(Payee)" column at lines 1-3, 6-11, 13-14, and 18-20 of the chart |

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| | | **Page 44**, the six names in lines 11-12 |
| | | **Page 45**, lines 8-16, only the names in the "Payor/(Payee)" column at lines 3-5, 7-9, and 12-15 of the chart |
| | | **Page 45**, the name in line 25 |
| | | **Page 46**, the six names in lines 3-5 |
| | | **Page 47**, lines 2-17, only the name in the "Payor/(Payee)" column at line 13 of the chart |
| | | **Page 48**, the two names in line 2 |
| | | **Page 50**, lines 1-11, only the names in the "Payor/(Payee)" column at lines 3, 5, 7-8, 12-14, of the chart |
| | | **Page 50**, the six names in lines 15-16 |
| Ex. 30 to Schrag Decl. | Dkt. No. 123-3 | **Page 6**, the payee name on the top check, right column |
| | | **Page 8**, the payee name on the fourth check, right column |
| Ex. 33 to Schrag Decl. | Dkt. No. 123-3 | **Page 5**, the payee name on the last check, right column |
| | | **Page 7**, the payee name on the second check, left column |
| | | **Page 9**, the payee name on the third check, right column |
| | | **Page 11**, the payee name on the first check, left column |
| | | **Page 12**, the payee name on the last check, left column |
| Ex. 71 to Schrag Decl. | Dkt. No. 123-4 | **Page 1,** the names on incoming wires dated 6/1, 6/5, and 6/22 |
| Ex. 72 to Schrag Decl. | Dkt. No. 123-4 | Payor names on checks dated 6/13/2018 and 6/15/2018 |
| Ex. 75 to Schrag Decl. | Dkt. No. 123-4 | **Page 1**, the names on incoming wires dated 2/1 |
| | | **Page 2**, the names on incoming wire dated 2/25, two outgoing wires dated 2/2, outgoing wire dated 2/4, the first and third outgoing wires dated 2/8, and outgoing wire dated 2/17 |
| | | **Page 3**, the names on first, second, and third wire transfers dated 2/19, the second outgoing wire dated 2/22, the first outgoing wire dated 2/26, and outgoing wire dated 2/29 |

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| | | **Page 5**, the payee names on all checks<br>**Page 6**, the payee names on all checks |
| Ex. 76 to Schrag Decl. | Dkt. No. 123-4 | The payor names on all checks, as well as the names in any "memos" on checks |
| Ex. 77 to Schrag Decl. | Dkt. No. 123-4 | The payee names on all checks |
| Ex. 81 to Schrag Decl. | Dkt. No. 123-4 | The names of any individuals that appear in the "payee" fields of all checks |
| Ex. 82 to Schrag Decl. | Dkt. No. 123-4 | The names of any individuals that appear in the "payee" fields of all checks |
| Ex. 83 to Schrag Decl. | Dkt. No. 123-4 | The names of any individuals that appear in the "payee" fields of all checks |
| Ex. 84 to Schrag Decl. | Dkt. No. 123-4 | The names of payors on all checks, as well as the names in any "memos" on all checks |
| Ex. 85 to Schrag Decl. | Dkt. No. 123-4 | The names of any individuals that appear in the "payee" fields of all checks |
| Ex. 91 to Schrag Decl. | Dkt. No. 123-4 | Only the third name that appears in the body of the e-mail sent on 11/18/16 at 2:35 p.m. |
| Ex. 98 to Schrag Decl. | Dkt. No. 123-4 | **Page 1**, the names on incoming wires dated 6/1 and 6/22 |
| Ex. 99 to Schrag Decl. | Dkt. No. 123-4 | The names of payors on all checks except for the check from Lewis Wallach |
| Ex. 101 to Schrag Decl. | Dkt. No. 123-4 | **Page 1 of Aug. statement**, the names on all incoming wires except for the last wire on 8/26<br>**Page 1 of Sep. statement**, the names on all incoming wires |
| Ex. 103 to Schrag Decl. | Dkt. No. 123-4 | The names of payors on all checks |
| Ex. 104 to Schrag Decl. | Dkt. No. 123-4 | Only the name of the payee on the last check |
| Ex. 105 to Schrag Decl. | Dkt. No. 123-4 | **Page 1 of April statement**, the name on incoming wire dated 4/1<br>**Page 2 of April statement**, the names on incoming wires dated 4/16, 4/23, and 4/29<br>**Page 4 of April statement**, the names on outgoing wires dated 4/1, fourth cash management transfer dated 4/1, outgoing wire dated 4/3, wire transfer dated 4/4, outgoing wires dated 4/5 aside from the Baker McKenzie wire, outgoing wire dated 4/9, and the second outgoing wire dated 4/10<br>**Page 5 of April statement**, the names on the |

