**MCGUIREWOODS LLP**
Alicia A. Baiardo, Esq. (SBN 254228)
abaiardo@mcguirewoods.com
Anthony Q. Le (SBN 300660)
ale@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA  94111-3821
Telephone:  415.844.9944
Facsimile:  415.844.9922

**STOLL BERNE**
Keith Ketterling (*pro hac vice*)
kketterling@stollberne.com
Lydia Anderson-Dana (*pro hac vice*)
landersondana@stollberne.com
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  503.227.1600
Facsimile:  503.227.6840

**REED SMITH LLP**
Kasey J. Curtis (SBN 268173)
kcurtis@reedsmith.com
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: 213.457.8089
Facsimile: 213.457.8080

*Attorneys for Defendant Umpqua Bank*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Shela Camenisch and Dale Dean; Luna Baron; and Eva King, Individually and as Trustee of the Eva M. King Trust, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Umpqua Bank,<br><br>Defendant. | CASE NO.: 3:20-cv-05905-RS<br><br>Judge Richard G. Seeborg<br><br>**DEFENDANT UMPQUA BANK'S NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Complaint Filed:  August 21, 2020<br>FAC Filed:  June 30, 2021<br><br>Date:  April 20, 2023<br>Time:  1:30 p.m.<br>Place:  Courtroom 3 |

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 20, 2023, at 1:30 pm, or as soon thereafter as may be heard in Courtroom 3 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Umpqua Bank ("Umpqua") will and hereby does move, pursuant to 28 U.S.C. § 1292(b), for an order certifying this Court's December 16, 2022 Order Denying Umpqua's Motion for Summary Judgment (Docket No. 144) for interlocutory appeal.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all other pleadings, papers, records and documentary materials on file or deemed to be on file in this action and in the two related cases, those matters of which this Court may take judicial notice, and upon the oral arguments of counsel made at the hearing on this motion.

DATED:  March 10, 2023

REED SMITH LLP

By: /s/ *Kasey J. Curtis*
Kasey J. Curtis
Attorneys for Defendant
UMPQUA BANK

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND RELEVANT TO CERTIFICATION............................................. 2

III.  LEGAL STANDARD........................................................................................... 4

IV.   ARGUMENT ...................................................................................................... 5

    A.    The Contours Of What Type Of Circumstantial Evidence Of "Actual Knowledge" Can Be Utilized To Pursue An Aiding And Abetting Claim Is A Controlling Question of Law ........................................................................ 5

    B.    There Is Substantial Ground For Disagreement Over When Circumstantial Evidence Of Constructive Knowledge Can Provide An Inference Of A Defendant's Actual Knowledge ........................................................................ 8

    C.    Certifying The Question For Immediate Review Is Likely To Materially Advance The Ultimate Resolution Of The Litigation................................. 12

    D.    In The Event Certification Is Ordered, The Court Should Also Stay The Proceedings Pending Appeal ...................................................................... 14

V.    CONCLUSION................................................................................................. 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldapa v. Fowler Packing Co.*,
2016 U.S. Dist. LEXIS 115064 (E.D. Cal. Aug. 26, 2016) ...................................................6

*American Hotel & Lodging Association v. City of Los Angeles*,
2015 WL 10791930 (C.D. Cal. 2015) ...............................................................................14

*Beeman v. Anthem Prescription Mgmt., Inc.*,
2007 U.S. Dist. LEXIS 103221 (C.D. Cal. Aug. 2, 2007) ...................................................13

*Booker v. C.R. Bard, Inc.*,
969 F.3d 1067 (9th Cir. 2020) ............................................................................................13

*Bradshaw v. SLM Corp.*,
652 F. App'x 593 (9th Cir. 2016) ..............................................................................1, 10, 11

*Bradshaw v. SLM Corp.*,
2013 U.S. Dist. LEXIS 200433 (N.D. Cal. Sep. 24, 2013) .................................................10

*California Dept. of Toxic Sub. Control v. Hearthside Residential Corp.*,
2008 WL 8050005 (C.D. Cal. 2008) ..................................................................................14

*In re California Title Insurance Antitrust Litigation*,
2010 WL 785798 (N.D. Cal. 2010) ....................................................................................14

*Casey v. U.S. Bank Nat. Ass'n*,
127 Cal. App. 4th 1138 (2005) ...............................................................................3, 7, 8, 11

*In re Cement Antitrust Litigation*,
673 F.2d 1020 (9th Cir. 1982) .........................................................................................5, 6

*Chance World Trading E.C. v. Heritage Bank of Commerce*,
438 F. Supp. 2d 1081 (N.D. Cal. 2005) ..............................................................................12

*Chazen v. Centennial Bank*,
61 Cal. App. 4th 532 (1998) ................................................................................................3

*Couch v. Telescope, Inc.*,
611 F.3d 629 (9th Cir. 2010) .............................................................................................8, 9

*Evans v. ZB, N.A.*,
779 F. App'x 443 (9th Cir. 2019) ...........................................................................1, 9, 10, 11

*Filtrol Corp v. Kelleher*,
467 F.2d 242 (9th Cir. 1972) ..............................................................................................14

