UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELA CAMENISCH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UMPQUA BANK,<br><br>Defendant. | Case No. 20-cv-05905-RS<br><br>**ORDER GRANTING MOTION TO EXCLUDE AND MOTION RE CLASS NOTICE** |

Pursuant to Civil Local Rule 7-1(b), defendant's motion to exclude certain documents it contends were not timely disclosed or produced, or, in the alternative to reopen discovery, and plaintiffs' motion for an order resolving the parties' disputes regarding the form of class notice are suitable for disposition without oral argument, and the hearing set for June 1, 2023, is vacated. In light of an ongoing trial in an unrelated criminal matter, the further Case Management Conference set for that date is continued to Thursday, Jun 29, 2023, at 10:00 a.m., with a joint statement to be filed one week in advance.

Class notice

In opposition to class certification, defendant argued, among other things, that the proposed class definition was unduly broad insofar as it could be read to sweep in the PFI entities' commercial lenders. See Dkt. No. 98 at 7:16-18 ("such commercial lenders would undoubtedly be 'persons' who lent money to PFI 'through secured or unsecured debt instructions [*sic*,

1  instruments] . . . who did not recover the principal amount of their investment prior' to PFI's
2  bankruptcy."). On reply, plaintiffs disclaimed any intent to include commercial lenders. They
3  pointed out that they had included no commercial lenders on their proposed class list and that
4  commercial lenders are not generally considered "investors." Dkt. No. 120 at 2:8-13. "To avoid
5  any further confusion," however, plaintiffs stated they would not object to a class definition "that
6  specifically excludes commercial lenders." *Id.* at 2:14-16.

7  The order granting class certification mischaracterized the contours of the parties' dispute,
8  and inadvertently drew a line between "corporate entities" and "individual investors," rather than
9  between entities in a commercial *lending* relationship with PFI and persons who *invested* in the
10 various investment vehicles offered by PFI. Seizing on the language in the order, defendant now
11 asserts it only intended to offer "commercial lenders" as one *example* of overbreadth in the
12 proposed class definition. It argues all corporate entities should be excluded because
13 they are "sophisticated investors that are differently situated from individual investors." There is
14 no evidence, however, that the "corporate entities" who invested in PFI necessarily were
15 sophisticated or otherwise meaningfully distinguishable from individual investors. Indeed, from
16 the entity names provided, it seems probable that many of the "corporate" investors were small,
17 family-owned entities.

18 In any event, the imprecise language in the order granting class certification is not a basis
19 for defendant to make new arguments about the proper scope of the class. Plaintiffs' motion is
20 granted. As no other disputes regarding the form or the mechanics of the notice remain, the
21 proposed order submitted at Dkt. No. 170-3 will be entered.

23  Motion to exclude
24  Plaintiffs assert they intend to support and quantify their damages claim with a "structured
25  database" that was created by forensic accountants at FTI Consulting, originally for use in the PFI
26  bankruptcy proceedings. According to plaintiffs, PFI's contemporaneous business records were
27  not well organized. "Rather than using a structured database system that assigned unique

identifiers to separate investors and investments, PFI recorded investor activity through a variety of unstructured repositories—from myriad spreadsheets with no consistent structure and text notations to third-party payment processor files to hardcopy files."

When PFI was forced into bankruptcy, the bankruptcy court appointed an independent director to take control of the business, and it was that director who engaged FTI Consulting to convert PFI's business records to a structured database "that captured the company's data for every investor, every investment, and every transaction involving an investor." Plaintiffs have now retained FTI Consulting to act as an expert witness in this action, but it appears the "structured database" was created as part of its work for PFI, not in its role as an expert in this case.

In the course of the motion for class certification, a dispute arose between the parties regarding how plaintiffs intended to prove their damages. The only issue crystalized at that juncture, however, involved the admissibility of the expert opinion of Daniel Salah, who had been retained by plaintiffs to present their damages analysis. The order granting class certification did not reach the ultimate admissibility of Salah's report because plaintiffs' proffered methodology for calculating damages "rests on PFI's underlying records, not Salah's analysis." Dkt. No. 144 at 15, n. 8.

After the class certification order issued, the parties continued discussing the damages proof issue. Plaintiffs ultimately agreed to ask FTI to provide all the "unstructured data sources" used to create the structured database. Plaintiffs then produced that material, totaling over 700 thousand pages, months after the close of fact discovery. Defendant now seeks to exclude those documents on grounds that the production was untimely, or, in the alternative, to reopen discovery to permit it to explore those records in greater detail.

In opposition to the motion, plaintiffs disavow any intent to use the documents at trial. Rather, plaintiffs intend to rely on the structured database. Plaintiffs also argue that because the documents were always in the possession of a third-party, and equally available to defendant, they violated no obligation or rule by not producing them earlier. Nevertheless, as the documents were not produced prior to the fact discovery cutoff, and in view of plaintiffs' statements that they do

not intend to use them, the motion to exclude will be granted, rendering the alternative request to reopen discovery moot.

To be clear, nothing in this order resolves whether the structured database, records retrieved therefrom, or any other evidence regarding that database or its contents will be admissible at trial. Although defendant insists the structured database is "expert work product," that is not independently admissible in the absence of the underlying records, there appears to be at least an argument that the database constitutes business records of PFI—it was not created by expert witnesses for purposes of this litigation, but by persons employed by PFI itself. The structured database was a means of organizing and making useable PFI's information so that PFI could carry out its duties to its investors (and other creditors) to the extent still possible, given its remaining financial assets. Whether the structured database and information contained therein is admissible on that or any other basis, however, remains to be decided.

**IT IS SO ORDERED**.

Dated: May 24, 2023

_____
RICHARD SEEBORG
Chief United States District Judge