Keith Ketterling (*pro hac vice*)
Lydia Anderson-Dana (*pro hac vice*)
Erin Roycroft (*pro hac vice*)
Madeleine Holmes (*pro hac vice*)
**STOLL BERNE**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kketterling@stollberne.com
landersondana@stollberne.com
mholmes@stollberne.com

Kasey J. Curtis (SBN 268173)
kcurtis@reedsmith.com
**REED SMITH LLP**
355 South Grand Avenue
Suite 2900
Los Angeles, CA  90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

Attorney for Defendant
UMPQUA BANK

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELA CAMENISCH, et al., | Case No. 3:20-CV-05905-RGS |
| Plaintiffs, | Judge Richard G. Seeborg |
| vs. | **COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR PARTIAL SUMMARY JUDGMENT** |
| UMPQUA BANK, | |
| Defendant. | Trial Date:   September 9, 2024 |
| | Date:         June 20, 2024 |
| | Time:         1:30 pm |
| | Place:        Courtroom 3 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       PLEASE TAKE NOTICE that on June 20, 2024, at 1:30 pm, or as soon thereafter as may be

3  heard in Courtroom 3 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco,

4  CA 94102, Defendant Umpqua Bank ("Umpqua") will and hereby does move, pursuant to Federal

5  Rules of Civil Procedure 26 and 56 to determine applicable law and to partially decertify class to

6  exclude non-California residents and for partial summary judgment on the issue of the extent of the

7  class's claimed damages.

8       As explained in the attached Memorandum of Points and Authorities, through this motion,

9  Umpqua respectfully seeks: (i) a determination that that the law of class members' state or country

10 of residence governs their aiding and abetting claims (and decertification of the portions of the class

11 involving class members who are not California residents); (ii) partial summary judgment on the

12 class's request for an award of pre-judgment interest; and (iii) partial summary judgment on the

13 class's request for an award of damages on pre-2007 investments.

14      This motion is based on this Notice of Motion and Motion, the accompanying Declarations

15 of Kasey J. Curtis and Margarita Fortner, the attached Memorandum of Points and Authorities, and

16 all other pleadings, papers, records and documentary materials on file or deemed to be on file in this

17 action and in the two related cases, those matters of which this Court may take judicial notice, and

18 upon the oral arguments of counsel made at the hearing on this motion.

19

20 DATED:  April 23, 2024                    REED SMITH LLP

21                                          By: /s/ *Kasey J. Curtis*
                                            _____
22                                               Kasey J. Curtis
                                                 Attorneys for Defendant
23                                               UMPQUA BANK

24

25

26

27

28

COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR
PARTIAL SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

    A.    Plaintiffs' Class Allegations Against Umpqua .......................................... 3

    B.    PFI Enters Bankruptcy and Adopts a "Netting" Approach to Investor Claims to Allow Investors to Clawback Interest Payments to Net Winners ........................... 4

    C.    The Court Grants Class Certification but Defers Deciding the Choice-Of-Law Dispute ......................................................................... 5

III.    LEGAL STANDARDS ...................................................................................... 7

    A.    Choice-of-Law and Decertification ......................................................... 7

    B.    Partial Summary Judgment ...................................................................... 8

IV.    LEGAL ARGUMENT ....................................................................................... 8

    A.    The Law of Class Members' Place of Residence Controls Their Aiding and Abetting Claims ........................................................... 8

        1.    There are Material Differences in the Law of the 39 Different States in Which Class Members Reside ................................. 9

        2.    Each Jurisdiction Has a Substantial Interest in Application of its Own Law ...................................................... 22

        3.    Applying California Law Would Unduly Impair the Interests of 48 Different Jurisdictions .................................. 23

    B.    Class Members are Estopped From Claiming Entitlement to Prejudgment Interest Based Upon the Bankruptcy Court's Adoption of the "Netting" Approach to Claims ............................................................................ 24

        1.    Class Members are Collaterally Estopped from Seeking Prejudgment Interest ....................................................... 24

        2.    Class Members are Also Judicially Estopped From Seeking Prejudgment Interest ....................................................... 26

        3.    Alternatively, Prejudgment Interest Must be Limited by the Date the Bankruptcy Petition Was Filed ................................ 29

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

C.    The Court Should Enter Partial Summary Judgment as to Damages Arising From Pre-2007 Investments ............................................................................... 29

    1.    There is No Evidence Regarding PFI's Pre-2007 Operations or the Nature of Pre-2007 Investments ........................................................................ 29

    2.    Wallach's Testimony Likewise Establishes that Umpqua Cannot be Liable for Pre-2007 Investments .............................................................. 30

V.    CONCLUSION ................................................................................................. 31

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeida v. BOKF, NA,*
  471 F. Supp. 3d 1181 (N.D. Okla. 2020) .......................................................... 12, 13

*Am. Express Co. v. Italian Colors Rest.,*
  570 U.S. 228 (2013) .................................................................................................. 7

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .................................................................................................. 8

*Bass v. Regions Bank, Inc.,*
  2021 U.S. Dist. LEXIS 263067 (N.D. Ga. Jan. 11, 2021) ..................................... 21

*Baughman v. Walt Disney World Co.,*
  685 F.3d 1131 (9th Cir. 2012)................................................................................. 28

*Beal v. McGuire,*
  216 P.3d 1154 (Alaska 2009) .................................................................................. 15

*Benton v. Merrill Lynch & Co.,*
  2007 U.S. Dist. LEXIS 31018 (E.D. Ark. Apr. 26, 2007) ..................................... 12

*In re Best Pack Seafoods, Inc.,*
  29 B.R. 23 (Bankr. D. Me. 1983) ............................................................................ 25

*Blake v. Wells Fargo Bank, NA,*
  916 F. Supp. 2d 839 (S.D. Ohio 2013) ................................................................... 11

*Brown v. Shriver,*
  2018 U.S. Dist. LEXIS 20915 (S.D. Ohio Feb. 8, 2018) ....................................... 11

*Calvert v. Zions Bancorporation (In re Consol. Meridian Funds),*
  485 B.R. 604 (Bankr. W.D. Wash. 2013) ............................................................... 21

*Casey v. U.S. Bank Nat'l Ass'n,*
  127 Cal. App. 4th 1138 (2005)................................................................................ 24

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) .................................................................................................. 8

*Chen v. Bell-Smith,*
  768 F. Supp. 2d 121 (D.D.C. 2011) ........................................................................ 10

*City of Philadelphia v. Lead Indus. Ass'n, Inc.,*
  994 F.2d 112 (3rd Cir. 1993)................................................................................... 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Cohen v. Dulay*,
    94 N.E.3d 1167 (Ohio Ct. App. 2017) ................................................................... 11

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ..................................................................................................... 7

*Concord Gen. Mut. Ins. Co. v. Gritman*,
    146 A.3d 882 (Vt. 2016) ........................................................................................... 21

*Conde v. Sensa*,
    2018 U.S. Dist. LEXIS 154031 (S.D. Cal. Sept. 10, 2018) ..................................... 23

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
    888 F.3d 753 (5th Cir. 2018) .................................................................................... 11

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) .................................................................................... 8

*DeVries Dairy, L.L.C. v. White Eagle Coop. Ass'n*,
    974 N.E.2d 1194 (Ohio 2012) .................................................................................. 10

*DiTucci v. Ashby*,
    2020 U.S. Dist. LEXIS 34505 (D. Utah Feb. 27, 2020) .......................................... 17

*DKN Holdings LLC v. Faerber*,
    61 Cal. 4th 813 (2015) .............................................................................................. 25

*Donell v. Kowell*,
    533 F.3d 762 (9th Cir. 2008) ........................................................................ 5, 25, 26

*Edgar v. Mite Corp.*,
    457 U.S. 624 (1982) ................................................................................................. 23

*Erie Railroad v. Tompkins*,
    304 U.S. 64 (1938) ................................................................................................... 24

*Forkum v. Co-operative Adjustment Bureau, Inc.*,
    44 F. Supp. 3d 959 (N.D. Cal. 2014) ......................................................................... 8

*Future Grp. v. Nationsbank*,
    478 S.E.2d 45 (S.C. 1996) ........................................................................................ 19

*GCM, Inc. v. Ky. Cent. Life Ins. Co.*,
    947 P.2d 143 (N.M. 1997) ........................................................................................ 21

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................... 7

*Go-Best Assets, Ltd. v. Citizens Bank*,
    64, 972 N.E.2d 426 (Mass. 2012) ............................................................................ 18

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Grad v. Associated Bank, N.A.*,
 2011 Wisc. App. LEXIS 449, (Wis. Ct. App. June 7, 2011) .................................................. 20

*Grayson v. Anderson*,
 816 F.3d 262 (4th Cir. 2016) ........................................................................................... 15, 17

*Guidry v. Bank of Laplace*,
 661 So. 2d 1052 (La. App. 1995) ........................................................................................ 11

*Guzman v. Bridgepoint Educ., Inc.*,
 305 F.R.D. 594 (S.D. Cal. 2015) ........................................................................................ 23

*Halifax Corp. v. Wachovia Bank*,
 604 S.E.2d 403 (Va. 2004) ................................................................................................. 14

*Hanson v. Berthel Fisher & Co. Fin. Servs.*,
 2014 U.S. Dist. LEXIS 72940 (N.D. Iowa May 29, 2014) ................................................. 20

*He Depu v. Oath Holdings, Inc.*,
 531 F. Supp. 3d 219 (D.D.C. 2021) .................................................................................... 16

*Hernandez v. Burger*,
 102 Cal. App. 3d 795 (1980) .............................................................................................. 23

*Holmes v. Young*,
 885 P.2d 305 (Colo. App. 1994) ........................................................................... 16, 17, 18, 19

*Hussein v. UBS Bank USA*,
 446 P.3d 96 (Utah Ct. App. 2019) ...................................................................................... 19

*Hydranautics v. FilmTec Corp.*,
 204 F.3d 880 (9th Cir. 2000) .............................................................................................. 24

*Impact Protective Equip. v. Xtech Protective Equip.*,
 2021 N.J. Super. Unpub. LEXIS 624 (N.J. Super. Ct. App. Div. Apr. 14, 2021) ................. 18

*Insight Ky. Partners II, L.P. v. Preferred Auto. Servs.*,
 514 S.W.3d 537 (Ky. Ct. App. 2016) .................................................................................. 18

*Insight Tech., Inc. v. FreightCheck, LLC*,
 633 S.E.2d 373 (Ga. Ct. App. 2006) ................................................................................... 21