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| | | outgoing wire dated 4/11, the first and second wire transfers dated 4/12, outgoing wires dated 4/16, outgoing wires dated 4/18, outgoing wires dated 4/19, and outgoing wires dated 4/22 |
| | | **Page 6 of April statement**, the names on the outgoing wires dated 4/23, 4/25, 4/26, 4/29, and 4/30 |
| | | **Page 1 of May statement**, the name on the incoming wire dated 5/2 |
| | | **Page 2 of May statement**, the names on incoming wires dated 5/9, 5/20, and 5/30, as well as the names on outgoing wires dated 5/1 |
| | | **Page 3 of May statement**, the names on the outgoing wire dated 5/2, outgoing wire dated 5/6, the second, third, and fourth outgoing wires dated 5/9, the first and second outgoing wires dated 5/10, the international wires dated 5/13, outgoing wires dated 5/15, outgoing wire dated 5/17, outgoing wire dated 5/20, the three outgoing wires dated 5/21, and outgoing wire dated 5/22 |
| | | **Page 4 of May statement**, the names on outgoing wires dated 5/23, 5/24, 5/28, 5/30, and 5/31 |
| Ex. 106 to Schrag Decl. | Dkt. No. 123-4 | The names that appear on the payor lines on each check except for the top check |
| Ex. 107 to Schrag Decl. | Dkt. No. 123-4 | The names that appear on the payor lines on each check |
| Ex. 108 to Schrag Decl. | Dkt. No. 123-4 | The names that appear in the "memos" of the checks on the first page, as well as the payor names on all checks on the second page, and all payor addresses and account numbers on the third page, and all payor names on the third page |
| Ex. 109 to Schrag Decl. | Dkt. No. 123-4 | **Page 2,** the names on the incoming wire dated 8/31, the last outgoing wire dated 8/3, outgoing wires dated 8/6, and outgoing wire dated 8/9 |
| | | **Page 3,** the names on the international wires dated 8/13, the outgoing wire dated 8/15, the outgoing wire dated 8/17, the outgoing wire dated 8/20, the international wire dated 8/23, the outgoing wire dated 8/23, the outgoing wire dated 8/27, and the first and second outgoing wires dated 8/31 |

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| Ex. 110 to Schrag Decl. | Dkt. No. 123-4 | The payee names on all checks except for the fourth check |
| Ex. 111 to Schrag Decl. | Dkt. No. 123-4 | The payee names on all checks except for the fourth check |
| Ex. 112 to Schrag Decl. | Dkt. No. 123-4 | The payor names on all checks except for the top check from Lewis Wallach and the third check from High Country Bank |
| Ex. 113 to Schrag Decl. | Dkt. No. 123-4 | **Page 1**, the name on the incoming wire dated 8/14<br><br>**Page 2**, the names on all the incoming wires dated 8/17, 8/20, and 8/24 |
| Ex. 114 to Schrag Decl. | Dkt. No. 123-4 | Only the payor names on the last check |
| Ex. 115 to Schrag Decl. | Dkt. No. 123-4 | **Page 1**, the name on the incoming wire dated 4/9<br><br>**Page 2**, the name on the outgoing wire dated 4/3<br><br>**Page 3**, the name on the transfer dated 4/9 |
| Ex. 116 to Schrag Decl. | Dkt. No. 123-4 | **Page 1**, the names on the incoming wires dated 4/6<br><br>**Page 2**, the names on the incoming wire dated 4/14, the transfer dated 4/14, the incoming wire dated 4/15, the second incoming wire dated 4/17, and the two incoming wires dated 4/21<br><br>**Page 4**, the names on the first two outgoing wires dated 4/1, the two outgoing wires dated 4/2, the outgoing wire dated 4/3, and the outgoing wires dated 4/6<br><br>**Page 5**, the names on the outgoing wire dated 4/6, the three outgoing wires dated 4/7, the outgoing wire dated 4/8, the two outgoing wires dated 4/9, the international transfer dated 4/13, the outgoing wire dated 4/14, the outgoing wire dated 4/20, the first and second outgoing wires dated 4/22, and the outgoing wires dated 4/23<br><br>**Page 6**, the names on the outgoing wires dated 4/27 and the first outgoing wire dated 4/28 |
| Ex. 117 to Schrag Decl. | Dkt. No. 123-4 | The payee names on all checks |
| Ex. 118 to Schrag Decl. | Dkt. No. 123-4 | The payee names on all checks |