*Gonzales v. Lloyds TSB Bank, PLC,*
   532 F. Supp. 2d 1200 (C.D. Cal. 2006) ...................................................................12

*United States ex rel. Integra Med Analytics v. v. Providence Health & Servs.,*
   2019 U.S. Dist. LEXIS 221330 (C.D. Cal. Oct. 8, 2019)........................................13

*John v. United States,*
   247 F.3d 1035 (9th Cir. 2001) (en banc) ................................................................12

*Juarez v. Jani-King of California, Inc.,*
   2012 WL 525511 (N.D. Cal. 2012) .........................................................................14

*Kuehner v. Dickinson & Co.,*
   84 F.3d 316 (9th Cir. 1996) .......................................................................................6

*Liberty Mut. Ins. Co. v. EEOC,*
   691 F.2d 438 (9th Cir. 1982) ...................................................................................14

*Lies v. Farrell Lines, Inc.,*
   641 F.2d 765 (9th Cir. 1981) ...................................................................................13

*Ortiz v. Jordan,*
   562 U.S. 180 (2010)...........................................................................................8, 13

*Reese v. BP Exploration (Alaska), Inc.,*
   643 F.3d 681 (9th Cir. 2011) ................................................................................2, 8

*Scott Rose v. Stephens Inst.,*
   2016 WL 6393513 (N.D. Cal. 2016) .......................................................................14

*Steering Comm. v. United States,*
   6 F.3d 572 (9th Cir. 1993) ....................................................................................6, 8

*Stu v. Siemens Indus., Inc.,*
   2014 WL 2600539 (N.D. Cal. 2014) .......................................................................14

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,*
   216 F.3d 764 (9th Cir. 2000) .....................................................................................6

*Tennenbaum v. Deloitte & Touche,*
   77 F.3d 337 (9th Cir. 1996) .......................................................................................6

*Union County v. Piper Jaffray & Co.,*
   525 F.3d 643 (8th Cir. 2008) .....................................................................................9

*United States v. Adam Bros. Framing, Inc.,*
   369 F. Supp. 2d 1180 (C.D. Cal. 2004) ...................................................................12

*United States v. Woodbury,*
   263 F.2d 784 (9th Cir. 1959) .................................................................................5, 6

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– iii –

*Yellow Cab Co v. Yellow Cab of Elk Grove, Inc.*,
   419 F.3d 925 (9th Cir. 2005) ...................................................................................8

**Statutes**

28 U.S.C. § 1292(b) ............................................................................... *passim*

Cal. Fin. Code § 1450 ...................................................................................3

Cal. Fin. Code § 1451 ...................................................................................3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# I.   INTRODUCTION

Defendant Umpqua Bank ("Umpqua") seeks certification for interlocutory appellate review of the Court's December 16, 2022 Order Denying Umpqua's Motion for Summary Judgment (the "Order").  The Order addressed whether Plaintiffs Shela Camenisch, Dale Dean, Luna Baron, and Eva King (collectively, "Plaintiffs") could establish the "actual knowledge" element of the "aiding and abetting" claims they have asserted against Umpqua using circumstantial evidence— specifically, circumstantial evidence in the form of the suspicious account activities of the Umpqua accountholder, and primary tortfeasor, who allegedly defrauded Plaintiffs.  Because this threshold legal question meets the three criteria in 28 U.S.C. § 1292(b), Umpqua respectfully submits that certification is warranted and that the Court should therefore grant this motion.

First, the Order presents a controlling question of law related to when, under California law, a financial institution can be held derivatively liable for "aiding and abetting" its customer's tortious conduct.  At summary judgment, the record revealed that Plaintiffs seek to prove Umpqua's purported "actual knowledge" of its depositor's tortious activity using circumstantial evidence that primarily concerns Umpqua's alleged failure to intervene in, and stop, its customer's suspicious account activity.  The question of whether that circumstantial evidence will support a permissible inference of "actual knowledge" and thus enable Plaintiffs to create a jury issue on their aiding and abetting claim under California law is a question of law that is case dispositive and therefore "controlling."

Second, this controlling legal question is one on which there is a substantial ground for disagreement.  This is evidenced both by the conflicting reasoning employed by the various split Ninth Circuit panels that have confronted this issue of when a plaintiff is permitted to sue a bank for "aiding and abetting" its customer's financial misconduct, as well as by the conflicting district court decisions that have likewise struggled with that same question.  These conflicts in reasoning and result underscore how courts have struggled with the contours of when the record can support a legally sufficient inference of a financial institution's "actual knowledge" of its customer's tortious misconduct.  *See*, *e.g.*, *Evans v. ZB, N.A.*, 779 F. App'x 443 (9th Cir. 2019) (split panel with majority finding a permissible inference); *Bradshaw v. SLM Corp.*, 652 F. App'x 593 (9th Cir. 2016) (split

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

panel with majority finding no permissible inference).  It is evident, therefore, that this controlling legal question is one on which "reasonable jurists might disagree," making it appropriate for interlocutory review.  *See Reese v. BP Exploration (Alaska), Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