*In re J&J Inv. Litig.*,
 2023 U.S. Dist. LEXIS 46229 (D. Nev. Mar. 18, 2023) ..................................................... 20

*Jackson v. County of L.A.*,
 60 Cal. App. 4th 171 (1997) .......................................................................................... 26, 27

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*,
 2021 U.S. Dist. LEXIS 108017 (N.D. Okla. June 9, 2021) ................................................. 13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR
PARTIAL SUMMARY JUDGMENT

*Jo Ann Howard & Assocs., P.C. v. Cassity*,
  2012 U.S. Dist. LEXIS 128754 (E.D. Mo. Sept. 11, 2012) ................................. 13, 14

*Koch v. Royal Wine Merch., Ltd.*,
  907 F. Supp. 2d 1332 (S.D. Fla. 2012) ................................................................. 12

*Kremen v. Cohen*,
  325 F.3d 1035 (9th Cir. 2003) ................................................................................ 15

*Lannan Found. v. Gingold*,
  300 F. Supp. 3d 1 (D.D.C. 2017) ...................................................................... 10, 16

*Lawless v. Mulder*,
  2021 D.C. Super. LEXIS 26 (D.C. Super. Ct. Oct. 4, 2021) ................................. 19

*Marion v. Bryn Mawr Tr. Co.*,
  288 A.3d 76 (Pa. 2023) ............................................................................................ 19

*Markowits v. Friedman*,
  144 A.D.3d 993 (N.Y. App. Div. 2016) ................................................................. 21

*Marshall v. Nat'l Bank of Middlebury*,
  2021 U.S. Dist. LEXIS 252815 (D. Vt. Dec. 3, 2021) ......................................... 21

*Matthews v. Stolier*,
  2016 U.S. Dist. LEXIS 69909 (E.D. La. May 27, 2016) ...................................... 11

*State ex rel. Mays v. Ridenhour*,
  811 P.2d 1220 (Kan. 1991) ..................................................................................... 21

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .......................................................................... *passim*

*McCann v. Foster Wheeler LLC*,
  48 Cal. 4th 68 (2010) ................................................................................... 9, 22, 23

*Medved v. Deatley*,
  2013 U.S. Dist. LEXIS 129792 (D. Colo. Sep. 11, 2013) ................................... 16

*Molina v. Onewest Bank*,
  903 F. Supp. 2d 1008 (D. Haw. 2012) ................................................................... 13

*Molokai Servs. v. Hodgins*,
  2018 Haw. App. LEXIS 92 (Feb. 28, 2018) .......................................................... 13

*In re Mortg. Elec. Registration Sys.*,
  754 F.3d 772 (9th Cir. 2014) .................................................................................. 29

*In re Nat'l R.V. Holdings, Inc.*,
  390 B.R. 690 (Bankr. C.D. Cal. 2008) .................................................................. 25

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR
PARTIAL SUMMARY JUDGMENT

*In re NC & VA Warranty Co.*,
  594 B.R. 316 (Bankr. M.D.N.C. 2018) .................................................... 14

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ................................................................................ 27

*Officers for Justice v. Civil Serv. Com'n*,
  688 F.2d 615 (9th Cir. 1982) ..................................................................... 7

*In re Palm Beach Fin. Partners, L.P.*,
  488 B.R. 758 (Bankr. S.D. Fla. 2013) ...................................................... 12

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) .................................................................... 7

*Pinner v. Pinner*,
  201 A.3d 26 (Md. Ct. Spec. App. 2019) ............................................. 14, 16

*PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty.
  Dev. Corp.*,
  387 S.W.3d 525 (Tenn. Ct. App. 2012) ................................................... 19

*Ponce v. Tractor Supply Co.*,
  29 Cal. App. 3d 500 (1972) ..................................................................... 24

*Poonja v. Alleghany Props. (In re Los Gatos Lodge, Inc.)*,
  278 F.3d 890 (9th Cir. 2002) ....................................................... 25, 26, 28

*Pope v. Wells Fargo Bank, N.A.*,
  2023 U.S. Dist. LEXIS 235252 (D. Utah Dec. 27, 2023) ........................ 17

*R.I. Res. Recovery Corp. v. Albert G. Brien & Assocs.*,
  2012 R.I. Super. LEXIS 113 (Super. Ct. July 16, 2012) .......................... 14

*Rabo Agrifinance, Inc. v. Bliss*,
  227 F. Supp. 3d 1249 (D. Utah 2017) ...................................................... 17

*Rack v. Schwartz*,
  2020 U.S. Dist. LEXIS 255415 (E.D. Ark. Apr. 24, 2020) ...................... 12

*Roche Diagnostics Corp. v. Shaya*,
  427 F. Supp. 3d 905 (E.D. Mich. 2019) ................................................... 21

*Russell v. Rolfs*,
  893 F.2d 1033 (9th Cir. 1990) .................................................................. 27

*Sec. Title Agency, Inc. v. Pope*,
  200 P.3d 977 (Ariz. Ct. App. 2008) ......................................................... 20

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case No. 3:20-CV-05905-RGS          – vii –
COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR
PARTIAL SUMMARY JUDGMENT

*Sellman v. FloranceGordonBrown, P.C.,*
  82 Va. Cir. 59 (Va. Cir. Ct. 2010) ..................................................................... 14

*Siavage v. Gandy,*
  829 S.E.2d 787 (Ga. Ct. App. 2019) ............................................................. 10, 20

*Siegel v. Fed. Home Loan Mortg. Corp.,*
  143 F.3d 525 (9th Cir. 1998) ................................................................. 24, 26, 28

*Silverman v. Weil,*
  662 F. Supp. 1195 (D.D.C. 1987) ...................................................................... 19

*State Farm Mut. Auto Ins. Co. v. Campbell,*
  538 U.S. 408 (2003) ........................................................................................... 22

*Stromberg v. Qualcomm Inc.,*
  14 F.4th 1059 (9th Cir. 2021) ............................................................................ 22

*Sutton v. FedFirst Fin. Corp.,*
  126 A.3d 765 (Md. Ct. Spec. App. 2015) .......................................................... 18

*Swahn Grp., Inc. v. Segal,*
  183 Cal. App. 4th 831 (2010) ............................................................................ 26

*Taylor v. Rothstein Kass & Co., PLLC,*
  2020 U.S. Dist. LEXIS 17435 (N.D. Tex. Feb. 4, 2020) .................................. 11

*Thornwood, Inc. v. Jenner & Block,*
  799 N.E.2d 756 (2003) ...................................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ............................................................................................. 7

*Wash. Mut. Bank v. Superior Court,*
  24 Cal. 4th 906 (2001) .................................................................................. 1, 6, 8

*Wells Fargo Bank v. Ariz. Laborers,*
  38 P.3d 12 (2002) .............................................................................................. 20

*Wiand v. Wells Fargo Bank, N.A.,*
  938 F.Supp.2d 1238 (M.D. Fla. 2013) .............................................................. 12

*Zayed v. Associated Bank, N.A.,*
  913 F.3d 709 (8th Cir. 2019) ............................................................................. 20

*Zazzali v. Swenson,*
  2014 U.S. Dist. LEXIS 195632 (D. Idaho Aug. 1, 2014) .................................. 14

*Zinn v. Ex-Cell-O Corp.,*
  148 Cal. App. 2d 56 (1957) ............................................................................... 23

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .......................................................................... 7, 22

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................ 8

**Other Authorities**

CACI No. 3610 ....................................................................................................... 10

Iowa J.I. Civ. § 3500.4 ........................................................................................ 9, 20

NY PJI 3:20 ........................................................................................................... 21

RAJI (Civil) 7th Intentional Torts 23 ...................................................................... 9

Restatement (Second) of Torts § 876 ............................................................... 10, 13

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# I.   INTRODUCTION

Pursuant to the Court's Order Re Motion Limits, Dkt. 222, Umpqua respectfully brings this motion seeking: (i) a determination that that the law of class members' state or country of residence governs their aiding and abetting claims; (ii) partial summary judgment on class members' request for an award of pre-judgment interest; and (iii) partial summary judgment on class members' request for an award of damages on pre-2007 investments.  Umpqua also requests that, having determined the applicable law, the Court decertify the class as to any investors who reside outside of California (other than as to their investments in limited liability company membership interests).[1]

**First**, as to the choice-of-law issue, the class in this case is one of the broadest ever certified. It is not merely a suspect "nationwide" class; it is class consisting of residents of eight foreign countries, 39 different states, and the District of Columbia.  Under controlling precedent, the Court must resolve what law applies to the out-of-state class members before it can have a class-wide trial. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012) (forum state's choice-of-law principles govern in diversity cases); *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 927-28 (2001) (under California's choice-of-law principles, choice-of-law disputes must be resolved to proceed as a class action, and it is the plaintiff's burden to prove there are no choice-of-law issues). In *Mazza*, the Ninth Circuit rejected the "corporate headquarters" approach to choice-of-law in nationwide class actions.  That case held that each state in which class members reside has an interest in defining the scope of liability for businesses interacting with its residents.  It also recognized that, in the context of fraud, the "place of the wrong" is where the alleged victims saw the allegedly fraudulent statements and relied upon them—not the state in which the defendant is situated.

Applying *Mazza*, this Court should conclude that the law of class members' jurisdictions of residence controls.  Further, because there are myriad differences between the applicable "aiding and abetting" laws of the multitude of jurisdictions implicated, this Court should also find that the choice-of-law determination requires decertification of the claims of class members who are not California

---

[1] As explained below, non-California residents who invested by becoming members in California limited liability companies (or "LLCs") signed operating agreements with California choice-of-law provisions.  Umpqua thus agrees these investors can invoke California law as to the LLC investments. *See* Dkt. 161 ("Plaintiffs' Reply ISO Class Certification") at 13.

residents.  Without a partial decertification, at trial the Court would be required to instruct the jury on the aiding and abetting elements on a state-by-state basis.  That would make any trial unmanageable and is why partial decertification is both required and respectfully urged.

**Second,** as to class members' request for an award of prejudgment interest, class members are bound by the positions they took in PFI's bankruptcy case and are therefore foreclosed from claiming entitlement to interest on their investments.  It is well settled that "aiding and abetting" is not a freestanding tort; rather it is a form a derivative liability under which a defendant may become secondarily liable for the principal tortfeasor's conduct.  In this case, the aiding and abetting claims at issue seek to hold Umpqua derivatively liable for the injury class members suffered when investing in PFI.  The problem for class members is that, in PFI's bankruptcy, they took the position that entitlement to interest should be disregarded in determining the amount of investors' injuries under the "netting rule" approach to determining the amount of allowed claims.  They did this so that they (as "net losers") could recoup the allegedly "fictitious" interest paid to other investors (the "net winners").  Having taken that position and clawed back millions of dollars of interest from their co-investors, class members cannot now claim that they are entitled to recover the very same interest on their investments they previously declared to be "fictitious" and thus not owed by PFI.