| Document Title | Docket Location | Information to Remain under Seal |
|---|---|---|
| Ex. 119 to Schrag Decl. | Dkt. No. 123-4 | **Page 1**, the payor name on the first check, as well as the payor name and "memo" on the second check<br>**Page 2**, the payor name on all checks |
| Ex. 134 to Schrag Decl. | Dkt. No. 123-4 | The beneficiary name on the second wire |

### 2.      Defendants' Position

Plaintiffs cannot meet their burden to prove that a compelling reason exists to seal class members' names because such information is already publicly available.  During the parties' meet and confer discussions, Umpqua informed Plaintiffs that the identity of PFI investors and details regarding their investments have already been made public in connection with the PFI/PISF bankruptcy proceedings and directed Plaintiffs to the relevant filings from the bankruptcy cases that made this clear.  A comparison of the relevant bankruptcy filings to the names listed in Schedules attached to the Salah Report that Plaintiffs seek to seal confirms this this to be the case.  *Compare In re Professional Investors Security Fund, Inc.*, Case No. 20-30579, Dkt. # 62 at 346 (listing as a PISF creditor "Pardi Revocable, (Samar & Daniel)" with the "Basis for the claim" as "PFI Investor" and the amount of claim as $8,697,788.76); *id.* at 443 (listing as a PISF creditor Jack G. Tuls and providing his address, with the "Basis for the claim" as "PFI Investor" and an amount of claim as $3,444,595,62); *id.* at 182 (listing as PISF creditor Rama Sethi Gulati with a "Basis for the claim" as "PFI Investor" and an amount of claim as $155,700.09), with Expert Report of Dan Salah, Schedule 2 at 2 (listing same individuals and investment amounts).  Umpqua could provide hundreds of similar examples and, of a random sample of 20 investors that Umpqua pulled from the Schedules to the Salah Report, Umpqua was able to locate each investors, and the amount of each investor's investment, in the bankruptcy records.

While Plaintiffs state that they have been unable to identify any bankruptcy documents that identify all investors names and the amount of their investments and instead claim that the bankruptcy schedules merely list PFI's and PISF's "creditors" and point to four cherry-picked examples of investors who are not on the PISF creditor list, those arguments are misdirection.  Taking a step back, of course all investors had to have been designated as creditors of the bankruptcy estate because that is

1    what allowed —investors to participate in the recovery obtained by the bankruptcy estate.  That is also

2    why Plaintiffs relied upon the *bankruptcy records* to identify class members in the first place.  Further,

3    as noted, PFI's and PISF's bankruptcy schedules list the ""Basis for the claim" as "PFI Investor" for

4    over 1,350 of the "creditors" listed on its schedules.  *See generally In re Professional Investors*

5    *Security Fund, Inc.*, Case No. 20-30579, Dkt. # 62.  Finally, while Umpqua has not had time to

6    investigate the four examples that Plaintiffs have provided of investors who are not on the PISF

7    investor list (because, despite having raised this issue several weeks ago, Plaintiffs did not come

8    forward with those examples until 3:10 pm the day this filing was due), Umpqua is confident those

9    investors are listed elsewhere in the bankruptcy case.  To that end, as Umpqua has explained to

10   Plaintiffs during the meet and confer process, because PFI, PISF, and the many dozens of LLCs and

11   LPs that PFI/PISF operated each have their own bankruptcy case number (although they were later

12   jointly administered), one needs to look at the creditor list from all of those related cases to get a

13   complete list of investors.  *See*, *e.g.*, *In re Professional Financial Investors, Inc.*, Case No. 20-30604,

14   Dkt. #579 (PFI creditor/investor list); *In re Professional Investors Security Fund, Inc.*, Case No. 20-

15   30579, Dkt. # 62 (separate PISF creditor/investor list); *In re Professional Investors Security Fund XIV*,

16   Case No. 20-30914, Dkt #24 (separate creditor/investor list for one of the LPs that PFI/PISF operated).

17   At each stage of the parties' meet and confer process, Plaintiffs have declined to undertake that work

18   and instead put it back on Umpqua to come for with a comprehensive list of all investors (which, for

19   the reasons explained, does not appear to exist—investor information is instead organized by the

20   PFI/PISF entity in which the investment was made).  Respectfully, that has things backwards.  It is

21   Plaintiffs who are the ones seeking to seal these records and, in light of the forgoing, Plaintiffs have

22   plainly failed to carry their burden to demonstrate that sealing is warranted.