Finally, resolution of this controlling legal question will materially advance the efficient resolution of this litigation.  It is settled that the summary judgment standard under Federal Rule of Civil Procedure 56 and judgment as a matter of law standard under Federal Rule of Civil Procedure 50 are co-extensive, meaning that the legal question of whether Plaintiffs' circumstantial evidence can sustain their claims is not going away.  Rather, at trial, the Court will again have to confront this issue when Umpqua files its Rule 50(a) motion.  Further, unless the jury finds in Umpqua's favor, the same issue will be raised post-trial when Umpqua's renews that motion pursuant to Rule 50(b).  And, if that renewed motion is denied, the same issue will be raised yet again in an appeal from the judgment.  But if there is a legal error here—as Umpqua maintains there is—going through a lengthy class-wide trial that will take months to conduct, consume considerable judicial resources, and cost millions of dollars, will be a significant waste of public and private resources.  Given the case-dispositive consequences of this threshold legal issue, the more efficient approach would be to obtain clarity now on what the law commands, before any trial occurs—the exact circumstance in which certification has its highest utility.

## II.    BACKGROUND RELEVANT TO CERTIFICATION

As the Court is well aware, by this lawsuit Plaintiffs seek to hold Umpqua derivatively liable for allegedly "aiding and abetting" a fraudulent scheme allegedly perpetrated by non-parties Professional Financial Investors, Inc. and Professional Investors Security Fund, Inc. (collectively, "PFI").  To that end, in their operative complaint, Plaintiffs have asserted two claims against Umpqua: (i) a claim for aiding and abetting PFI's fraud, FAC, ¶¶ 57-60; and (ii) a claim for aiding and abetting PFI's breach of fiduciary duty to its investors, FAC, ¶¶ 61-65.  The underlying factual predicate of both aiding and abetting claims is, however, the same.  As to both, Plaintiffs allege that Umpqua supposedly obtained "actual knowledge" that PFI was operating as a fraudulent Ponzi scheme, but nevertheless continued to render banking services to PFI—thereby helping to facilitate PFI's fraudulent scheme.  FAC, ¶¶ 25-32.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Umpqua subsequently moved for summary judgment, explaining why Plaintiffs' aiding and

2    abetting claims failed as a matter of California law because the evidence upon which Plaintiffs were

3    attempting to rely was legally insufficient to establish that Umpqua had the requisite "actual

4    knowledge" of PFI's alleged Ponzi scheme.  *See* Umpqua's Motion for Summary Judgment, Dkt No.

5    121 ("Umpqua's MSJ") at 10-21.  Under California law, aiding and abetting claims against

6    depository banks have been cabined by cases like *Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th

7    1138 (2005) and *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532 (1998), as well as the provisions

8    of the California Financial Code[1] upon which those decisions are based.  *See* Umpqua's MSJ at 10-

9    12, 19-21.

10    Specifically, these controlling decisions have pointed out why, under California law,

11    depository banks have no duty to police activity on customer accounts and instead must honor

12    authorized transactions at the expense of adverse claims to funds.  For that reason, moreover, these

13    cases have held that mere evidence the bank was aware of "suspicious account activities—even

14    money laundering"—is not sufficient to sustain an aiding and abetting claim.  *Casey*, 127 Cal. App.

15    4th 1150-51.  On the contrary, to establish liability for aiding and abetting, the plaintiff must

16    demonstrate that the bank "must have known" about the specific tort that the depositor was

17    committing.  *Id.*  And, as Umpqua argued, the required "must have known" evidence is missing in

18    this case.  *See* Umpqua's MSJ at 15-19.  The supposed "red flags" Plaintiffs relied on are insufficient

19    to create a genuine issue of material fact under that legal standard.  *Id.* at 19-21.

20    Notably, Plaintiffs' opposition did not dispute the lack of any direct evidence of Umpqua's

21    actual knowledge of PFI's criminal scheme.[2]  *See* Plaintiffs' Opposition to Umpqua's MSJ, Dkt No.

22    _____

23    [1]  As explained in Umpqua's summary judgment briefing, *Casey* and *Chazen* cited and discussed
California Financial Code §§ 952 & 953, which were later renumbered as California Financial Code
§§ 1450 & 1451.

24    [2]  In fairness, the opposition did attempt to argue that Plaintiffs had direct evidence of actual

25    knowledge because Plaintiffs have evidence that Umpqua knew PFI was undertaking certain
transactions but—as Umpqua explained—that argument erroneously conflated "Umpqua's supposed

26    knowledge of the fact that PFI was undertaking certain transactions, with knowledge that those
transactions were part of a Ponzi scheme."  *See* Umpqua's Reply in Support of its Motion for

27    Summary Judgment, Dkt No. 134 at 2-4.  In the context of an aiding and abetting claim, it is the
latter—not the former—that is at issue.  *See id.*  The Court ultimately recognized as much when it

28    agreed with Umpqua that "[t]he question at this juncture" is whether Plaintiffs' circumstantial