**Third,** as to pre-2007 investments, the Court has already found that "PFI started out as legitimate, profitable businesses that focused on acquiring and operating commercial real estate in Marin and Sonoma Counties."  Dkt. 144 at 1.  It is class members' position that at some unspecified point in time PFI became a fraudulent Ponzi scheme because it began relying on new investments to help pay off existing investors.  The problem for class members is that, because pre-2007 investments went unanalyzed in PFI's bankruptcy, they have no evidence regarding the nature of those pre-2007 investments, when they were made, what they represent, and whether they were part of any fraud (much less a fraud Umpqua aided and abetted).  Because the class's expert at certification has conceded that class members are only entitled to damages on investments made "after the date by which Umpqua Bank should have disclosed the Ponzi scheme," Decl. of Kasey J. Curtis ("Curtis Decl."), Ex. 1 at ¶ 25 ("Salah Report"), Umpqua is entitled to partial summary judgment on any claim for damages related to pre-2007 investments.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1     For these reasons, Umpqua respectfully requests that the Court determine the applicable law,

2  partially decertify the class, and enter partial summary judgment in Umpqua's favor.

3  **II.   FACTUAL AND PROCEDURAL BACKGROUND**

4     By now, the Court is familiar of the facts and history of this case.  Accordingly, Umpqua

5  recounts the limited factual and procedural background relevant to this motion.

6  **A.    Plaintiffs' Class Allegations Against Umpqua**

7     In this certified class action, Plaintiffs seek to hold Umpqua liable for supposedly "aiding and

8  abetting" an alleged "Ponzi scheme" carried out by PFI, one of Umpqua's former depositors.  Dkt.

9  41 (Am. Compl., ¶¶ 57-65).  PFI began in 1983 as a legitimate business focused on acquiring

10  commercial real estate in the upscale Northern Bay Area communities of Marin and Sonoma

11  Counties.  *See* Dkt. 144 at 1-2.

12     PFI's business model was to use investor-sourced funds to purchase and operate properties,

13  with the goal of later selling them once they had appreciated.  Curtis Decl., Ex. 2 at 16:8-18; 32:2-14

14  ("Wallach Dep.").  Capitalizing on this model, PFI acquired 71 properties, estimated to be worth $550

15  million by the time it filed for bankruptcy.  Curtis Decl., Ex. 3 at Ex. B ("Hogan Decl.").  Over its

16  thirty-plus years in business, PFI offered five distinct investment vehicles:

17

18          **Limited Partnership Interests:**  A form of investment in which investors
would become partners in partnerships that acquired and owned specific

19          properties, Wallach Dep. at 16:25-17:2, 17:11-20, 21:15-17, 32:2-14;

20          **Second Deeds of Trust:**  A form of investment in which investors made
secured second mortgages to PFI, behind the mortgages PFI had obtained

21          from commercial lenders, on specific properties, *id.* at 32:18-33:19;

22          **Unsecured Promissory Notes:**  A form of investment in which investors
made unsecured loans to PFI, rather than to specific properties and therefore

23          received higher interest rates than investors in PFI's second deeds of trust,
*id.* at 33:22-34:8, 39:21-40:2;

24

25          **LLC Interests:**  A form of investment in which investors acquired equity
stakes in entities that owned specific properties.  These investments were

26          intended to operate much like PFI's earlier partnership offerings, *id.* at
34:24-35:8, 35:23-36:6, 39:13-15; and

27          **Tenancies-In-Common:**  A form of investment in which investors would
acquire proportional equity stakes in specific properties, thereby enabling

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR
PARTIAL SUMMARY JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

investors to take advantage of the IRS's "1031 exchange" rules, *id.* at 35:23-36:5.

Three of these five investment types are at issue in the *Camenisch* class action: (i) second deeds of trust; (ii) unsecured promissory notes; and (iii) investments in LLCs. *See* Dkt. 41 at ¶¶ 33-47. Tenancies-in-common are at issue in *Bagatelos*, but the *Bagatelos* Plaintiffs' tenancy-in-common agreements contain California choice-of-law provisions. Similarly, in entering into LLC investments, investors signed operating agreements that contained California choice-of-law provisions. *See* Dkt. 161 at 13. Investors in deeds of trust and unsecured promissory notes signed no such choice-of-law provisions. *See* Curtis Decl., Exs. 4 & 5.

Despite its origins as a legitimate business, at some point PFI began generating insufficient revenue to pay its debt service to investors and thus began to rely on new investor funds to help pay off earlier investors. Wallach Dep. at 58:12-59:5; *see also* Dkt. 144 at 1-2. It is at this point that class members contend PFI became a "Ponzi scheme." In reality, PFI was a varied business that operated 10 properties through limited partnerships, 31 properties it owned directly, and another 30 properties through LLCs in which investors held equity stakes. Hogan Decl., Ex. B. Furthermore, the particulars of PFI's properties varied significantly—with nearly all posting positive EBITDA[2] and operating profitably. *See* Curtis Decl., Ex. 6 at 19. The reason that class members maintain that PFI was a "Ponzi scheme" is not because its operating business was unprofitable; rather, it is because PFI's debt service obligation to its investors exceeded operational revenues.

**B.     PFI Enters Bankruptcy and Adopts a "Netting" Approach to Investor Claims to Allow Investors to Clawback Interest Payments to Net Winners**

In May 2020, PFI's founder passed away and his ex-wife, Charlene Albanese, took control of the business. Hogan Decl., ¶ 8. Ms. Albanese hired a law firm who later expressed concern about PFI's solvency, which led to PFI's bankruptcy. *Id.,* ¶ 12.

In the bankruptcy, PFI's investors and professionals advocated for the "netting rule" approach to Ponzi scheme cases, under which investors' claims are to be determined on a net principal basis

---

[2]  EBITDA is an acronym for earnings before interest, taxes, depreciation, and amortization. It is often utilized as a measure of profitability.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

without regard to the interest that might otherwise be due.  Curtis Decl., Ex. 7 ("Mtn. Approve Settlement Proc.").  This claims procedure allowed "net losers" (such as the *Camenisch* class members) to recoup payments made to "net winners" above the principal amount of their investment. *See Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) (in Ponzi scheme cases, "the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers").

Based on the netting rule, the Official Committee of Unsecured Creditors (which represented investors and was comprised of several of the class representatives) jointly moved with PFI (the predecessor to the PFI Trust) to institute a procedure through which they could pursue "clawback claims" against "net winners."  Mtn. Approve Settlement Proc. at 1-2.  They noted that there were approximately 566 investors that were "net winners" with an aggregate "net winnings" of $41.2 million and argued that "such profits are fictitious as 'they do not represent a return on legitimate investment activity'" and "[a]ny excess in the form of fictitious profits are subject to avoidance and recovery."  *Id.* at 2, 10-11.  The bankruptcy court approved these settlement procedures and allowed the estate to pursue these types of avoidance actions.  Curtis Decl., ¶ 8.

Upon the approval of this netting procedure, PFI then proceeded to send hundreds of demand letters to net winners and filed no less than 60 adversary cases.  *Id.,* ¶ 9; *Id.*, Ex. 9 ("Goldberg Dep.") at 86:16-87:1.  All of this was done to recoup the supposedly "fictious" interest that PFI had previously paid out to "net winners" for the benefit of PFI's "net losers" (i.e., the class members in this case).  Mtn. Approve Settlement Proc. at 2, 10-11; *see also* Curtis Decl.., Ex. 8 ("Exemplar Netting Complaint").  According to the trustee of the PFI Trust, those demands and lawsuits enabled class members to recover *millions of dollars* that they would not have otherwise received.  Goldberg Dep. at 86:16-87:25.

**C.    The Court Grants Class Certification but Defers Deciding the Choice-Of-Law Dispute**

In August 2020, Plaintiffs filed the *Camenisch* class action seeking to hold Umpqua derivatively liable for PFI's misconduct.  Dkt. 1.  In May 2023, several individual plaintiffs filed the *Bagatelos* follow-on action.  *Bagatelos v. Umpqua Bank*, No. 3:23-cv-2759-RS, Dkt. 1.  The two

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

actions were consolidated in August 2023.  Dkt. 193.  *Bagatelos*, however, is not a class action and not implicated by this motion.

After the close of discovery in *Camenisch*, the *Camenisch* Plaintiffs moved for certification of a class of "1,267 investors" in PFI.  Dkt. 79-1 at 4.  As noted in Umpqua's opposition to that motion, the putative class included residents of 8 foreign countries, 41 states, and the District of Columbia. Dkt. 98 at 14-15.  On December 16, 2022, the Court granted class certification.  Dkt. 144.  In its order, the Court deferred determination on the choice-of-law issues presented by the multi-jurisdictional class.  *Id.*  It stated that "[a]t this juncture. . . Umpqua has failed to show that out-of-state plaintiffs cannot pursue claims under California law in these circumstances"[3] and left open the possibility that "a choice of law analysis may at some point require a narrowing of the class to exclude any plaintiffs living in particular non-California jurisdictions[.]"  *Id.* at 15.

On May 24, 2023, the Court accepted the *Camenisch* Plaintiffs' proposed modification to the class definition.  The operative class definition is now as follows:

> All persons who invested money with Professional Financial Investors, Inc. (PFI) or Professional Investors Security Fund, Inc. (PISF) through secured or unsecured debt instruments or an LLC membership purchase agreement; who did not recover the principal amount of their investment prior to July 14, 2020; and who have a valid, allowed claim in In re Professional Financial Investors, Inc., Case No. 20-bk-30604 (Bankr.N.D.Cal.) or any of its affiliated debtor bankruptcy cases, jointly administered under Case No. 20-bk-30604.  Commercial lenders to PFI and PISF are excluded from the class.

Dkt. 181 at 2.