23        Even if class member names were not otherwise publicly available, sealing class members'

24   names is generally not permitted.  Courts have held that "the names and resident states of [] class

25   members shall not be redacted because the public and, indeed, class members have a right to know

26   such information." *Freitas v. Cricket Wireless, LLC*, No. C 19-7270 WHA, 2022 U.S. Dist. LEXIS

27   60565, at *4 (N.D. Cal. Mar. 31, 2022); *see also Hernandez v. Wells Fargo Bank, N.A.*, No. C 18-

28   07354 WHA, 2020 U.S. Dist. LEXIS 188669, at *25 (N.D. Cal. Oct. 12, 2020) (denying a motion to

1   file a class list under seal and stating "[t]he names and the cities [class members] reside in should be

2   public" while "[t]heir contact information and addresses can be redacted"); *Rodman v. Safeway Inc.*,

3   11-cv-03003-JST (N.D. Cal. Dec. 6, 2014) (citing L.R. 79-5(d)(1)(B)) (internal quotations omitted)

4   (granting a motion to seal where the court found that proposed redactions of class members' "contact

5   information but not their names, [were] narrowly tailed to seal only the sealable material").  Plaintiffs'

6   counsel is undoubtedly aware of this line of authority, as they were counsel of record in *Hernandez* in

7   which Judge Alsup rejected a similar sealing request.

8         The cases cited by Plaintiffs in their portion of the draft joint stipulation where courts have

9   granted a motion to seal the names of class members illustrate exceptions to the general rule that class

10   member names are not sealable because specific compelling reasons exist to warrant sealing.  In

11   *Gonzalez v. Barr*, the class members were seeking asylum in the U.S. to keep from being deported to

12   their home countries and, as such, their safety could have been at risk had their names not been

13   redacted from public filings. No. 18-cv-01869-JSC, 2020 U.S. Dist. LEXIS 108919, at *32-33 (N.D.

14   Cal. June 19, 2020).  The court in *Chi v. University of Southern California*, granted a motion to seal the

15   names of class members who were patients of a doctor based on the recognized principle that "[t]he

16   need to protect medical privacy qualifies as a compelling reason that overcomes the presumption of

17   public access to judicial records under federal common law."  No. 2:18-cv-04258-SVW-GJS, 2019

18   U.S. Dist. LEXIS 125355, at *28 (C.D. Cal. May 21, 2019) (citation and internal quotations omitted).

19   Here, Plaintiffs have identified no comparable compelling interests to the class members' interests in

20   personal safety as described in Gonzalez nor of medical privacy as described in Chi.  Lastly, *O'Connor*

21   *v. Uber Technologies, Inc.* is inapplicable as the court there granted a motion to seal one class

22   member's name that was contained in a declaration, not to seal the name of every class member.  No.

23   13-cv-03826-EMC, 2017 U.S. Dist. LEXIS 144407, at *11 (N.D. Cal. Sep. 6, 2017).

24   **III.   Proposed Final Order**

25         Within two weeks of entry of this order, the parties shall re-file all documents previously filed

26   provisionally under seal pursuant to Docket Nos. 79, 81, 94, 118, 119, 122, and 124 as necessary to

27   leave only the information indicated by a checkmark below under seal or redacted. The parties may also

28   publicly file full financial account numbers that belonged to PFI, PISF, and any of their related entities,

as opposed to only the last four digits of any account number per Federal Rule of Civil Procedure 5.2. In subsequent filings in this matter, the parties shall redact and seal, via reference to this order and without a new motion to seal, documents that contain the same information subject to this order.

      \_\_\_\_\_ The information included in the table in section I.A. above

      \_\_\_\_\_ The information included in the table in section I.B. above

      \_\_\_\_\_ The information included in the table in section II.A.1. above

**IT IS SO ORDERED.**

Dated: _____

                                   _____
                                   RICHARD SEEBORG
                                   Chief United States District Judge