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

123 ("Pls. Opp.") at 14-18.  The opposition also acknowledged the co-called "red flags" are the support for their aiding and abetting claims.  *Id.*  Plaintiffs therefore took issue with Umpqua's *legal contention* that their circumstantial evidence, in the form of supposed "red flags" and other suspicious activity, was insufficient to create a genuine dispute of material fact.  *Id.*  In particular, Plaintiffs argued that, under California law, actual knowledge could be established by their circumstantial evidence and that "evidence that red flags were ignored" was sufficient to allow an aiding and abetting claim to go to a jury.  *Id.*

In the Order, the Court agreed with Umpqua that *Casey* and like decisions circumscribe the manner in which an aiding and abetting claim can be established against a depository bank.   The Court also agreed that, to prove aiding and abetting, Plaintiffs had to show Umpqua "had actual knowledge of the wrongdoing—constructive knowledge will not sufficient."  Order at 5-6.  The Court then explained that "even the existence of 'red flags' that arguably should have put Umpqua on notice that something 'fishy' was taking place is insufficient to create a triable issue of fact."  Order at 6.  It framed "[t]he question at this juncture . . . [a]s whether the evidence to which plaintiffs point, whether described as 'red flags' or otherwise, is sufficient to permit a reasonable jury to infer that Umpqua *must have* known—i.e., had actual knowledge—of the fraud."  *Id.*  Nevertheless, the Court denied Umpqua's motion.

While it agreed that "Umpqua correctly characterizes California case law as setting a high bar for bank liability," the Court concluded that Plaintiffs' circumstantial evidence was enough to create a jury issue on whether Umpqua had the requisite actual knowledge.  *Id.* at 12-13.  In particular, the Court found significant that Plaintiffs had adduced evidence of supposed direct participation by bank employees in some of the mechanics of the scheme, which the Court viewed as sufficient to take the case outside of the *Casey* framework.  *Id.*

## III.    LEGAL STANDARD

Under Section 1292(b), a district court may certify an interlocutory order for immediate appeal whenever the court is "of the opinion that such order involves a controlling question of law as

---

evidence "is sufficient to permit a reasonable jury to infer that Umpqua *must have* known—i.e., had actual knowledge—of the fraud."  Order at 6.

to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982).  Consistent with Section 1292(b)'s plain language, the Ninth Circuit explained, there are three criteria that must be satisfied for an interlocutory order to warrant certification for immediate appeal under Section 1292(b): (i) the order must involve a controlling question of law; (ii) the issue presented must be one as to which there is substantial ground for difference of opinion; and (iii) an immediate appeal from the order must be likely to materially advance the ultimate resolution of the litigation.  *In re Cement Antitrust Litig.*, 673 F.2d at 1026; *see also* 28 U.S.C. § 1292(b).

As set forth below, the question of what circumstantial evidence of "actual knowledge" is sufficient, as a matter of law, to prove an aiding and abetting claim against a bank meets all three criteria.  It involves a controlling question of law, on which there is substantial ground for difference of opinion, and an immediate appeal from the Order is likely to materially advance the ultimate resolution of the litigation.  Accordingly, Umpqua respectfully requests that the Court issue a Section 1292(b) certification, so that it may petition the Ninth Circuit for permission to appeal from the summary judgment order.

## IV.     ARGUMENT

**A.     The Contours Of What Type Of Circumstantial Evidence Of "Actual Knowledge" Can Be Utilized To Pursue An Aiding And Abetting Claim Is A Controlling Question of Law**

As the Ninth Circuit has explained, "Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if decided in favor the appellant, would end the lawsuit."  *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959).  "Examples of such questions are those relating to the jurisdiction or a statute of limitations which the district court has decided in a manner which keeps the litigation alive but which, if answered differently on appeal, would terminate the case."  *Id.*

That does not mean, however, that a particular issue needs to be dispositive to warrant certification for interlocutory review.  Rather, an issue is a "controlling" issue of law for purposes of Section 1292(b) certification if "resolution of the issue on appeal could materially affect the outcome

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026; *see also Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) ("an order may involve a controlling question of law" even if it is collateral to the merits, so long as "it could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter").  By definition, this is a flexible standard that is in keeping with the considerable discretion afforded courts in deciding whether certification is warranted.

What is more, unlike some other circuits, the Ninth Circuit does not require that an issue present a "pure" question of law to warrant Section 1292(b) certification.[3]  *See, e.g., Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764 (9th Cir. 2000) (accepting Section 1292(b) certification of the question of a regulatory taking that "depends largely upon the particular circumstances [of each] case"); *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 339-40 (9th Cir. 1996) (accepting Section 1292(b) certification of whether the attorney-client privilege was waived and describing that issue as "a mixed question of law and fact which we review de novo"); *see also Steering Comm. v. United States*, 6 F.3d 572, 575 (9th Cir. 1993) (noting that "[s]ome courts have refused to permit interlocutory appeals of mixed question of law and fact pursuant to 28 U.S.C. § 1292(b)," but ultimately concluding such review was permissible).  Rather, the Ninth Circuit has instead held that "the determination of the liability issue itself constitute[s] a controlling question of law."  *Steering Comm.*, 6 F.3d at 575.  Thus, in *Steering Committee* the Ninth Circuit held that "both the standard of care issue and the application of that standard to the facts of th[e] case" were reviewable under Section 1292(b).  *Id.*