Following the class notice and opt-out process, there are now 1,217 class members.  *See* Dkt. 198, ¶ 11 (identifying 1,129 class members); Dkt. 199 (excluding two investors from class pursuant to opt-out notices).  Of these class members, the majority reside in California.  Decl. of Margarita Fortner ("Fortner Decl."), Ex. 15.  Another 311 live in 48 different jurisdictions, comprised of 39

---

[3]  This statement inverted the choice-of-law burdens at certification.  Under *Mazza* and *Washington Mutual*, it is the plaintiff's burden to demonstrate that California law applies to a nationwide class. *Mazza*, 666 F.3d at 589-90 (California choice-of-law principles govern in diversity cases); *Wash. Mut.*, 24 Cal. 4th at 928 ("The trial court and the Court of Appeal also erred in concluding that, even assuming the enforceability of the choice-of-law agreements, nationwide class certification is appropriate because ASB did not demonstrate dispositive conflicts between California law and the law of other states.  As explained *ante*, in part B, the party challenging certification is not required to make such a showing…").

different states, the District of Columbia, and eight foreign countries (Canada, Germany, Japan, Australia, France, Mexico, Spain, and The Netherlands).  *Id.*

### III.    LEGAL STANDARDS

**A.    Choice-of-Law and Decertification**

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted).  Federal Rule of Civil Procedure 23 therefore imposes "stringent requirements" for class certification.  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Certification is proper only if the court concludes that Rule 23's prerequisites have been satisfied after a "rigorous analysis." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

It is the plaintiff who "has the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, n.32 (9th Cir. 2022) (en banc).  To the extent the proposed class is a not confined to a single jurisdiction, the court must undertake a choice-of-law analysis. *Mazza*, 666 F.3d at 589-90.  As such, to properly certify a multi-jurisdictional class, the district court must determine whether a single state's law can properly be applied to the class as a whole or, if not, whether differences will be compatible with class-wide resolution.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (explaining the effect of conflicts in applicable law on class certification).

Finally, "a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative." *Officers for Justice v. Civil Serv. Com'n*, 688 F.2d 615, 633 (9th Cir. 1982).  Accordingly, "if future decisions or circumstances lead to the conclusion that extraterritoriality must be evaluated on an individual basis, the district court can decertify the class."  *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## B.    Partial Summary Judgment

Partial summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is considered "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once the moving party has met its burden, the burden shifts to the nonmoving party to designate specific facts showing a genuine dispute for trial." *Forkum v. Co-operative Adjustment Bureau, Inc.*, 44 F. Supp. 3d 959, 961-62 (N.D. Cal. 2014).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323-34.

## IV.    LEGAL ARGUMENT

## A.    The Law of Class Members' Place of Residence Controls Their Aiding and Abetting Claims

As a federal court exercising diversity jurisdiction over this class action, this Court "must look to the forum state's choice-of-law rules to determine the controlling substantive law." *Mazza*, 666 F.3d at 589 (citation omitted).  "Under California's choice-of-law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Id.* (quoting *Wash. Mut.*, 24 Cal. 4th at 921).  California law is also clear that, where a choice-of-law dispute arises in a class action, it must be resolved before there can be a class-wide trial. *See Wash. Mut.*, 24 Cal. 4th at 927 ("We conclude that the decision in this case to order certification of a nationwide class was premised upon the faulty legal assumption that choice-of-law issues need not be resolved as part of the certification process").

Where a nationwide class is involved, "California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.'" *Mazza*, 666 F.3d at 589 (quoting *Wash. Mut.*, 24 Cal. 4th at 921); *see also Washington Mutual*, 24 Cal. 4th at 924 ("[T]he court cannot accept 'on faith' an assertion that variations in state

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

laws relevant to the case do not exist or are insignificant; rather, the party seeking certification must affirmatively demonstrate the accuracy of the assertion.").  In performing this analysis, courts apply the familiar three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza*, 666 F.3d at 590 (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (2010)).

Applying the governmental interest test in this case establishes that California law cannot be applied to the entire class.  As discussed in more detail below, the law of the 48 different jurisdictions in which the class members reside materially differ from California law, those jurisdictions have a substantial interest in having their law applied, and the application of California law on a class-wide basis would unduly impair the interests of those other jurisdictions.

### 1. There are Material Differences in the Law of the 39 Different States in Which Class Members Reside

The law in many of the other U.S. jurisdictions on civil aiding and abetting liability differs greatly from California law on the same.  In fact, while California offers a general form jury instruction for civil aiding and abetting liability, CACI 3610, only *two* other states—Iowa and Arizona—have form civil and abetting liability instructions, Iowa J.I. Civ. § 3500.4 and RAJI (Civil) 7th Intentional Torts 23.  Regarding civil claims for aiding and abetting fraud or breach of fiduciary duty, the other states jurisdictions fall into six general categories:

> (1) jurisdictions that do not recognize civil aiding and abetting fraud or breach of fiduciary duty claims;
>
> (2) jurisdictions where the law is unsettled whether they recognize either civil aiding and abetting fraud or a civil aiding and abetting breach of fiduciary duty;

(3) jurisdictions that recognize a claim for civil aiding and abetting fraud, but not for civil aiding and abetting breach of fiduciary duty;

(4) jurisdictions that recognize a claim for civil aiding and abetting breach of fiduciary duty, but not for civil aiding and abetting fraud;

(5) jurisdictions that recognize civil aiding and abetting fraud or breach of fiduciary duty, but apply different elements or rules than California; and

(6) jurisdictions with civil aiding and abetting claims similar to California law.

This wide range of variations reflects that a single trial for all current class members is simply unworkable. Below, Umpqua details the myriad of variances in applicable state law.

### a. States that Do Not Recognize Either Civil Aiding and Abetting Fraud or Breach of Fiduciary Duty

Three (3) states in which class members reside do not recognize civil aiding and abetting liability: Louisiana, Ohio, and Texas. What is more, at least two jurisdictions in which class members reside in expressly do not recognize civil aiding and abetting as derivative liability as it has been pled in this case—Georgia and the District of Columbia. Rather, they treat contentions of aiding and abetting as an argument for why there should be *direct liability* for fraud or breach of fiduciary duty (different torts that are not alleged in this case). *See Siavage v. Gandy*, 829 S.E.2d 787, 790 (Ga. Ct. App. 2019) ("the tort of 'aiding and abetting fraud' does not exist as a basis for liability under Georgia law[] . . . one who 'knowingly participates in a fraud' may be liable for the fraud'"); *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 29-30 (D.D.C. 2017) ("courts applying District of Columbia law have nonetheless found aiders and abettors liable for the underlying tort when certain criteria are met." (citing *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 140-41 (D.D.C. 2011)).

The Ohio Supreme Court has been explicit: Ohio "has never recognized a claim under 4 Restatement 2d of Torts, Section 876."[4] *DeVries Dairy, L.L.C. v. White Eagle Coop. Ass'n*, 974 N.E.2d 1194, 1194 (Ohio 2012). Courts confronted with civil aiding and abetting claims under Ohio

---

[4] Restatement (Second) of Torts § 876 provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." Class members are proceeding under a subsection (b) theory in this case.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

law following the *Devries Dairy* decision "routinely appl[y it] to dismiss analogous claims." *Brown v. Shriver*, No. 1:17-cv-280, 2018 U.S. Dist. LEXIS 20915, at *3-4 (S.D. Ohio Feb. 8, 2018); *see also Blake v. Wells Fargo Bank, NA*, 916 F. Supp. 2d 839, 843 (S.D. Ohio 2013) ("With the *DeVries Dairy* decision, there is now conclusive authority from Ohio's highest court that a claim for civil aiding and abetting under Section 876 of the Restatement of Torts is *not* cognizable under Ohio law." (collecting cases)); *Cohen v. Dulay*, 94 N.E.3d 1167, 1176 (Ohio Ct. App. 2017) ("aiding, abetting, inducing or participating in breaches of fiduciary duties claim . . . is not cognizable under Ohio law"). As such, the claims of class members residing in Ohio necessarily fail.

Under Louisiana law, "'[i]n the absence of a conspiracy, there is no distinct cause of action for aiding and abetting.'" *Matthews v. Stolier*, No. 13-6638, 2016 U.S. Dist. LEXIS 69909, at *8 (E.D. La. May 27, 2016) (quoting *Guidry v. Bank of Laplace*, 661 So. 2d 1052, 1057 (La. App. 1995)). Further, "'conspiracy is not a substantive tort in Louisiana,'" but "'instead, it is the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part that constitutes the actionable elements of a claim.'" *Matthews*, 2016 U.S. Dist. LEXIS 69909, at *8 (citations omitted). Plaintiffs have only asserted two causes of action: aiding and abetting fraud and aiding and abetting breach of fiduciary duty. Dkt. 41. Because these are not "distinct cause[s] of action" under Louisiana law, the claims necessarily fail for class members in Louisiana.

Finally, as Umpqua explained in its opposition to Plaintiffs' class certification motion (and the *Camenisch* Plaintiffs previously agreed), civil aiding and abetting liability is not cognizable under Texas law. *See Taylor v. Rothstein Kass & Co., PLLC*, No. 3:19-CV-1594-D, 2020 U.S. Dist. LEXIS 17435, at *14 (N.D. Tex. Feb. 4, 2020) ("The Supreme Court of Texas has not expressly decided whether Texas recognizes a cause of action for aiding and abetting.' [Citation.] But the Fifth Circuit has held that 'no such claim [for aiding and abetting] exists in Texas' and has refused to recognize such a claim because 'a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by state courts.' (quoting *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 782, 781 (5th Cir. 2018)).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR PARTIAL SUMMARY JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

### b.    States Where the Law is Unsettled Whether Civil Aiding and Abetting Liability is Recognized

In at least eleven (11) states in which class members reside the law is unclear whether the state recognizes civil aiding and abetting as a cause of action:  Alaska, Arkansas, Florida, Hawaii, Idaho, Missouri, North Carolina, North Dakota, Oklahoma, Rhode Island, and Virginia.

Multiple courts have acknowledged that there is uncertainty in whether Arkansas would recognize civil aiding and abetting liability.  *See, e.g.*, *Benton v. Merrill Lynch & Co.*, No. 3:06-CV-00105 GTE, 2007 U.S. Dist. LEXIS 31018, at *5 (E.D. Ark. Apr. 26, 2007) ("Plaintiffs' theory for relief [aiding and abetting fraud] raises novel issue of Arkansas law.  The Court finds no meaningful discussion or guidance on such issues in Arkansas case law."); *Rack v. Schwartz*, No. 4:20-CV-00135-BRW, 2020 U.S. Dist. LEXIS 255415, at *4 (E.D. Ark. Apr. 24, 2020) (acknowledging the uncertainty in Arkansas law of whether civil aiding and abetting liability exists, but nevertheless finding that "[a]ssuming the cause of action even exists in Arkansas," plaintiff had not sufficiently pled it).