Here, applying this standard, the question of what evidence is required to prove an aiding and abetting claim against a depository bank under California law is clearly the type of "controlling question of law" that would warrant Section 1292(b) certification.  As the Order recognizes, a plaintiff suing a bank for "aiding and abetting" its customer's misconduct must show that the bank

---

[3]  Umpqua recognizes that some district courts have disagreed and followed out of circuit precedent holding that only a "pure question of law" is appropriate for Section 1292(b) certification.  *Cf. Aldapa v. Fowler Packing Co.*, 2016 U.S. Dist. LEXIS 115064, *3-4 (E.D. Cal. Aug. 26, 2016) (discussing how other circuits have addressed this requirement).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

had "actual knowledge" of the specific tort the customer allegedly committed.  *See* Order at 5-6, 13. Further, the Court also agreed with Umpqua that "even the existence of 'red flags' that arguably should have put Umpqua on notice that something 'fishy' was taking place is insufficient to create a triable issue of fact."  *See* Order at 5-6.  As it explained, "[t]he question at this juncture . . . is whether the evidence to which plaintiffs point, whether described as 'red flags' or otherwise, is sufficient to permit a reasonable jury to infer that Umpqua *must have* known—*i.e.*, had actual knowledge—of the fraud."  *Id.*  This sufficiency of the evidence issue, therefore, is clearly a controlling legal question that is case dispositive.

Further, as California cases have explained, aiding and abetting claims brought against depository banks "involve[] the intersection of two distinct legal principles—one that strictly limits a bank's duties to nondepositors and another that extends tort liability to anyone who knowingly aids and abets the tort of another."  *Casey*, 127 Cal. App. 4th at 1152.  "Reconciling these competing principles within the sensitive context of a claim against a bank for aiding and abetting a customer's wrongdoing depends on a strict application of" the requirement for what a plaintiff is required to plead and prove with respect to the "knowledge element of the aiding and abetting claim."  *Id.*  It is only by "narrowly circumscrib[ing] [the claim] in this fashion, [that] such an aiding and abetting claim against a bank [becomes] a reasonable exception to the case law limiting bank duties to nondepositors."  *Id.*

Thus, in *Casey*, the California Court of Appeal held that allegations the defendant bank knew its depositors: (i) opened accounts in the name of fraudulent entities the bank knew "were not 'legitimate' businesses"; (ii) "were withdrawing money from these accounts with the use of forged checks and checks that exceeded written limits"; and (iii) "most suspiciously . . . were carrying large, unreported amounts of cash out of the bank in 'unmarked duffle bags,'" were nonetheless insufficient as a matter of law to sustain an aiding and abetting claim.  *Id.* at 1149, 1152-53.  That is because such allegations failed to demonstrate that the defendant bank had the requisite actual knowledge of the alleged embezzlement that the plaintiff sought to charge the bank with aiding and abetting.  *Id.* at 1152-53.

MOTION FOR CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

And, here, this question concerning the precise contours of *Casey*'s holding and the limits it imposes on the character of circumstantial evidence that can be utilized to establish aiding and abetting liability is therefore a question of law—even if it involves the application of case-specific facts in the context of a particular legal standard.  *E.g.*, *Steering Comm.*, 6 F.3d at 575.  The question of what the controlling requires is also presented at summary judgment, further underscoring that a legal question is at hand.  *See*, *e.g.*, *Yellow Cab Co v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) (appellate courts review summary judgment rulings de novo); *Ortiz v. Jordan*, 562 U.S. 180, 189-90 (2010) (outlining the interrelationship between summary judgment and sufficiency of the evidence issues).  Indeed, for these same reasons, *Casey* itself presented a purely legal question—whether the facts before it were sufficient to meet the actual knowledge standard as defined.  *Casey*, 127 Cal. App. 4th at 1152-53.  That legal question, in turn, triggered the need to rectify the "competing principles [at issue in] the sensitive context of a claim against a bank for aiding and abetting a customer's wrongdoing" and how that imposed substantive limitations on how such a claim can proceed.  *Id*.  The same competing legal principles are at play in this case and the first Section 1292(b) criteria is therefore satisfied.

**B.     There Is Substantial Ground For Disagreement Over When Circumstantial Evidence Of Constructive Knowledge Can Provide An Inference Of A Defendant's Actual Knowledge**

"A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution . . . ."  *Reese v. BP Exploration (Alaska), Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  "Courts traditionally will find that a substantial ground for difference of opinion exists where . . . novel and difficult questions of first impression are presented."  *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted).  They will also find substantial grounds for disagreement when multiple courts, or jurists, have decided the same issue in conflicting manners. *See id.* at 634 (citing *Union County v. Piper Jaffray & Co.*, 525 F.3d 643, 645-46 (8th Cir. 2008) for the proposition that the "identification of a sufficient number of conflicting and contradictory opinions would provide substantial grounds for disagreement").