As to Florida, there is contradicting case law on whether or not Florida recognizes civil aiding and abetting liability.  *Compare In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 772 (Bankr. S.D. Fla. 2013) ("'It is uncertain whether Florida recognizes a claim for aiding and abetting fraud.'" (quoting *Koch v. Royal Wine Merch., Ltd.*, 907 F. Supp. 2d 1332, 1348 (S.D. Fla. 2012); *with Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) ("In actions involving the liability of a bank for aiding and abetting its customer's Ponzi scheme, the second element, knowledge, will only be satisfied if the bank had actual knowledge of [the] fraudulent activities." (alteration in original) (citation and internal quotations omitted)).  To determine whether or not class members in Florida can bring their aiding and abetting claims against Umpqua, the Court must analyze conflicting Florida case law, and predict how the Florida Supreme Court would come out.

The same is true for Oklahoma.  "The Oklahoma Supreme Court has neither recognized nor declined to recognize a cause of action for aiding and abetting fraud."  *Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181, 1196-97 (N.D. Okla. 2020).  And some district courts have dismissed aiding and abetting fraud claims based on an assumption the Oklahoma Supreme Court would *not* recognize

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

such claim, while other district courts have permitted such claims to survive.  *See id.* (collecting cases).  A similar issue exists regarding aiding and abetting breach of fiduciary duty liability.  *See JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, No. 20-CV-35-GKF-SH, 2021 U.S. Dist. LEXIS 108017, at *22 (N.D. Okla. June 9, 2021) (dismissing plaintiff's aiding and abetting fraud and breach of fiduciary duty claims "because Oklahoma has not, and is unlikely to, recognize those causes of action").

Similarly, it is unclear whether Hawaii recognizes aiding and abetting liability and, if so, what elements it would apply.  For example, in *Molina v. Onewest Bank*, the District of Hawaii recognized in 2012 that "Hawaii courts have not explicitly articulated a test for civil aiding and abetting," but went on to analyze plaintiff's aiding and abetting claims under California law based on the court's reasoning "that Hawaii courts often look to California court for guidance when there is no Hawaii precedent."  903 F. Supp. 2d 1008, 1021-21 (D. Haw. 2012) (citations and internal quotations omitted).  But a non-precedential memorandum opinion from the Hawaii Intermediate Appeal Court in 2018 stated: "A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach."  *Molokai Servs. v. Hodgins*, No. CAAP-15-0000464, 414 P.3d 202, 2018 Haw. App. LEXIS 92, at *6 (Feb. 28, 2018) (citation and internal quotations omitted).  But California law includes an additional requirement to establish aiding and abetting liability: the aiding and abetting itself must have been a substantial factor to the plaintiff's damages.  As such, the non-precedential *Molina* court's reliance on Hawaii applying California aiding and abetting law is contradicted by the non-precedential *Molokai* court's application of a different aiding and abetting liability test than the one California follows.

Missouri courts "have recognized the civil conspiracy theory of liability set forth in [Restatement (Second) of Torts] § 876(a)."  *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09CV01252 ERW, 2012 U.S. Dist. LEXIS 128754, at *32-33 (E.D. Mo. Sept. 11, 2012) (collecting cases).  However, "[s]everal Missouri courts have flatly rejected the application of § 876(c), and others have acknowledged its rejection," and "Missouri intermediate appellate courts have reached opposing holdings on the application of § 876(b)."  *Id.* (collecting cases).  Based on this conflicting

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

and primarily negative treatment of liability under subsection (b) and (c), the court in *Cassity* "predict[ed] that the Missouri Supreme Court would decline to adopt the theory of liability presented by either § 876(b), or § 876(c)." *Id.* at *33.

As to Rhode Island, Umpqua has been unable to find any Rhode Island court of appeal or supreme court case discussing aiding and abetting fraud liability, and "[t]he Rhode Island Supreme Court has yet to recognize a cause of action for aiding and abetting a breach of fiduciary duty." *R.I. Res. Recovery Corp. v. Albert G. Brien & Assocs.*, No. PB 10-5194, 2012 R.I. Super. LEXIS 113, at *45-46 (Super. Ct. July 16, 2012).    However, some Rhode Island courts appear to apply Massachusetts aiding and abetting law (see, e.g., *id.*)—and as is discussed in Section B.5 below, Massachusetts' aiding and abetting law differs greatly from California law.

It is also unclear whether Idaho would recognize civil aiding and abetting liability.  *See, e.g.*, *Zazzali v. Swenson*, No. 1:12-CV-224-S-MJP, 2014 U.S. Dist. LEXIS 195632, at *6-7 (D. Idaho Aug. 1, 2014) ("Idaho courts have not yet decided one way or another whether aiding and abetting fraud is a viable claim").

The same is true for North Carolina.  *See, e.g.*, *In re NC & VA Warranty Co.*, 594 B.R. 316, 355-56 (Bankr. M.D.N.C. 2018) (noting that "[w]hether North Carolina recognizes a cause of action for aiding and abetting a common law tort remains an open question, with conflicting opinions in both the North Carolina state and federal courts," and collecting cases falling on both sides of the argument); *see also Pinner v. Pinner*, 201 A.3d 26, 43 (Md. Ct. Spec. App. 2019) ("while North Carolina does recognize a stand-alone claim for breach of fiduciary duty, it never has recognized a claim for civil aider and abettor liability" (citation omitted)).

And for Virginia.  *See Sellman v. FloranceGordonBrown, P.C.*, 82 Va. Cir. 59, 62 (Va. Cir. Ct. 2010) ("[T]he Supreme Court of Virginia has not specifically recognized a claim of aiding and abetting a tort."); *Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403 (Va. 2004) (refusing to recognize a cause of action for aiding and abetting a breach of a fiduciary duty).

As to North Dakota, Umpqua has thus far been unable to find any North Dakota case analyzing civil aiding and abetting liability.  As such, it is unclear whether North Dakota would

COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR
PARTIAL SUMMARY JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   recognize any such liability, especially if North Dakota would recognize aiding abetting fraud and

2   breach of fiduciary duty liability, and if so, what test North Dakota would apply.

3   Similarly, Umpqua has been unable to find any Alaska case recognizing a claim for aiding

4   and abetting fraud, and the Alaska Supreme Court has thus far refused to decide whether Alaska will

5   recognize a claim for aiding and abetting breach of fiduciary duty.  *See, e.g., Beal v. McGuire*, 216

6   P.3d 1154, 1174 (Alaska 2009) ("assum[ing]," without deciding, "for discussions sake that a non-

7   fiduciary may be liable for aiding and abetting a breach of fiduciary duty").

8   The uncertainty as to these cases is meaningful because the absence of any clear recognition

9   in these states' laws of the tort of aiding and abetting is reason for the Court to find such a claim

10  cannot be pursued.  After all, it is a "well-established principle" that "federal courts sitting in diversity

11  rule upon state law *as it exists* and do not surmise or suggest its expansion."  *Grayson v. Anderson*,

12  816 F.3d 262, 272 (4th Cir. 2016) (citation omitted, emphasis in original); *see also Kremen v. Cohen*,

13  325 F.3d 1035, 1038 (9th Cir. 2003) (it is not the role of federal courts to expand state law); *City of*

14  *Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 123 (3rd Cir. 1993) ("In a diversity case . . .

15  federal courts may not engage in judicial activism.  Federalism concerns require that [they] permit

16  state courts to decide  whether and to what extent they will expand state common law.").  It also

17  stands as an obstacle to a class-wide trial—because, to have class-wide trial, the Court will need to

18  undertake its *Erie* predictive function as to each of these states and determine (i) whether they

19  recognize the tort, (ii) the contours of its application, and (iii) the elements of that tort.  This process

20  would be antithetical to a proper class action and sounds much more like a mass action or multidistrict

21  proceeding—which this case is decidedly not.

22          **c.    States that Recognize Aiding and Abetting Fraud, But Do Not Recognize Abetting Breach of Fiduciary Duty Claims**

23          Two (2) jurisdictions recognize civil liability for aiding and abetting fraud, but have either not

24  recognized a claim for aiding and abetting breach of fiduciary duty or have expressly disclaimed any

25  such cause of action: Maryland and Washington D.C.

26          Maryland courts have been reluctant to rule on whether Maryland recognizes the tort of breach

27  of fiduciary duty and, relatedly, whether Maryland recognizes the tort of aiding and abetting breach

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of fiduciary duty.  *See Pinner*, 201 A.3d at 43 (acknowledging defendant's argument that "Maryland does not recognize breach of fiduciary duty as a stand-alone tort for damages," but finding that the court "need not determine whether Maryland recognizes a cause of action for aiding and abetting a breach of fiduciary duty" under the facts of that case).

Similarly, the high court in the District of Columbia has not yet decided whether it will recognize a claim for aiding and abetting breach of fiduciary duty.  *See He Depu v. Oath Holdings, Inc.*, 531 F. Supp. 3d 219, 244 (D.D.C. 2021) ("The D.C. Court of Appeals thus left open the possibility that it might recognize the tort of aiding and abetting the breach of a fiduciary duty in the future."); *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 29 (D.D.C. 2017) ("the District of Columbia Court of Appeals has never expressly decided whether a cause of action exists for aiding and abetting the breach of a fiduciary duty").[5]

### d.   States that Recognize Civil Aiding and Abetting Breach of Fiduciary Duty Claims, But Not Civil Aiding and Abetting Fraud Claims

In contrast to the above, three (3) states recognize tort liability for aiding and abetting breach of fiduciary duty, but not for aiding and abetting fraud: Colorado, South Carolina, and Utah.

Colorado courts have recognized general civil aiding and abetting liability, and have also recognized civil liability for aiding and abetting breach of fiduciary duty.[6]  *See Holmes v. Young*, 885 P.2d 305, 308 (Colo. App. 1994).  However, it remains unclear whether Colorado will recognize civil liability for aiding and abetting fraud.  *See, e.g.*, *Medved v. Deatley*, No. 12-cv-03034-PAB-MEH, 2013 U.S. Dist. LEXIS 129792, at *22 (D. Colo. Sep. 11, 2013) ("The Colorado Supreme Court has not addressed whether plaintiffs can assert claims for aiding and abetting common law fraud.").

---

[5] Notably, courts that have assumed the District of Columbia would recognize aiding and abetting breach of fiduciary duty have applied a different test than California law applies.  For example, these courts have not required that the aiding and abetting be a substantial factor in bringing about the harm to the plaintiff.  *See, e.g.*, *Lannan Found.*, 300 F. Supp. 3d at 29-30 (assuming that the District of Columbia would require the following three elements only to establish aiding and abetting breach of fiduciary duty liability:  actors are liable when: (1) they assist the primary violator in performing a wrongful act that causes an injury; (2) they are generally aware of [their] role as part of an overall illegal or tortious activity at the time [they] provide[s] the assistance; and (3) they knowingly and substantially assist[] the principal violation" (citation and internal quotations omitted)).