Here, in addition to presenting a controlling question of law, the issue of what evidence is needed to prove an aiding and abetting claim against a depository bank also presents a question on

– 8 –

which there is substantial grounds for disagreement.  To that end, there are not only conflicting district court decisions on the issue, but also conflicting unpublished Ninth Circuit memorandum dispositions, which themselves have dissenting opinions.  This diversity in the case law demonstrates that a substantial ground for disagreement concerning the reach of *Casey* and the substantive limitations that it imposes on how aiding and abetting claims may be proven as a legal matter.

Consider first *Evans v. ZB, N.A.*, 779 F. App'x 443 (9th Cir. 2019).  *Evans*, like this case, involved "aiding and abetting claims" brought against a depository bank asserting that the bank aided and abetted a Ponzi scheme perpetrated by its customer—there non-party IMG.  *Id.* at 444-45. The Ninth Circuit framed the question as whether, at the motion to dismiss stage, the plaintiffs had "specifically allege[d] that [defendant] knew IMG was misrepresenting itself as a legitimate business and misappropriating funds, and whether Plaintiffs ha[d] alleged specific supporting facts that make their allegations of actual knowledge plausible."  *Id.* at 445.  IMG purported to operate a business that imported latex gloves from Asia but in reality was a Ponzi scheme.  *Id.*  Plaintiffs alleged that the defendant bank had actual knowledge of IMG's Ponzi scheme because: (a) the bank set up a "lock box" account requiring IMG to deposit all income from its latex business into the account but IMG deposited virtually no money into such account; (b) the bank knew that IMG repaid existing investors with a multi-million dollar loan; (c) the bank solicited investors for IMG, including existing clients of defendants; and (d) the bank "repeatedly departed from standard industry practices," including making advances at IMG's request without obtaining supporting documentation and extending maturity dates on short-term loans.  *Id.* at 445-46.

The majority (Circuit Judges Nelson and N.R. Smith) found this compilation of facts would be sufficient to allow the aiding and abetting claims to go forward.  *Id.* at 446-47.  The majority reasoned that these facts could demonstrate that the bank (a) knew that IMG's latex glove business was a sham; (b) knew IMG was misappropriating funds; and (c) was facilitating investments to IMG to ensure that the bank's loans were repaid.  *Id.* at 446-47.  The dissent (Circuit Judge Bea) viewed these facts completely differently, concluding that they could not "give rise to the plausible inference that [defendant] had 'actual knowledge' of IMG's Ponzi scheme."  *Id.* at 448 (Bea, C.J., dissenting).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

He reasoned that (a) the facts pled regarding the "lock box" did not suggest that the defendant knew what funds, if any, were deposited into the account; (b) businesses often solicit "bridge loans" to cover existing obligations and that if "a bank knew a loan was repaid with investor funds is enough to expose that bank to liability, nearly every American bank would be liable for aiding and abetting fraud"; (c) that the defendant's "solicitation" of investors took place three years before the purported fraud began and therefore couldn't give rise to actual knowledge; and (d) these were simply "a series of common banking practices dressed up in ominous language." *Id.* at 448-49.

Consider further *Bradshaw v. SLM Corp.*, 652 F. App'x 593 (9th Cir. 2016). There, the plaintiffs alleged that SLM Corp., a lender, aided and abetted a fraud perpetrated by the California Culinary Academy ("CCA"). *Id.* at 594-95. They claimed CCA fraudulently induced them to attend CCA and "pay high tuition fees for educations that turned out to be relatively worthless." *Bradshaw v. SLM Corp.*, No. C 12-6376 JSW, 2013 U.S. Dist. LEXIS 200433, at *2 (N.D. Cal. Sep. 24, 2013). The plaintiffs alleged that the defendant was the preferred lender for CCA, and offered "high-interest private loans to Plaintiffs, knowing that the educations Plaintiffs sought were unlikely to fit Plaintiffs to ever repay the loans." *Id.* They specifically pled that the defendant "knew that CCA was making fraudulent sales pitches to students in order to induce them to enroll," that the defendant "worked hand-in-glove with CCA in providing loans to CCA's students, [defendant]'s employees and agents regularly visited the CCA campus and regularly interacted with CCA staff, and CCA's recruiting materials were available in published form." *Bradshaw*, 652 F. App'x at 595-96 (Ikuta, C.J., dissent).

The majority (Circuits Judge Kleinfel and Watford) concluded that these allegations of circumstantial evidence were legally insufficient to establish that the defendant had actual knowledge of CCA's alleged fraud. *Id.* at 594-95. Citing *Casey*, the majority reasoned these allegations were "'too generic to satisfy the requirement of actual knowledge of a specific primary violation' under California law." *Bradshaw*, 652 F. App'x at 594 (quoting *Casey*, 127 Cal. App. 4th at 1153). They concluded that the allegations that the defendants had access to CCA's recruiting materials "d[id] not plead with specificity that [defendants] knew CCA's materials were fraudulent." *Bradshaw*, 652 F. App'x at 594 n.1. As the majority noted, such circumstantial evidence would be

insufficient because "California law requires a court to 'carefully scrutinize' whether a plaintiff has alleged 'actual knowledge of a <u>specific</u> primary violation.'" *Id.* (quoting *Casey*, 127 Cal. App. 4th at 1152) (emphasis added).  Circuit Judge Ikuta dissented.  In her view, the plaintiffs' allegations "[a]t a minimum . . . raise[d] a reasonable inference that [defendants] had actual knowledge of CCA's fraudulent modus operandi in recruiting students."  *Bradshaw*, 652 F. App'x at 596 (Ikuta, C.J., dissent).