[6] *See* Section B.5 below for a discussion of how Colorado's aiding and abetting law differs from California's aiding and abetting law.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

As the Fourth Circuit explained in *Grayson v. Anderson*, while South Carolina has recognized the specific torts of aiding and abetting breach of fiduciary duty and aiding and abetting abuse of process, apparently no South Carolina case "has held that aiding and abetting common law fraud, or even torts generally, would constitute a cause of action in South Carolina."  816 F.3d 262, 272 (4th Cir. 2016).  As such, the Fourth Circuit refused to "expand South Carolina law by recognizing a cause of action for aiding and abetting common law fraud."  *Id.*

And "Utah does not recognize a claim for aiding and abetting fraud."  *Pope v. Wells Fargo Bank, N.A.*, No. 2:23-cv-86 JNP DBP, 2023 U.S. Dist. LEXIS 235252, at *14 (D. Utah Dec. 27, 2023) (citation omitted); *see also DiTucci v. Ashby*, No. 2:19-cv-277-TC-PMW, 2020 U.S. Dist. LEXIS 34505, at *14 (D. Utah Feb. 27, 2020) ("[T]he court is not convinced that aiding and abetting fraud is even a permissible cause of action. . . .  [N]o Utah court has ever recognized such a claim."); *see also Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1252 n.1 (D. Utah 2017) ("Utah courts have not recognized a claim for aiding and abetting fraud.").

### e.    States that Apply Different Rules to Civil Aiding and Abetting Claims

Of the states that do recognize aiding and abetting fraud and/or breach of fiduciary duty claims, fifteen (15) states apply different rules to such claims than California: Arizona; Colorado (who only recognizes aiding and abetting breach of fiduciary duty); Georgia (direct liability); Illinois; Kentucky; Maryland (who only recognizes aiding and abetting fraud); Massachusetts; New Jersey; Pennsylvania; South Carolina; Tennessee; Utah (who only recognizes aiding and abetting breach of fiduciary duty); Vermont; the District of Columbia (direct liability); Wisconsin.

**Unlike California, twelve (12) states do not have a "substantial factor" element.**  Under California law, one of the essential elements to an aiding and abetting claim is that the defendant's conduct be a "substantial factor" in bringing about the plaintiff's harm.  CACI 3610.  California is in the minority in that regard and the majority of jurisdictions do not require the plaintiff prove a "substantial factor" element to establish aiding and abetting liability:

<u>Colorado.</u>  *Holmes*, 885 P.2d at 308 ("Liability for aiding or abetting a tortious act will be found if the party whom the defendant aids performs a wrongful act that causes an injury, the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that

he provides the assistance, and the defendant knowingly and substantially assists the principal violation.").

Illinois. *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (2003) ("In Illinois, a claim for aiding and abetting includes the following elements:  (1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." (citation and internal quotations omitted)).

Kentucky. *Insight Ky. Partners II, L.P. v. Preferred Auto. Servs.*, 514 S.W.3d 537, 546 (Ky. Ct. App. 2016) ("To prevail on a claim of aiding and abetting a breach of fiduciary duty, a plaintiff must prove the following elements: (1) the existence and breach of a fiduciary relationship; (2) the defendant gave the breaching party substantial assistance or encouragement in effectuating the breach; and (3) the defendant knew that the party's conduct breached that fiduciary duty." (citation and internal quotations omitted)).

Maryland. *Sutton v. FedFirst Fin. Corp.*, 126 A.3d 765, 792 (Md. Ct. Spec. App. 2015) ("To state a claim for aiding and abetting a non-fiduciary, a plaintiff must allege, *inter alia*, facts that the aider and abettor 'knowingly  and  substantially  assist[ed]  the  principal violation.'" (quoting *Holmes*, 885 P.2d at 308)).

Massachusetts.  *Go-Best Assets, Ltd. v. Citizens Bank*, 64, 972 N.E.2d 426, 438 (Mass. 2012) ("To prove that the bank aided and abetted a tort, the plaintiff must show: (1) that Goldings [tortious actor] committed the relevant tort; (2) that the bank [defendant] knew he was committing the tort; and (3) that the bank actively participated in or substantially assisted in his commission of the tort.").

New Jersey. *Impact Protective Equip. v. Xtech Protective Equip.*, No. A-0879-19, 2021 N.J. Super. Unpub. LEXIS 624, at *39-40 (N.J. Super. Ct. App. Div. Apr. 14, 2021) (per curiam) ("Liability for aiding and abetting is found in cases where one party knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. . . .  To prove such a claim, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." (citations and internal quotations omitted)).

<u>Pennsylvania.</u> *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76 (Pa. 2023) (acknowledging, for the first time, that Pennsylvania law would permit aiding and abetting liability consistent with Restatement (Second) of Torts section 876, and requiring actual knowledge).

<u>South Carolina</u>. *Future Grp. v. Nationsbank*, 478 S.E.2d 45, 50 (S.C. 1996) ("[A] cause of action for aiding and abetting a breach of fiduciary duty where a plaintiff proves (1) a breach of a fiduciary duty owed to the plaintiff (2) the defendant's knowing participation in the breach and (3) damages.  The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach." (citing *Holmes*, 885 P.2d 305)).

<u>Tennessee.</u> *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 552 (Tenn. Ct. App. 2012) ("[C]ommon law civil liability theory of aiding and abetting . . . requires that the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts." (citations and internal quotations omitted)).

<u>Utah.</u>  *Hussein v. UBS Bank USA*, 446 P.3d 96, 108 (Utah Ct. App. 2019) ("A party aids and abets the breach of a fiduciary duty when it knowingly join[s] a fiduciary in fraudulent acts, whereby the fiduciary breaches his or her fiduciary duties, and is therefore jointly and severally liable with that fiduciary." (citation and internal quotations omitted)).

<u>Washington D.C.</u> *Lawless v. Mulder*, 2021 D.C. Super. LEXIS 26, *4-5 (D.C. Super. Ct. Oct. 4, 2021) ("'To meet the pleading requirements of an aiding and abetting charge sounding in fraud, plaintiffs must demonstrate and do so *with particularity*, that: (1) the party whom the defendant aided performed a wrongful act that caused injury; (2) the defendants were aware of their role contributing to the principal's fraud when they rendered their services; and (3) the defendants knowingly and substantially assisted the principal in his fraud.'" (quoting *Silverman v. Weil*, 662 F. Supp. 1195, 1200 (D.D.C. 1987)).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Wisconsin.  *Grad v. Associated Bank, N.A.*, 801 N.W.2d 349 (table), 2011 Wisc. App. LEXIS 449, at \*19-20 (Wis. Ct. App. June 7, 2011) ("A person is liable in tort for aiding and abetting if the person: (1) undertakes conduct that, as a matter of objective fact, aids another in the commission of an unlawful act; and (2) consciously desires or intends that his conduct will yield such assistance.").

**Nevada, Minnesota, and Iowa have adopted the "sliding scale" approach to aiding and abetting liability.**  At least three states—Nevada, Minnesota, and Iowa—have adopted the "sliding scale" approach to aiding and abetting liability.  *See In re J&J Inv. Litig.*, No. 2:22-cv-00529-GMN-NJK, 2023 U.S. Dist. LEXIS 46229, at \*11-15 (D. Nev. Mar. 18, 2023); *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 714-15 (8th Cir. 2019) (discussing Minnesota law); *Hanson v. Berthel Fisher & Co. Fin. Servs.*, No. 13-CV-67-LRR, 2014 U.S. Dist. LEXIS 72940, at \*110-11 (N.D. Iowa May 29, 2014); Iowa J.I. Civ. § 3500.4.  Under this approach (which differs materially from California law), the amount of "knowledge" the defendant has will lessen the conduct the plaintiff must show in order to establish "substantial assistance" for purposes of imposing liability.

**Arizona does not require actual knowledge.**  Arizona has expressly found that a bank is not required to have actual knowledge to be held liable for aiding and abetting the fraud of one of its customers.  *Wells Fargo Bank v. Ariz. Laborers*, 38 P.3d 12, 26 (2002) ("bank can be held liable for aiding and abetting a customer who defrauded another bank if bank has a 'general awareness' of the customer's fraudulent scheme, notwithstanding the fact that the bank may not have had actual knowledge of the scheme or an intent to participate in the fraud." (citation omitted)); *see also Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 988 (Ariz. Ct. App. 2008) ("Proof of actual and complete knowledge of the primary violation is not uniformly necessary, however." (citation and internal quotations omitted)).

**Georgia and Vermont include additional requirements or rules to establish aiding and abetting liability beyond what California law requires.**  Georgia requires that a plaintiff show not only that a defendant substantially assisted the tort, but also that the defendant *induced* the fraud or breach of fiduciary duty.  *See Siavage v. Gandy*, 829 S.E.2d 787, 789 (Ga. Ct. App. 2019) (explaining aiding and abetting fraud liability as "[i]n all cases, a person who maliciously procures an injury to be done to another, whether an actionable wrong or a breach of contract, is a joint wrongdoer and

may be subject to an action either alone or jointly with the person who actually committed the injury" (citations and internal quotations omitted)); *Bass v. Regions Bank, Inc.*, No. 1:17-CV-00309-LMM, 2021 U.S. Dist. LEXIS 263067, at *22 (N.D. Ga. Jan. 11, 2021) ("Under Georgia law, the elements of a claim for aiding and abetting breach of fiduciary duty are as follows: '(1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.'" (quoting *Insight Tech., Inc. v. FreightCheck, LLC*, 633 S.E.2d 373, 379 (Ga. Ct. App. 2006)).

And Vermont specifically provides for five factors to be considered when analyzing whether a defendant substantially assisted a tort:  "The Vermont Supreme Court has identified five factors bearing on whether a defendant's conduct rises to the level of substantial assistance: (1) the nature of the wrongful act; (2) the kind and amount of the assistance; (3) the relationship between the defendant and the actor; (4) the presence or absence of the defendant at the occurrence of the wrongful act; and (5) the defendant's state of mind."  *Marshall v. Nat'l Bank of Middlebury*, No. 5:19-cv-246, 2021 U.S. Dist. LEXIS 252815, at *27-28 (D. Vt. Dec. 3, 2021) (citing *Concord Gen. Mut. Ins. Co. v. Gritman*, 146 A.3d 882, 888 (Vt. 2016)).