Evans* and *Bradshaw* demonstrate that there is a substantial ground for disagreement regarding how the precise contours of *Casey*'s holding are applied and exactly when circumstantial evidence is sufficient to support an aiding and abetting claim.  Here, the Court identified certain facts that it found significant: (a) "evidence of *direct* participation by bank employees, and in particular Weaver, in some of the mechanics of the scheme"; and (b) "instances where Weaver went well outside the bounds of ordinary banking transactions, including times where she did so on her own initiative."  Order at 13.  These facts are similar to *Evans*, where the plaintiffs alleged that the defendant bank solicited investors for IMG's Ponzi scheme and "repeatedly departed from standard industry practices" including making advances without proper supporting documentation.  *See Evans,* 779 F. App'x at 446.  These facts are also similar to *Bradshaw*, where the plaintiffs alleged the defendant lenders "worked hand-in-glove with CCA in providing loans to CCA's students."  *See Bradshaw*, 652 F. App'x at 595. Thus, the ultimate answer to the legal question of whether the facts identified by this Court in the Order can provide a permissible inference that Umpqua had actual knowledge of PFI's Ponzi scheme would differ significantly based on which panel heard the case.  Had the *Evans* three-judge panel heard this case, the majority may have found that Plaintiffs here have presented a genuine dispute of material fact as to whether Plaintiffs can show that Umpqua had actual knowledge of PFI's Ponzi scheme, while the dissent would likely have adamantly disagreed.  Conversely, had the *Bradshaw* three-judge panel heard this case, the majority would have likely sided with Umpqua and the dissent sided with Plaintiffs.

Beyond *Evans* and *Bradshaw*, but in keeping with this same diversity-of-reasoning theme, district courts in the Ninth Circuit have likewise taken disparate approaches to when they will find that circumstantial evidence that a defendant *should* have known of a tortfeasor's wrongdoing will

– 11 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

raise to the level of a defendant *must* have known of the wrongdoing.  *Compare Gonzales v. Lloyds TSB Bank, PLC*, 532 F.  Supp. 2d 1200, 1207 (C.D. Cal.  2006) (actual  knowledge adequately pled by allegations of the classic hallmarks of a Ponzi scheme including that the defendant bank commingled funds and knew of company's "exceptional returns"), *with Chance World Trading E.C. v. Heritage Bank of Commerce*, 438 F. Supp. 2d 1081, 1086 (N.D. Cal. 2005) (allegations of "atypical banking procedure" including permitting withdrawal with less than requisite number of signatures and unauthorized transfer of funds in violation of internal rules do not allow inference of bank's actual knowledge of client's crime because plaintiff "must produce evidence that Heritage Bank had actual knowledge of [the] crime; it cannot rely on inferences drawn from sloppy work by Heritage Bank").

For all these reasons, there is a substantial ground for disagreement regarding when circumstantial evidence of a defendant's constructive knowledge of a tort may, as a matter of law, provide a reasonable inference that the defendant must have known—i.e., had actual knowledge—of the tort.  Here, the second Section 1292(b) criteria is satisfied as well.

## C.     Certifying The Question For Immediate Review Is Likely To Materially Advance The Ultimate Resolution Of The Litigation

The final Section 1292(b) factor takes into consideration the extent to which certification is likely to help facilitate the ultimate resolution of the litigation.  That is because, as courts have explained, "[t]he purpose of an interlocutory appeal is to 'facilitate disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later' in order to 'save the courts and the litigants unnecessary trouble and expense.'"  *United States v. Adam Bros. Framing, Inc.*, 369 F. Supp. 2d 1180, 1182 (C.D. Cal. 2004) (quoting *John v. United States*, 247 F.3d 1035, 1051 (9th Cir. 2001) (en banc) (C.J. Rymer, special statement)).   "The material advancement prong is met where 'an interlocutory appeal of [an] issue may avoid protracted and expensive (but ultimately unnecessary) litigation and the burdens on the litigants and court system that would result from the denial of § 1292(b) certification.'"  *United States ex rel. Integra Med Analytics v. v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSx), 2019 U.S. Dist. LEXIS 221330, *10-*11

– 12 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(C.D. Cal. Oct. 8, 2019) (quoting *Beeman v. Anthem Prescription Mgmt., Inc.*, No. EDCV 04-407-VAP (SGLx), 2007 U.S. Dist. LEXIS 103221, *2 (C.D. Cal. Aug. 2, 2007)).