### f.       States with Similar Civil Aiding and Abetting Rules

It appears that five states—Kansas, Michigan, New Mexico, New York, and Washington—appear to have similar rules for civil aiding and abetting liability as California (including requiring that the defendant's conduct be a substantial or proximate cause of the plaintiff's injuries).  *See, e.g.*, *State ex rel. Mays v. Ridenhour*, 811 P.2d 1220 (Kan. 1991) (discussing requirements for aiding and abetting liability without mentioning sliding scale approach); *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 922-23 (E.D. Mich. 2019) (same); *GCM, Inc. v. Ky. Cent. Life Ins. Co.*, 947 P.2d 143, 148 (N.M. 1997) (same); *Markowits v. Friedman*, 144 A.D.3d 993, 996 (N.Y. App. Div. 2016) (same); NY PJI 3:20; *Calvert v. Zions Bancorporation (In re Consol. Meridian Funds)*, 485 B.R. 604,

COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR PARTIAL SUMMARY JUDGMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

616-17 (Bankr. W.D. Wash. 2013).  These would be the only potential jurisdictions whose laws could be tried in a single trial along with California law.

### 2. Each Jurisdiction Has a Substantial Interest in Application of its Own Law

The 48 different jurisdictions implicated by the class in this case each have a strong interest in applying their own law to the conduct alleged.  That is because "every state has an interest in having its law applied to its resident claimants."  *Zinser*, 253 F.3d at 1187.  Furthermore, principles of federalism provide that "each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders."  *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).  Consistent with these federalism concerns, California cases "continue to recognize that a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders and in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future."  *McCann*, 48 Cal. 4th at 97-98 (citation omitted).  Here, the class members invested and suffered losses in the 8 different countries, 39 different states, and the District of Columbia—where they each reside.  *See* Fortner Decl., Ex. 15.  Each of those jurisdictions has a substantial interest in having their laws applied to redress the alleged injuries of their residents.

These other jurisdictions also have valid interests in applying their own laws to conduct and harm occurring within their borders.  *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1069-74 (9th Cir. 2021).  What is more, each jurisdiction has a valid interest in determining the substantive contours of its tort laws and the relevant balancing of competing policy considerations vis-a-vis the rights to be afforded to an injured plaintiff and the extent to which businesses should be shielded from what can be considered excessive litigation.  *See McCann*, 48 Cal. 4th at 97-98 (reiterating that each state has an interest in setting the appropriate level of liability for companies); *Mazza*, 666 F.3d at 592 (same).

Accordingly, each of the foreign jurisdictions implicated in this class action plainly has a substantial interest in having its law applied.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### 3. Applying California Law Would Unduly Impair the Interests of 48 Different Jurisdictions

California has an interest in applying its laws to an alleged scheme that was headquartered in California.  However, that interest is outweighed by the interests of the 48 different jurisdictions at issue.

That is because "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest."  *See Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980).  California law recognizes that "the 'place of the wrong' occurs where the potential class members sustain their loss."  *Conde v. Sensa*, No. 14-CV-51 JLS WVG, 2018 U.S. Dist. LEXIS 154031, at *42 (S.D. Cal. Sept. 10, 2018); *see also Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 617 (S.D. Cal. 2015) (same); *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957) (same); *McCann*, 48 Cal. 4th at 93-94 & n.12 (same).  Thus, with respect to the non-California class members, the respective states in which they reside—i.e., the "place of the wrong" and where those class members suffered their injuries—has the predominant interest in this case.  On the other hand, California's interest in applying its law to the residents of other jurisdictions is not as substantial.  *See Mazza*, 666 F.3d at 594 ("California's interest in applying its law to residents of foreign states is attenuated"); *Edgar v. Mite Corp.*, 457 U.S. 624, 644 (1982) ("While protecting local investors is plainly a legitimate state objective, the State has no legitimate interest in protecting nonresident shareholders.").  Applying California law on a class-wide basis would unduly impair the interests of the non-California states.

For these reasons, the Court should find that California's choice-of-law rules require that each class member's claims be governed by the aiding and abetting laws of the jurisdiction in which any loss was suffered.  But because that would require the Court to provide the jury with myriad different sets of instructions on aiding and abetting law, a trial including these class members is plainly unworkable.  Therefore, the Court should either decertify the class or narrow the class definition to exclude non-California residents.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**B.**     **Class Members are Estopped From Claiming Entitlement to Prejudgment Interest Based Upon the Bankruptcy Court's Adoption of the "Netting" Approach to Claims**

Because the *Camenisch* class members' aiding and abetting claims seek to hold Umpqua secondarily liable for PFI's misconduct, Umpqua's liability in this action is necessarily capped at the amount of PFI's liability.[7] *See Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005) (aiding and abetting is a form a derivative liability).  That is because "a party secondarily liable is entitled to the benefits of a prior judgment or ruling in favor of the primary tortfeasor."  *Ponce v. Tractor Supply Co.*, 29 Cal. App. 3d 500, 505 (1972).  In other words, "the damages determined against the primary tortfeasor in the [] judgment would be applicable as an upper limit to the one secondarily liable."  *Id.*

As explained below, the problem for the *Camenisch* class members is that their decision to disregard entitlement to prejudgment interest in favor of the "netting rule" approach to calculating allowed and disallowed claims both collaterally and judicially estops them from attempting to now recover prejudgment interest from Umpqua.  That is because, having asked the bankruptcy court to adopt the "netting rule" approach (which disregards interest and considers only the principal invested) to enable class members to claw back millions of dollars of interest from so-called "net winners," class members cannot now reverse course and claim entitlement to the same interest they previously asked the bankruptcy court to disregard.

**1.**     **Class Members are Collaterally Estopped from Seeking Prejudgment Interest**

For collateral estoppel to apply, three essential conditions must be met: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding."  *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

_____

[7] In exercising diversity jurisdiction, this Court applies state substantive law.  *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938).  As discussed in Part IV.A *supra*, Umpqua contends that the law of class members' jurisdiction of residence governs their claims against Umpqua.  However, as the claims pled are pled under California law, California law is cited here for ease of reference.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Ninth Circuit case law is clear that "the allowance or disallowance of 'a claim in bankruptcy is

2   binding and conclusive on all parties or their privies, and being in the nature of a final judgment,

3   furnishes a basis for a plea of res judicata.'"  *See Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d

4   525, 529 (9th Cir. 1998) ("the allowance or disallowance of 'a claim in bankruptcy is binding and

5   conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis

6   for a plea of res judicata'") (citation omitted); *see also Poonja v. Alleghany Props. (In re Los Gatos*

7   *Lodge, Inc.)*, 278 F.3d 890, 894 (9th Cir. 2002) ("the bankruptcy court's allowance or disallowance

8   of a proof of claim is a final judgment").

9   Here, the evidence shows that in PFI's bankruptcy case, *Camenisch* class members (as "net

10  losers" who had failed to recover the principal amounts of their investments) advocated for the

11  "netting rule" approach to determining the amount of allowed claims to benefit themselves to the

12  detriment of other investors (who were "net winners" and had been paid out more than the principal

13  amount of their investments).  More specifically, it shows that in a joint motion filed with the PFI

14  Trust,[8] the Official Committee of Unsecured Creditors (the "Committee") advocated for the

15  bankruptcy court to adopt the "netting rule" approach to allowed claims and a settlement procedure

16  to pursue "clawback claims" against "net winners."[9]  Mtn. Approve Settlement Proc. at 9-11.

17  For context, under Ninth Circuit case law, in the context of a Ponzi scheme, the "netting rule"

18  refers to the concept "that to the extent innocent investors have received payments in excess of the

---

19  [8] The motion was technically filed by PFI, but only because the PFI Trust had not yet been formed.

20  To that end, the motion expressly states that "reference herein to the Debtors shall include the PFI Trust, which will be the Debtor's successor for purposes of bringing claims, including avoidance actions, held by the Debtors."  Mtn. Approve Settlement Proc. at 2, n.3.

21

22  [9] The PFI Trust and Committee are parties "in privity" with class members for purposes of collateral estoppel.  *See DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 826 (2015) ("[P]rivity requires the

23  sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound'

24  by the first suit").  The motion was brought by PFI (as the predecessor to the PFI Trust) and the Committee, both of which shared a community of interest with class members (as creditors in the

25  bankruptcy proceeding) and represented their interests throughout that proceeding.  "When seeking to avoid a preferential transfer [] the trustee is not asserting a cause of action belonging to the debtor

26  but asserting an action in a representative capacity for general unsecured creditors."  *In re Best Pack Seafoods, Inc.*, 29 B.R. 23, 24 (Bankr. D. Me. 1983).  Similarly, the Committee, in bringing the

27  motion, was representing the interests of the creditors, i.e. class members.  *See In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 700 (Bankr. C.D. Cal. 2008) ("The Creditors Committee was appointed

28  by the UST to represent the interests of … unsecured creditors.").

---

COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR
PARTIAL SUMMARY JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers[.]" *Donell*, 533 F.3d at 770.  The policy rationale is that "[t]he 'winners' in the Ponzi scheme, even if innocent of any fraud themselves, should not be permitted to 'enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky.'" *Id.* (citation omitted). Thus, in the joint motion, the PFI Trust and Committee asked the bankruptcy court to consider only the principal amount of investors' investments and treat interest due on the same as "fictitious profits" that "do not represent a return on legitimate investment activity'" and should be "subject to avoidance and recovery."  *See* Mtn. Approve Settlement Proc. at 2, 10-11.  As explained by the PFI Trust and Committee, such treatment substantially benefitted class members (who, by definition, are "net losers"), because there were approximately 566 investors that were "Net Winners" with an aggregate "Net Winnings" of $41.2 million that would be subject to avoidance under this approach.  *Id.* at 2.

Ultimately, the bankruptcy court granted the joint motion and approved the requested claims procedure.  As a result, the only allowed claims in PFI's bankruptcy are "Investor Restitution" claims, which were limited to the "total Outstanding Principal Amount minus the Prepetition Distribution."[10] Curtis Decl., Ex. 10 at p. 10, § 1.84 ("PFI's Bankruptcy Plan").  In other words, interest was not allowed under the bankruptcy plan, and class members agreed that, as to PFI, they would recover the *principal* amount on their investment.  *See id.*  These judicial rulings stating that interest should be disregarded preclude the *Camenisch* class from now recovering interest from Umpqua because such interest is inconsistent with the claims procedure adopted in the bankruptcy case and the amount of their allowed claims.  *See Siegel*, 143 F.3d at 529; *Poonja*, 278 F.3d at 894.

### 2.    Class Members are Also Judicially Estopped From Seeking Prejudgment Interest

In addition to being collaterally estopped from claiming entitlement to prejudgment interest, class members are judicially estopped from seeking prejudgment interest.