In this instance, this final factor is readily satisfied as well.  To begin, the legal question presented is case dispositive, in that, if it is decided in Umpqua's favor, judgment will follow.  But it also bears emphasis that this is a complex class action that will be exceedingly expensive and difficult for the parties, and the Court, to take to trial.  That is particularly significant because the exact same legal issues about whether the character of Plaintiffs' circumstantial evidence is sufficient to support their aiding and abetting claims will again be raised at trial pursuant to Rule 50(a); then post-trial pursuant to Rule 50(b) should the jury find for Plaintiffs; and then on appeal should the Court deny Umpqua's post-trial Rule 50(b) motion.  *See Ortiz*, 562 U.S. at 190-91 (explaining how sufficiency of the evidence issues are preserved for post-trial and appellate review when renewed under Rule 50); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 772 (9th Cir. 1981) ("The legal question addressed on both a motion for directed verdict and a motion for summary judgment is the same: Both motions call upon the court to make basically the same determination that there is no genuine issue of fact and that the moving party is entitled to prevail as a matter of law.'") (citation, alternation, and internal quotation marks omitted); *accord Booker v. C.R. Bard, Inc.*, 969 F.3d 1067, 1072-73 (9th Cir. 2020) (discussing *Ortiz* and the limits it imposes on sufficiency of the evidence issues not renewed at trial).  What is more, should the Ninth Circuit see this legal issue differently, all those public and privates resources will be wasted, or at least expended unnecessarily—which is why certification would be more efficient and beneficial.

By comparison, if an interlocutory appeal is permitted at this stage, no matter how the Ninth Circuit rules, resources will be conserved.  A reversal will result in entry of judgment.  Further, an affirmance will definitively resolve this disputed legal question and likely become law of the case—a consideration will impact how the case is to be tried and whether the parties believe there is a need for a trial at all or they can instead decide whether to settle the dispute.  *See Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982) (law of the case doctrine precludes a district court from revisiting issues "decided explicitly or by necessary implication in [a prior appellate] disposition").  Thus, having the Ninth Circuit hear this issue now is likely to materially advance the ultimate

– 13 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  resolution by facilitating a clear resolution of an important legal issue that is going to impact both

2  parties' approach to this litigation and their decision about the necessity of a trial.  This is the precise

3  circumstance in which certification has its highest utility and the third factor is satisfied.

4  **D.  In The Event Certification Is Ordered, The Court Should Also Stay The Proceedings**

5  **Pending Appeal**

6  Section 1292(b) expressly authorizes a district court to stay proceedings pending resolution

7  of an interlocutory appeal.  28 U.S.C. § 1292(b); *Filtrol Corp v. Kelleher*, 467 F.2d 242, 244 (9th

8  Cir. 1972).  In evaluating whether a stay is appropriate under 28 U.S.C. § 1292(b), courts "will

9  consider whether: (1) resolution by the Ninth Circuit of the issue addressed in the appealed order

10  could materially affect th[e] case and advance the ultimate termination of litigation and (2) whether a

11  stay will promote economy of time and effort for the [c]ourt and the parties." *American Hotel &*

12  *Lodging Association v. City of Los Angeles*, 2015 WL 10791930, *3 (C.D. Cal. 2015).

13  Because of the inherent overlap between these factors and the Section 1292(b) criteria

14  themselves, where certification has been granted district courts routinely stay the underlying

15  proceedings until the appellate court has had the opportunity to weigh in on the matter.  *See, e.g.,*

16  *Scott Rose v. Stephens Inst.*, 2016 WL 6393513, *4 (N.D. Cal. 2016) (granting stay); *Stu v. Siemens*

17  *Indus., Inc.*, 2014 WL 2600539, *3 (N.D. Cal. 2014) (same); *Juarez v. Jani-King of California, Inc.*,

18  2012 WL 525511, *2 (N.D. Cal. 2012) (same); *In re California Title Insurance Antitrust Litigation*,

19  2010 WL 785798, *2 (N.D. Cal. 2010) (same); *California Dept. of Toxic Sub. Control v. Hearthside*

20  *Residential Corp.*, 2008 WL 8050005, *9 (C.D. Cal. 2008) (same).

21  Here, in the event the Court certifies the Order for interlocutory review pursuant to Section

22  1292(b), Umpqua would also ask that the Court stay the litigation until the Ninth Circuit has had the

23  opportunity to weigh in on the matter.  Indeed, given the current procedural posture of the case and

24  fact that discovery is closed, there would be no reason to continue litigating this case before this

25  Court in the event Section 1292(b) certification is ordered.

26

27

28

– 14 –

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## V.     CONCLUSION

For the reasons set forth above, Umpqua requests that this Court amend the Order and certify the issue for immediate review pursuant to Section 1292(b) and also stay the proceedings pending resolution of the Section 1292(b) proceedings before the Ninth Circuit.


DATED: March 10, 2023

REED SMITH LLP


By: /s/ Kasey Curtis
    Kasey Curtis
    **REED SMITH LLP**
    355 South Grand Ave., Suite 2900
    Los Angeles, CA 90071
    Telephone: (213) 457-8000
    Facsimile: (213) 457-8080

    Attorneys for Umpqua Bank