---

[10]  PFI's bankruptcy plan also provided for the allowance of subordinated claims that would take into consideration interest, but only in the event the assets of the PFI Trust were sufficient to pay off Investor Restitution claims.  *See* PFI's Bankruptcy Plan, § 1.85.  That did not happen and the hypothetical subordinated claims were never calculated or allowed.  *See* Curtis Decl., Ex. 16 at PABAGATELOS_004157.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

"The doctrine of judicial estoppel precludes a party from taking inconsistent positions in separate judicial proceedings." *Swahn Grp., Inc. v. Segal*, 183 Cal. App. 4th 831, 841 (2010).  The doctrine's laudable goal is to protect the integrity of the judicial process. *Jackson v. County of L.A.*, 60 Cal. App. 4th 171, 181 (1997) (judicial estoppel "'is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process') (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).  That is because it is "patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite." *Id.*

In determining whether judicial estoppel applies, courts look to three factors: (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).  All three factors are met here.

First, class members' claim for prejudgment interest is clearly inconsistent with the position that they, as creditors, took in the bankruptcy proceeding.  As discussed above, the "netting" calculation set forth in the settlement procedure adopted by the bankruptcy court did not account or credit the "net winners" with prejudgment interest on their investments. *See* Mtn. Approve Settlement Proc. at 2, 10-11.  To the contrary, in the bankruptcy case, class members took the position that any and all gains in excess of the principal amount of investments (which would necessarily include any accrued interest) were "*fictitious profits*" subject to avoidance. *See id.; see also* Exemplar Netting Compl. Class members now want to take to exact opposite position.  By seeking prejudgment interest, class members are taking the position that they should receive not only the principal amount of their investment, but prejudgment interest on top of that to compensate them for the time value of their money.  "Net Winners"—who again, like class members were also investors in PFI—were previously told such time value of money had to be disregarded when their claims were disallowed.

Second, class members were successful in persuading the bankruptcy court to accept its position that "netting" or avoidance claims were not subject to prejudgment interest.  For one, the bankruptcy court approved the creditors' and PFI's settlement procedures, thereby adopting their definition of "Net Winning Claim"—which as discussed, ignores entitlement to interest.  *See* Curtis Decl., ¶ 8.  What is more, the fact that the PFI Trust pursued and settled many of these types of claims, Curtis Decl., ¶ 9; Goldberg Dep. at 86:16-87:25, independently satisfies the success element, *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133-34 (9th Cir. 2012) (settlement is a basis for judicial estoppel to apply).

Finally, class members would derive an unfair advantage if allowed to claim prejudgment interest in this action.  In the bankruptcy proceeding, class members advocated for a settlement procedure that ignored entitlement to prejudgment interest to allow them to recoup money from their co-investors who were deemed "net winners."  Mtn. Approve Settlement Proc. at 2.  By adopting that settlement procedure, class members were able to pursue avoidance actions and recoup funds they would not otherwise have been entitled to recover.  *See generally* Mtn. Approve Settlement Proc.; Exemplar Netting Compl.  Further examination of the adversary complaints that PFI brought against these "net winners" underscore the manifest inconsistency in class members' position and the unfair advantage that would result.  In those cases, the PFI Trust (on behalf of class members) took the position that it was "entitled to re-capture the entirety of transfers made in excess of any principal investments. . . because profits gained through theft from later investors are not a reasonably equivalent exchange for the [net winner's] initial investment."  *See* Exemplar Netting Compl., ¶ 35.  By taking this position and pursuing avoidance actions on that basis, class members obtained a significant monetary benefit from the increased number of "net winners" and pool of recouped funds.  *See* Goldberg Dep. at 86:16-87:25.

Class members cannot now claim that they are entitled to the same prejudgment interest that they asserted "net winners" were not entitled to keep.  That is an unfair advantage, plain and simple, and precisely the type of double speak that the doctrine of judicial estoppel is entitled to prevent.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

### 3.     Alternatively, Prejudgment Interest Must be Limited by the Date the Bankruptcy Petition Was Filed

Pursuant to Section 6.5 of PFI's Bankruptcy Plan, class members also agreed that "post-petition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date."  PFI's Bankruptcy Plan, § 6.5.  Because this plan provision is "final judgment" for purposes of claim preclusion, *Siegel*, 143 F.3d at 529; *Poonja*, 278 F.3d at 894, in all circumstances class members are clearly collaterally estopped from seeking prejudgment interest that accrued after the initiation of the bankruptcy proceeding on July 26, 2020.

### C.     The Court Should Enter Partial Summary Judgment as to Damages Arising From Pre-2007 Investments

It is self-evident that Umpqua cannot be held liable for aiding and abetting any alleged fraud perpetrated by PFI until the date on which that fraud began.  *See In re Mortg. Elec. Registration Sys.*, 754 F.3d 772, 786 (9th Cir. 2014) ("Aiding-and-abetting liability depends on the existence of an underlying tort.").  But there is no evidence of PFI's business operations before 2007.  Because there is no evidence of PFI's operations prior to 2007, there is no way for class members to prove that PFI was a Ponzi scheme prior to that date (much less one that Umpqua aided and abetted).  It therefore follows that Umpqua's liability cannot extend as to any pre-2007 investments.

### 1.     There is No Evidence Regarding PFI's Pre-2007 Operations or the Nature of Pre-2007 Investments

As Umpqua has previously explained, the only evidence class members rely on to prove their damages is the analysis of PFI's operations that FTI performed as part of PFI's bankruptcy proceedings.  *See* Dkt. 168.  But it is undisputed that FTI analyzed PFI's operations beginning in 2007 because FTI did not have sufficient information regarding PFI's operations before that date.  *See* Dkt. 80-4 ¶ 86 n.156 (explaining that FTI was "unable to accumulate sufficient evidence to determine whether Mr. Casey and Mr. Wallach operated a Ponzi scheme prior to 2007").

This is significant because the class's expert at certification, Dan Salah, agreed that if investments were made prior to the fraud (or before the date on which Umpqua became liable for the same) they should not be included in any damages calculations.  Curtis Decl., Ex. 11 at 145:18-147:4 ("Salah Dep.").  Mr. Salah also explained that he relied on FTI's database when preparing his expert

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

report and used the database when performing his calculations. *Id.* at 76:6-15. This is reflected in the schedules attached to Mr. Salah's report. *See* Dkt. 81 (Schedules 2-5 filed under seal). But, as Mr. Salah explained in his deposition, there is no pre-2007 data in PFI's database—the balances included in the 2007 column reflected "[t]he amount owed to investors as of January 1, 2007." Salah Dep. at 145:5-9. Thus, Mr. Salah confirmed that there is no available information regarding those pre-2007 investments, including when they were made or what they represent. *Id.* at 142:10-18.

What is more, although FTI's analysis included a review of over 700,000 documents, which FTI used to create the database on which Mr. Salah relied, this Court excluded from evidence those 700,000 documents because they were not timely produced by the *Camenisch* Plaintiffs. *See* Dkt. 179 (order granting Umpqua's motion to exclude). Thus, the only available evidence regarding these pre-2007 investments is FTI's database, which, as explained, simply lumps all these investments together under a "beginning balance" field.[11] *Id.* Because there is no evidence of PFI's operations before 2007, and because Mr. Salah has agreed any pre-liability period must be excluded, Umpqua requests partial summary judgment barring class members from recovering damages for any pre-2007 investments.

### 2. Wallach's Testimony Likewise Establishes that Umpqua Cannot be Liable for Pre-2007 Investments

PFI did not start as a fraud. Rather, it began as a legitimate business that, for decades, managed a substantial portfolio of commercial real estate. *See* Dkt. 144 at 1 ("There is no dispute that PISF and PFI started out as legitimate, profitable, businesses that focused on acquitting and operating commercial real estate in Marina and Sonoma Counties"). As Wallach testified, it was not until the mid-2000s that PFI started losing money. Wallach Dep. at 58:18-20. Even then, PFI had "real equity" it was borrowing against. *Id.* at 58:22-25. During this time, according to Wallach, PFI was not a fraudulent enterprise. *Id.* at 149:10-14.

Importantly, at his deposition, Wallach admitted to the wrongdoing that class members here claim was a Ponzi scheme only from 2015 forward. Specifically, Wallach testified that he and Casey

---

[11] Umpqua continues to dispute the admissibility of FTI's database. However, the issue of admissibility is irrelevant for purposes of this motion because the database contains no information regarding the origin of pre-2007 investments.

COMBINED MOTION TO DETERMINE APPLICABLE LAW AND PARTIALLY DECERTIFY CLASS AND FOR PARTIAL SUMMARY JUDGMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  "ma[de] false statements and material omission to investors," "conspired . . . to mislead all investors

2  about their PFI investments," and "conspired . . . to mislead all investors about PFIs financial

3  condition," "[b]etween *2015* to the time that Mr. Casey died."  *Id.* at 60:22-61:10.  This is in line with

4  Wallach's Plea Agreement, in which he stated only that "[f]rom at least *2015* until May 2020, in order

5  to solicit investments from existing and potential investors, Casey and I made false statements and

6  omitted information regarding the financial situation of PFI, the use of investor funds, and the safety

7  and security of the investments."  Curtis Decl., Ex. 12 at 3:25-28 ("Wallach Plea Agreement"); *see*

8  *also id.* at 4:9-17 (admitting only to fraudulent wrongdoing "[f]rom 2015" to 2020).

9       While class members disagree with Wallach on this point and claim the alleged fraud started

10  earlier, the fact that Wallach testified that he believes PFI was not operating fraudulently until, at the

11  earliest 2012-2015, further underscores how and why any pre-2007 investments are clearly out-of-

12  bounds.

13                                   **V.   CONCLUSION**

14       For the reasons discussed above, Umpqua respectfully requests that the Court: (i) determine

15  that the law of class members' state or country of residence governs their aiding and abetting claims

16  and that the claims of non-California class members be decertified; (ii) grant partial summary

17  judgment on class members request for an award of pre-judgment interest; and (iii) grant partial

18  summary judgment on class members' claim for damages on pre-2007 investments.

19

20

21       DATED:  April 23, 2024

22                                   REED SMITH LLP

23                                   By: */s/ Kasey J. Curtis*

24                                       Kasey J. Curtis
                                         Keith Ketterling (*pro hac vice*)
25                                       Lydia Anderson-Dana (*pro hac vice*)
                                         Erin Roycroft (*pro hac vice*)
26                                       Madeleine Holmes (*pro hac vice*)
                                         Attorneys for Defendant
27                                       UMPQUA BANK

28