1  Keith Ketterling (*pro hac vice*)
   Lydia Anderson-Dana (*pro hac vice*)
2  Madeleine Holmes (*pro hac vice*)
   Erin E. Roycroft (*pro hac vice*)
3  **STOLL BERNE**
   209 SW Oak Street, Suite 500
4  Portland, OR 97204
   Telephone: (503) 227-1600
5  Facsimile: (503) 227-6840
   kketterling@stollberne.com
6  landersondana@stollberne.com
   mholmes@stollberne.com
7  eroycroft@stollberne.com

8  Kasey J. Curtis (SBN 268173)
   Charles P. Hyun (SBN 307817)
9  Kathryn M. Bayes (SBN 334864)
   **REED SMITH LLP**
10 355 South Grand Avenue
   Suite 2900
11 Los Angeles, CA  90071-1514
   Telephone: +1 213 457 8000
12 Facsimile: +1 213 457 8080
   kcurtis@reedsmith.com
13 chyun@reedsmith.com
   kbayes@reedsmith.com
14
   *Attorneys for Defendant Umpqua Bank*
15
16              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17

18 Shela Camenisch, et al.,                Case No. 3:20-cv-5905-RS

19              Plaintiffs,                 **DEFENDANT UMPQUA BANK'S**
                                            **OMNIBUS *MOTIONS IN LIMINE***
20 v.

21 Umpqua Bank,

22              Defendant.

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTIONS *IN LIMINE* ........................................................ 1

MOTION *IN LIMINE* NO. 1 TO EXCLUDE ANY REFERENCES TO THE
BANKRUPTCY COURT STIPULATIONS, ORDERS, AND FILINGS
REGARDING WHETHER PFI WAS A PONZI SCHEME ..................................... 3

   I.      INTRODUCTION ................................................................ 4

   II.     ARGUMENT .................................................................... 4

        A.     Relevant Background ................................................. 4

        B.     Bankruptcy Court Stipulations, Orders, and Filings
Containing Any Determinations or Allegations That PFI
Was a Ponzi Scheme Are Hearsay, Not Subject to Any
Exception. ............................................................. 5

        C.     Allowing Plaintiffs to Present Evidence of Bankruptcy
Court Stipulations, Orders, and Filings Containing Any
Determinations or Allegations That PFI Was a Ponzi
Scheme Would Be Unfairly Prejudicial, Will Confuse the
Issues, and Will Mislead the Jury. ................................. 6

   III.    CONCLUSION ................................................................ 7

UMPQUA BANK'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE THE
ALFARO DECLARATION ......................................................................... 8

   I.      INTRODUCTION ................................................................ 9

   II.     ARGUMENT .................................................................... 9

        A.     The Alfaro Declaration is Hearsay, Not Subject to Any
Exception, and Should Be Excluded. ............................... 9

   III.    CONCLUSION ................................................................ 11

UMPQUA BANK'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE DAVID
ALFARO FROM OFFERING ANY EXPERT OPINION TESTIMONY ..................... 12

   I.      INTRODUCTION ................................................................ 13

   II.     ARGUMENT .................................................................... 13

        A.     Mr. Alfaro Should Not Be Allowed to Offer Any Expert
Opinion Testimony ................................................... 13

III.     CONCLUSION ................................................................................. 15

UMPQUA BANK'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE ANY
EVIDENCE, ARGUMENT, OR COMMENT ON DOCUMENTS WITHHELD
PURSUANT TO SAR PRIVILEGE ................................................................. 16

    I.     INTRODUCTION ........................................................................ 17

    II.    ARGUMENT ............................................................................... 17

        A.     The SAR Privilege Prohibits Banks from Disclosing
             Privileged Material.................................................................... 17

        B.     Judge Tse Ordered Umpqua to Withhold "Evaluative
             Material". ................................................................................. 18

        C.     Despite Judge Tse's Privilege Ruling, Plaintiffs Intend to
             Introduce Theories, Evidence, and Argument Related to
             SAR-Privileged Information..................................................... 18

        D.     Umpqua's Due Process Rights Would Be Violated If
             Plaintiffs Are Allowed to Present Theories, Evidence, and
             Argument Related to Privileged Information. ........................ 20

    III.    CONCLUSION ........................................................................... 20

UMPQUA BANK'S MOTION *IN LIMINE* NO. 5 TO PRECLUDE EVIDENCE
OR ARGUMENT RE TRANSFERS TO PERSONAL ACCOUNTS ..................... 21

    I.     INTRODUCTION ........................................................................ 22

    II.    ARGUMENT ............................................................................... 22

        A.     California Financial Code Section 1451. ................................ 22

        B.     Evidence or Argument About the Suspicious Nature of
             Transfers Between PFI's Accounts and Casey's and
             Wallach's Personal Accounts Would Violate Section 1451.................. 24

    III.    CONCLUSION ........................................................................... 25

UMPQUA BANK'S MOTION *IN LIMINE* NO. 6 TO PRECLUDE EVIDENCE
OR ARGUMENT RE ALLEGEDLY SUSPICIOUS ACCOUNT
TRANSACTIONS TO ESTABLISH UMPQUA'S KNOWLEDGE......................... 26

    I.     INTRODUCTION ........................................................................ 27

    II.    ARGUMENT ............................................................................... 27

A.   Under California Law, A Depository Bank's "Aiding and Abetting" Liability Is "Narrowly Circumscribed" by the California Financial Code Principles Codifying How Banks Have No Duty to Police Customer Activity ........................................... 27

B.   Allegedly Suspicious Transactions Cannot Be Utilized To Establish Umpqua's Alleged "Actual Knowledge" of PFI's "Ponzi Scheme" ................................................................................. 29

C.   Because It Is Not a Basis to Impose "Aiding And Abetting" Liability, All This Evidence Is Irrelevant and Unfairly Prejudicial ............................................................................... 30

III.   CONCLUSION ............................................................................... 30

UMPQUA BANK'S MOTION *IN LIMINE* NO. 7 TO EXCLUDE ANY EVIDENCE, ARGUMENT, OR COMMENT ON OTHER DISPUTES AND LITIGATION INVOLVING UMPQUA BANK AND RELATED ENTITIES ...................... 31

I.   INTRODUCTION ........................................................................... 32

II.   ARGUMENT ................................................................................... 32

III.   CONCLUSION ............................................................................... 34

UMPQUA BANK'S MOTION *IN LIMINE* NO. 8 TO PROHIBIT LAY WITNESSES FROM TESTIFYING ABOUT UMPQUA'S OR PFI'S ACTIONS IN THIS MATTER UNLESS THEY HAVE THE REQUISITE PERSONAL KNOWLEDGE ........................................................................................ 35

I.   INTRODUCTION ........................................................................... 36

II.   ARGUMENT ................................................................................... 36

III.   CONCLUSION ............................................................................... 38

UMPQUA BANK'S MOTION *IN LIMINE* NO. 9 TO PRECLUDE LAY WITNESS TESTIMONY REGARDING STANDARD OF CARE ........................... 39

I.   INTRODUCTION ........................................................................... 40

II.   ARGUMENT ................................................................................... 40

III.   CONCLUSION ............................................................................... 41

UMPQUA BANK'S MOTION *IN LIMINE* NO. 10 TO EXCLUDE ANY EVIDENCE, ARGUMENT, OR COMMENT ON ANY SEC OR CRIMINAL COMPLAINTS OR ALLEGATIONS MADE IN THE SAME ................................. 42

I.      INTRODUCTION ........................................................... 43

II.     ARGUMENT ................................................................. 43

        A.      The SEC and Criminal Complaints Related to PFI Are
                Hearsay, Not Subject to Any Exception. ................................. 43

        B.      Admitting the SEC and Criminal Complaints Related to
                PFI Would Be Unfairly Prejudicial to Umpqua........................ 44

III.    CONCLUSION.............................................................. 45

UMPQUA BANK'S MOTION *IN LIMINE* NO. 11 TO EXCLUDE ANY
EVIDENCE, ARGUMENT, OR COMMENT ON ANY CONSENT DECREES,
JUDGMENTS, OR PLEAS IN WHICH GUILT IS NOT ADMITTED.................................. 46

I.      INTRODUCTION ........................................................... 47

II.     ARGUMENT ................................................................. 47

        A.      Consent Decrees, Judgments, and Pleas in Which Guilt is
                Not Admitted Are Hearsay, Not Subject to Any Exception. ................. 47

        B.      Consent Decrees Are Inadmissible Under Rule 408.............................. 48

        C.      Admitting Into Evidence Consent Decrees, Judgments, and
                Pleas in Which Guilt is Not Admitted Would Be Unfairly
                Prejudicial to Umpqua. ............................................... 48

III.    CONCLUSION.............................................................. 49

MOTION *IN LIMINE* NO. 12 TO EXCLUDE ANY EVIDENCE, ARGUMENT,
OR COMMENT ON UNPLED THEORIES........................................................ 50

I.      INTRODUCTION ........................................................... 51

II.     ARGUMENT ................................................................. 51

III.    CONCLUSION.............................................................. 53

UMPQUA BANK'S MOTION *IN LIMINE* NO. 13 TO EXCLUDE EVIDENCE
OF PLAINTIFFS' FINANCIAL HARDSHIPS ................................................ 54

I.      INTRODUCTION ........................................................... 55

II.     ARGUMENT ................................................................. 55

III.    CONCLUSION.............................................................. 57

UMPQUA BANK'S MOTION *IN LIMINE* NO. 14 TO EXCLUDE EVIDENCE OF UMPQUA'S FINANCIAL CONDITION ........................................................... 58

    I.     INTRODUCTION ........................................................ 59

    II.    ARGUMENT ............................................................... 59

    III.   CONCLUSION ............................................................ 61

UMPQUA BANK'S MOTION *IN LIMINE* NO. 15 TO EXCLUDE THE FTI ACCESS DATABASE ............................................................................................. 62

    I.     INTRODUCTION ........................................................ 63

    II.    ARGUMENT ............................................................... 63

           A.     The FTI Access Database Does Not Qualify Under the Business Records Exception. .......................................... 63

           B.     The FTI Access Database Is Not a Rule 1006 Summary of Business Records ....................................................... 65

    III.   CONCLUSION ............................................................ 65

UMPQUA BANK'S MOTION *IN LIMINE* NO. 16 TO PRECLUDE MICHELLE HERMAN FROM TESTIFYING AS AN EXPERT OR LAY WITNESS ............................. 66

    I.     INTRODUCTION ........................................................ 67

    II.    BACKGROUND ......................................................... 67

    III.   ARGUMENT ............................................................... 68

           A.     Herman Should Be Precluded from Testifying as An Expert ................ 68

           B.     Herman Should Be Precluded from Testifying as A Fact Witness ....................................................................... 69

    IV.   CONCLUSION ............................................................ 69

UMPQUA BANK'S MOTION *IN LIMINE* NO. 17 TO PRECLUDE PLAINTIFFS FROM ELICITING TESTIMONY OR PRESENTING ARGUMENT THAT PFI OR ITS ENTITIES "COMMINGLED" FUNDS ............................. 70

    I.     INTRODUCTION ........................................................ 71

    II.    ARGUMENT ............................................................... 71

A.     Expert Testimony Is Necessary to Establish the Existence
of a Professional Duty to Segregate Funds and Any Breach
of Such a Duty ........................................................................... 71

B.     Because Plaintiffs Have No Admissible Expert Testimony
to Establish Any Duty or Standard of Care Owed by PFI To
Segregate Funds, Evidence or Argument Regarding
"Commingling" Is Irrelevant and Unfairly Prejudicial.......................... 73

III.     CONCLUSION ................................................................................. 74

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## NOTICE OF MOTIONS *IN LIMINE*

**TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at the final pretrial conference, at a date yet to be set, in Courtroom 3 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Umpqua Bank ("Umpqua") respectfully moves this Court for the following orders *in limine*:

| Number | Umpqua's Motions *in Limine* |
|---|---|
| 1 | Motion *In Limine* No. 1 to Exclude Any References to the Bankruptcy Court Stipulations, Orders, and Filings Regarding Whether PFI Was a Ponzi Scheme |
| 2 | Motion *In Limine* No. 2 to Exclude the Alfaro Declaration |
| 3 | Motion *In Limine* No. 3 to Preclude David Alfaro from Offering Any Expert Opinion Testimony |
| 4 | Motion *In Limine* No. 4 to Exclude Any Evidence, Argument, or Comment on Documents Withheld Pursuant to SAR Privilege |
| 5 | Motion *In Limine* No. 5 to Preclude Evidence or Argument Re Transfers to Personal Accounts |
| 6 | Motion *In Limine* No. 6 to Preclude Evidence or Argument Re Allegedly Suspicious Account Transactions to Establish Umpqua's Knowledge |
| 7 | Motion *In Limine* No. 7 to Exclude Any Evidence, Argument, or Comment on Other Disputes and Litigation Involving Umpqua Bank and Related Entities |
| 8 | Motion *In Limine* No. 8 to Prohibit Lay Witnesses from Testifying About Umpqua's or PFI's Actions in This Matter Unless They Have the Requisite Personal Knowledge |
| 9 | Motion *In Limine* No. 9 to Preclude Lay Witness Testimony Regarding Standard of Care |
| 10 | Motion *In Limine* No. 10 to Exclude Any Evidence, Argument, or Comment on Any SEC or Criminal Complaints or Allegations Made in the Same |
| 11 | Motion *In Limine* No. 11 to Exclude Any Evidence, Argument, or Comment on Any Consent Decrees, Judgments, or Pleas in Which Guilt Is Not Admitted |
| 12 | Motion *In Limine* No. 12 to Exclude Any Evidence, Argument, or Comment on Unpled Theories |

| 13 | Motion *In Limine* No. 13 to Exclude Evidence of Plaintiffs' Financial Hardships |
|----|---|
| 14 | Motion *In Limine* No. 14 to Exclude Evidence of Umpqua's Financial Condition |
| 15 | Motion *In Limine* No. 15 to Exclude the FTI Access Database |
| 16 | Motion *In Limine* No. 16 to Preclude Michelle Herman from Testifying as an Expert or Lay Witness |
| 17 | Motion *In Limine* No. 17 to Preclude Plaintiffs from Eliciting Testimony or Presenting Argument That PFI or Its Entities "Commingled" Funds |

These Motions are based upon this notice, the Declaration of Madeleine Holmes ("Holmes Decl."), the accompanying Memoranda of Points and Authorities, and all other evidence and argument considered by the Court at or before the hearing on this motion.

DATED this 19th day of July, 2024.


STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.


By: *s/ Lydia Anderson-Dana*
    **Keith Ketterling**, *Pro Hac Vice*
    **Lydia Anderson-Dana**, *Pro Hac Vice*
    **Madeleine Holmes**, *Pro Hac Vice*
    **Erin Roycroft**, *Pro Hac Vice*

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MOTION *IN LIMINE* NO. 1 TO EXCLUDE ANY REFERENCES TO THE BANKRUPTCY COURT STIPULATIONS, ORDERS, AND FILINGS REGARDING WHETHER PFI WAS A PONZI SCHEME**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

# I.   INTRODUCTION

Plaintiffs claim that that Defendant Umpqua Bank ("Umpqua") aided and abetted third parties Professional Financial Investors, Inc., Professional Investors Security Fund, Inc., and/or Kenneth Casey (collectively, "PFI") in conducting a Ponzi scheme and breaching certain fiduciary duties owed to Plaintiffs, after PFI's debt service issues were uncovered and PFI filed for bankruptcy in 2020. Throughout this litigation, Plaintiffs have referred to the bankruptcy court's determination that all of PFI's investment offerings were part of "an overarching Ponzi scheme that began no later than January 1, 2007." *See*, *e.g.*, Plaintiffs' Opposition to Umpqua's Combined Motion, Dkt. 224 at 16; Declaration of Madeleine Holmes ("Holmes Decl."), Ex. 1 (Expert Report of Michael I. Goldberg ("Goldberg Report")), ¶ 48.  Pursuant to Federal Rules of Evidence 401, 402, 403, and 802, Umpqua moves the Court for an order excluding any evidence at trial regarding any bankruptcy court stipulations, orders, and filings containing any determinations or allegations that PFI was a Ponzi scheme.

# II.   ARGUMENT

## A.   Relevant Background

Umpqua moves to exclude any allegation or determination that PFI was a Ponzi scheme in any bankruptcy court stipulation, order, or filing.  This Motion is primarily aimed at three documents found in the bankruptcy court main docket, *see* Motion to Approve Stipulation, Stipulation, and Order Granting Motion, Holmes Decl., Exs. 2, 3, and two documents from Adversary Proceeding No. 21-3018, *see* Adversary Proceeding Complaint and Stipulated Judgment, Holmes Decl., Exs. 4, 5.

On April 13, 2021, the Official Committee of Unsecured Creditors of PFI filed a complaint in an adversary proceeding against PFI, seeking "[a] declaration that the Defendants' businesses were all part of an overarching Ponzi scheme that began no later than January 1, 2007." Adversary Proceeding Complaint.  PFI then filed a Motion seeking a stipulated judgment including a formal judicial finding "that the Defendants' businesses were all part of an overarching Ponzi scheme that began no later than January 1, 2007."  Motion to Approve Stipulation, Ex A.  As part of their Stipulation, the parties agreed on the following:

> J. The Defendants agree with the Plaintiffs that a formal judicial finding that at least since January 1, 2007, the Defendants' businesses were operated as a Ponzi scheme

will be integral to future "netting" and claims allowance in the Debtors' bankruptcy cases.

K. The Defendants also agree with the Plaintiffs that a formal judicial finding that prior to June 13, 2020, and at least since January 1, 2007, the Defendants' businesses were operated as a Ponzi scheme will be the basis of future actions to avoid and recover against persons who received more proceeds from Mr. Casey's Ponzi scheme than they invested.

Stipulation at 3. On May 17, 2021, the Bankruptcy Court issued an order granting the motion to approve the stipulation and issued the stipulated judgment sought by the parties in Adversary Proceeding No. 21-3018.  Order Granting Motion at 2; *see* Stipulated Judgment. The judgment stated: "Judgment is hereby entered in favor of the Plaintiffs and against the Defendants, determining that the Defendants' businesses were all part of an overarching Ponzi scheme that began no later than January 1, 2007."  Stipulated Judgment at 5.

**B.      Bankruptcy Court Stipulations, Orders, and Filings Containing Any Determinations or Allegations That PFI Was a Ponzi Scheme Are Hearsay, Not Subject to Any Exception.**

Any document on the bankruptcy court docket that contains allegations or determinations that PFI operated a Ponzi scheme, if offered to prove the truth of the matter asserted, is hearsay and must be excluded from evidence. *See United States v. Morales*, 720 F.3d 1194, 1201 (9th Cir. 2013) ("Hearsay is a statement that a declarant 'does not make while testifying at the current trial or hearing' and is 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" (quoting Fed. R. Evid. 801(c)); Fed. R. Evid. 802 (hearsay statements are inadmissible unless a rule or statute holds otherwise.)

The Adversary Proceeding Complaint, Motion to Approve Stipulation, and Stipulation, all of which contain allegations, are hearsay.  *See Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633 JLS (CAB), 2010 WL 11508761, at *33 (S.D. Cal. Jan. 27, 2010) ("The allegations and judgment in prior civil cases and regulatory proceedings in general are out of court statements and therefore are inadmissible hearsay to the extent they are offered for the truth of the matter asserted.").  The Order Granting Motion and Stipulated Judgment are also hearsay.  *See United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) ("A court judgment is hearsay 'to the extent that it is offered to prove the truth

of the matters asserted in the judgment.'" (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004)).

And no exceptions to the hearsay rule apply.  Although Plaintiffs may argue that the public records exception under Federal Rule of Evidence 803(8) applies, it does not.  *See* Fed. R. Evid. 803(8) (a "record or statement of a public office" is admissible in a civil case if it sets out "factual findings from a legally authorized investigation" and the opponent does not show a lack of trustworthiness); *see Cardinal v. Buchnoff*, 2010 WL 3339509, at *2 (S.D. Cal. Aug. 23, 2010) ("Applying the same analysis as the Fourth, Tenth, and Eleventh Circuits, district courts within this Circuit also find that the public records exception does not apply to judicial findings of fact.") (collecting cases)); *In re Tesla, Inc. Sec. Litig.*, 2022 WL 17582008, at *19 (N.D. Cal. Dec. 7, 2022) (excluding SEC complaints as hearsay and concluding the public records exception did not apply).

The statement against interest exception under Federal Rule of Evidence 804(b)(3) also does not apply. *See* Fed. R. Evid. 803(b)(3) (a statement against interest is admissible if the declarant is unavailable as a witness and when made, the statement "was so contrary to the declarant's proprietary or pecuniary interest. . . .").  But PFI is not "unavailable," because Mr. Goldberg, the director of PFI during its bankruptcy, and trustee of the PFI Trust, has already testified in a fact deposition in this matter and has indicated he will testify as a fact witness at trial.  *See* Goldberg Report, ¶ 3.  And any statement that PFI operated a Ponzi scheme was *not* contrary to PFI's "proprietary or pecuniary interest" when made because it was in PFI's interest to pursue a formal judicial finding that PFI had operated a Ponzi scheme in order to administer the bankruptcy estate and recover funds from net winners.  *See* Fed. R. Evid. 803(b)(3); Stipulation at 3.

**C.      Allowing Plaintiffs to Present Evidence of Bankruptcy Court Stipulations, Orders, and Filings Containing Any Determinations or Allegations That PFI Was a Ponzi Scheme Would Be Unfairly Prejudicial, Will Confuse the Issues, and Will Mislead the Jury.**

Under Federal Rule of Evidence 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  "Irrelevant evidence is not admissible." Fed. R. Evid. 402.  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or

more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Any probative value of the bankruptcy court stipulations, orders, and filings containing any determinations or allegations that PFI was a Ponzi scheme is substantially outweighed by the dangers of unfair prejudice, confusing the issues and misleading the jury. "Courts are generally hesitant to admit other judicial opinions or statements into evidence, even when relevant, because [j]udicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." *Cardinal*, 2010 WL 3339509, at *2 (citation and internal quotation marks omitted)); *see United States v. Bailey*, 696 F.3d 794, 801 (9th Cir. 2012) ("Admitting the [SEC] complaint may have permitted the jurors to succumb to the simplistic reasoning that if the defendant was accused of the conduct, it probably or actually occurred. Such inferences are impermissible.").

### III.   CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to exclude any bankruptcy court stipulations, orders, and filings containing any determinations or allegations that PFI was a Ponzi scheme.

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE THE ALFARO**

**DECLARATION**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

1

## I.     INTRODUCTION

Throughout this litigation, Plaintiffs have attempted to rely on the Alfaro Declaration, which is a hearsay statement reciting the expert opinions Mr. Alfaro reached for PFI's bankruptcy case after spending thousands of hours analyzing PFI's financial records.  Umpqua moves this Court for an order *in limine* precluding Plaintiffs from offering the Alfaro Declaration into evidence.

## II.     ARGUMENT

### A.     The Alfaro Declaration is Hearsay, Not Subject to Any Exception, and Should Be Excluded.

"Hearsay is a statement that a declarant 'does not make while testifying at the current trial or hearing' and is 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v. Morales*, 720 F.3d 1194, 1201 (9th Cir. 2013) (quoting Fed. R. Evid. 801(c)).  Hearsay statements are inadmissible unless a rule or statute holds otherwise.  Fed. R. Evid. 802.  Under Federal Rule of Evidence 805, if a statement contains multiple layers of hearsay, "[e]ach type of statement must satisfy an exception to the rule against hearsay in order to be admitted for its truth."  *Morales*, 720 F.3d at 1201.

Rule 803(6)'s hearsay exception for business records provides that a hearsay record is admissible if it was "'(1) made by a regularly conducted business activity, (2) kept in the 'regular course' of that business, (3) 'the regular practice of that business to make the memorandum,' (4) and made by a person with knowledge or from information transmitted by a person with knowledge." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984) (quoting *Clark v. City of Los Angeles*, 650 F.2d 1033, 1036–37 (9th Cir. 1981)).  If the party opposing the evidence shows "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness," such records are not admissible.  Fed. R. Evid. 803(6)(E). "[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness" and is inadmissible. *Paddack*, 745 F.2d at 1258–59.

Umpqua moves the Court for an order excluding the Alfaro Declaration, which was submitted in PFI's bankruptcy case "to provide background and other relevant financial, accounting, and operational information [] to assist Michael Goldberg, . . . in his determination of whether or not the

9

Company was operated as a Ponzi scheme. . . ." Holmes Decl., Ex. 6 ("Alfaro Decl." or "Alfaro Declaration"), ¶ 2.   In these hearsay statements, Mr. Alfaro, a Senior Managing Director at FTI Consulting, purported to recount what undisclosed and unproduced PFI financial records evidenced regarding certain aspects of PFI's financial condition, solvency, and the amount of each class member's claimed damages.  *See generally* Alfaro Decl.  Throughout this litigation, Plaintiffs have attempted to rely on the Alfaro Declaration, which Mr. Alfaro drafted for PFI's bankruptcy case after spending thousands of hours analyzing PFI's financial records.  *See, e.g.*, Plaintiffs' Motion for Class Certification, Dkt.  No. 80 (relying on Alfaro Declaration); Plaintiffs' Opposition to Umpqua Bank's Motion for Summary Judgment, Dkt.  No. 123 (same); Goldberg Report (same).

The Alfaro Declaration is hearsay and contains multiple levels of hearsay.  *See, e.g.*, Alfaro Decl., ¶ 17 (quoting from other declarations filed in the bankruptcy case).  Because it is hearsay and none of the exceptions for hearsay apply, the Alfaro Declaration should not be admitted into evidence. Plaintiffs may argue that the Alfaro Declaration is admissible under the business records exception to the hearsay rule.  In *Paddack*, the Ninth Circuit upheld the district court's decision to exclude documents related to a "special audit ordered in response to . . .  suspicion of irregularities."  745 F.2d at 1258.  Similarly, here, the Alfaro Declaration was drafted in response to Mr. Goldberg's suspicions that PFI was running a Ponzi scheme, Alfaro Decl., ¶ 2; there is no evidence in the record that PFI regularly investigated its own financial condition, solvency, or the amount of investors' claimed damages.  *See* Fed. R. Evid. 803(6) (business records are admissible if "kept in the course of a regularly conducted activity" and "making the record was a regular practice of that activity").  Furthermore, the Alfaro Declaration was drafted for the bankruptcy court litigation, specifically in the context of assisting Mr. Goldberg with obtaining a stipulated judgment to further the administration of the bankruptcy estate, and it therefore lacks indicia of trustworthiness.  *See Paddack*, 745 F.2d at 1259 (documents prepared for litigation lack indicia of trustworthiness).

For these reasons, Umpqua urges the Court to exclude the Alfaro Declaration as inadmissible under Federal Rules of Evidence 801, 802, 803, and 805.

### III.   CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to preclude Plaintiffs from offering the Alfaro Declaration into evidence.

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE DAVID ALFARO FROM**

**OFFERING ANY EXPERT OPINION TESTIMONY**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## I.     INTRODUCTION

Plaintiffs claim that that Defendant Umpqua Bank ("Umpqua") aided and abetted third-parties Professional Financial Investors, Inc., Professional Investors Security Fund, Inc., and/or Kenneth Casey (collectively, "PFI") in conducting a Ponzi scheme and breaching certain fiduciary duties owed to Plaintiffs.  Plaintiffs have not disclosed David Alfaro as a testifying expert.  Umpqua moves this Court for an order *in limine* prohibiting Mr. Alfaro from offering any expert opinion testimony, should he be allowed to testify at trial.

## II.     ARGUMENT

**A.  Mr. Alfaro Should Not Be Allowed to Offer Any Expert Opinion Testimony**

The admissibility and scope of lay and expert testimony are governed by Federal Rules of Evidence 701 and 702.  Under the Rules, the "definitions of lay and expert opinions are mutually exclusive."  *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 677 (N.D. Cal. 2021).  Generally, lay opinions are limited to testimony consisting of the witnesses' personal knowledge of facts or events, perceptions, and opinions rationally based thereon.  Lay opinions are also "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c).  Experts, on the other hand, may testify to facts outside of their personal knowledge as the basis for their opinions, and expert opinions must be based on "the expert's scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a).

In *Zeiger v. WellPet LLC*, the court allowed the corporate representative of a pet food company to explain the role of an animal food and drug regulator association in the corporation's business, as well as the association's definition of certain terms and his understanding of how the association's guidance was promulgated.  *Zeiger*, 526 F Supp 3d at 678.  However, because the corporate representative was a lay witness, the court precluded testimony that company's pet food products satisfied that guidance because that testimony would involve an explanation of the chemical composition of pet food ingredients and how those ingredients were derived, all of which was specialized knowledge that required expertise. *Id.*  The court acknowledged although that "some particularized knowledge is within the ken of laypeople simply from performing their jobs," knowledge "acquired on the job" is not always admissible as lay opinion on that basis alone.  *Id.*

Therefore, according to the court, the corporate representative could not testify to opinions that "cross[ed] the line into 'scientific, technical, or other specialized knowledge,'" even if he acquired that knowledge through his work. *Id.*

"Federal Rule of Civil Procedure 26(a)(2)(B) requires the parties to disclose the identity of each expert witness 'accompanied by a written report prepared and signed by the witness.'" *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 26(a)(2)(B)). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly*, 259 F.3d at 1106; *see* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Plaintiffs have disclosed four testifying experts in this matter, including Michelle Herman, Senior Managing Director at FTI, and Michael Goldberg, sole director of PFI during its bankruptcy, and trustee of the PFI Trust.  *See* Holmes Decl., Ex. 7 (Declaration of Michelle Herman ("Herman Decl.")); Goldberg Report.  Plaintiffs have not disclosed Mr. Alfaro as an expert witness, although Umpqua expects that Plaintiffs may call him as a lay witness.  Umpqua therefore moves the Court for an order excluding Mr. Alfaro from offering any expert opinions or analysis.[1]  Like in *Zeiger*, Mr. Alfaro should be prohibited from offering opinions that "cross the line into 'scientific, technical, or other specialized knowledge,'" even if he acquired that knowledge through his work with FTI.  *See Zeiger*, 526 F Supp 3d at 678.  Such an order is critical here, because allowing Mr. Alfaro to testify to facts outside of his personal knowledge or to opinions based on his specialized knowledge as a Senior Managing Director at FTI Consulting would allow Plaintiffs to circumvent the requirements of Rule 26 and the mandatory exclusion sanction outlined in Rule 37.

---

[1] Mr. Alfaro has not been deposed in this matter, and it is therefore not clear what relevant fact testimony, if any, Mr. Alfaro could offer at trial. However, it appears Mr. Alfaro was hired by PFI to offer expert opinions in the bankruptcy court litigation and has no personal knowledge of the relevant facts or events underlying this matter. Umpqua therefore reserves its rights to request *in camera* review prior to any testimony Mr. Alfaro may offer at trial.

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

### III.   CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to prohibit Mr. Alfaro from offering any expert opinion testimony.

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE ANY EVIDENCE,**

**ARGUMENT, OR COMMENT ON DOCUMENTS WITHHELD PURSUANT TO SAR**

**PRIVILEGE**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

# I.   INTRODUCTION

By this motion, Umpqua seeks an *in limine* ruling excluding evidence, theories, and argument about materials covered by the suspicious activity report ("SAR") privilege.  12 C.F.R. § 353.  During fact discovery, Magistrate Judge Tse ruled that Umpqua was required to withhold "evaluative" documents related to whether Umpqua filed a SAR pursuant to the SAR privilege.  Despite that ruling tying Umpqua's hands on this subject, Plaintiffs intend to put this same privileged material at issue by offering testimony, theories, and argument (1) that Umpqua did not investigate PFI after Ken Casey died, and (2) related to how Umpqua employees supposedly failed to adequately investigate anti-money laundering alerts on PFI's accounts.  Plaintiffs then intend to argue that the absence of evidence on these points suggest that Umpqua was complicit in PFI's scheme and is therefore liable for "aiding and abetting" PFI's alleged fraud.

Given that Judge Tse has already ruled that Umpqua is prohibited (under threat of criminal penalty) from discussing these matters, the Court should prevent Plaintiffs from introducing argument or evidence on these matters.  Stated plainly, it would violate due process for Plaintiffs to use Umpqua's legal inability to discuss its investigative process to argue for an inference of liability.

# II.   ARGUMENT

## A.   The SAR Privilege Prohibits Banks from Disclosing Privileged Material.

Banks are required to file a SAR with the federal government "when they detect a known or suspected transaction related to money laundering activity or a violation of the Bank Secrecy Act." 12 C.F.R. § 353(g).[2]  SARs and any "information that would reveal the existence of a SAR" are confidential.  12 C.F.R. § 21.11(k).  Because it is the government that holds the SAR privilege, banks that are subpoenaed or otherwise requested to produce SAR-privileged information are *required* by federal law to assert the privilege, and can face civil and criminal penalties for improperly disclosing privileged material.  *Id.;* 31 U.S.C. § 5322, 31 C.F.R. § 1010.840.  "The SAR privilege is unqualified and cannot be waived."  *Banc of Cal. Nat'l Ass'n v. Fed. Ins. Co.*, 2023 WL 4155392, at *1 (C.D. Cal. Feb. 27, 2023); *see also* 31 U.S.C. § 5318(g)(1), (g)(2)(A).

---

[2] Judge Tse's orders cited to 12 C.F.R. § 21.11(k). That provision applies to national banks. Umpqua is a state-chartered bank. Accordingly, the provisions of the FDIC regulations pertaining to SARs are the applicable regulations, but they are substantially identical.

**B.     Judge Tse Ordered Umpqua to Withhold "Evaluative Material".**

During fact discovery, Plaintiffs sought documents protected by the SAR privilege.  Among other things, they sought all documents relating to alerts, reports, or notifications of suspicious activity within Umpqua's automated anti-money laundering ("AML") systems for PFI.  *See* Dkt. 47 at 3.  AML systems are third-party artificial intelligence systems that help detect potential money laundering activity by alerting based on pre-determined thresholds.

Subject to the protective order, Umpqua produced a spreadsheet identifying all available alerts on PFI's accounts.[3]  That spreadsheet identified 152 alerts that occurred between 2018 and 2021 for PFI accounts.  The spreadsheet shows the date of the alert, the entity triggering the alert, the "rule" name for why the alert triggered, the Umpqua analyst reviewing the alert, and the action taken on the alert.  Dkt. 47 at 3.  Umpqua originally withheld 136 other documents under a claim of SAR privilege.  *See* Dkt. 59 at 1.  However, after an in-camera review, additional documents deemed to be "information-gathering" were produced, while another 12 deemed to be "evaluative" were deemed privileged.  *Id.* at 2–3.  The SAR-privileged documents consisted of "Umpqua-prepared spreadsheets, investigation worksheets, related write-ups, and emails" that "suggest, directly or indirectly, that a SAR was or was not filed."  Dkt. 59 at 2.

Plaintiffs then attempted to relitigate Judge Tse's ruling, arguing that their expert, Catherine Ghiglieri, had told them any analyst notes should be produced because they "typically do not address whether or not a SAR will be filed."  *See* Dkt. 68 at 3.  Judge Tse disagreed and reiterated his prior ruling that analyst notes "were protected by the suspicious activity report privilege" and "Umpqua need not produce them."  *See* Dkt. 76 (Discovery Order, Feb. 2, 2022).

**C.     Despite Judge Tse's Privilege Ruling, Plaintiffs Intend to Introduce Theories, Evidence, and Argument Related to SAR-Privileged Information.**

Despite Judge Tse's rulings, Plaintiffs intend to introduce testimony, theories, and argument about these issues.  That includes arguing about how Umpqua's withholding of privileged documents should be construed as an inference of wrongdoing.

---

[3]  Umpqua used two AML systems during the times relevant to this litigation: Patriot Officer and Actimize.  Only the alerts for Actimize were available.

For example, Plaintiffs intend to have their banking expert, Catherine Ghiglieri, testify that it is "suspicious" that Umpqua did not produce "any internal documentation explaining why Umpqua decided to close each of the 146 alerts generated for PFI accounts between June 2018 and April 2020, or any of the likely hundreds of alerts generated by its previous automated monitoring system, Patriot Officer." Holmes Decl., Ex. 8 (Report of Catherine Ghiglieri ("Ghiglieri Report")) at 82. However, as Ms. Ghiglieri admitted at her deposition, this is based upon *her view* of what is covered by the SAR privilege. Holmes Decl., Ex. 9 (Expert Deposition of Catherine Ghiglieri ("Ghiglieri Depo.")) at 267:4–268:9; *id.* at 269:20–270:7; 270:14–24. She had not reviewed Judge Tse's discovery order on SAR privilege, *id.* at 268:11–20, which, as noted, *rejected* her view on the SAR privilege.

Plaintiffs also intend to introduce evidence about what Umpqua's AML analysts would have seen and concluded in investigating the alerts. *E.g.,* Ghiglieri Report at 84 ("In the course of investigating this alert, Umpqua's analyst would have pulled up the recent account activity for both Wallach's personal account . . . and the PISF Clearing Account . . . . The analyst would have seen the following activity[.]"); *id.* at 88 ("None of the transactions that Umpqua's analysts would have reviewed in the course of investigating this alert are consistent with legitimate activity[.]"); *id.* at 89 ("When the analyst investigating this alert reviewed the recent account activity . . . that analyst would have seen the following information."). Ms. Ghiglieri will opine that there was no "legitimate" reason for Umpqua's analysts to close the alerts without taking further action. *See id.* at 88, 92, 104, 106, 110–111; *see also id.* 96, 117–18. But Umpqua is prohibited under federal law from presenting evidence of what its AML analysts *actually* reviewed in their investigations and their *actual* reasons for closing the alerts. Without being able to present that evidence, Umpqua cannot defend itself against Plaintiffs' rank speculation.

Finally, Plaintiffs have argued that the lack of documentation regarding any investigation by an operations manager after PFI filed for bankruptcy suggests wrongdoing. Dkt. 144 at 10. Ms. Ghiglieri also intends to opine that Umpqua must not have performed an internal investigation of PFI because "Umpqua's document production in this case did not include any investigatory findings regarding the PFI Ponzi scheme." *See* Ghiglieri Report at 150. She then draws an inference of wrongful conduct from the lack of evidence: "The absence of any documented investigation or changes

1   to monitoring policies and procedures as a result of the PFI Ponzi scheme is highly unusual and further

2   indicates to me that Umpqua was aware of its complicity in the Ponzi scheme." *Id*.  The only evidence,

3   however, shows that Umpqua employees filed a report of unusual activity on PFI.  *See, e.g.*, Holmes

4   Decl., Ex. 10 (Deposition of Erika Brines ("Brines Depo.")) at 154:14–25.  Any evidence of the

5   resulting investigation is subject to the SAR privilege and would have been withheld.  *See* Dkt. 59.

6   **D.    Umpqua's Due Process Rights Would Be Violated If Plaintiffs Are Allowed to Present**
       **Theories, Evidence, and Argument Related to Privileged Information.**

7

8           If Plaintiffs are permitted to put on the above evidence, theories, and argument related to the

9   SAR-withheld materials, Umpqua's due process rights would be violated.  Here, because the unfair

10  prejudice to Umpqua is so grave, the Court can and should, in its discretion, exclude that evidence

11  because its probative value is so substantially outweighed.  Fed. R. Evid. 403.

12          Umpqua cannot present a meaningful defense without being able to introduce the "evaluative

13  material" protected by the SAR privilege.  If Plaintiffs are permitted to tell the jury about the above

14  theories, Umpqua would be in the untenable position of having to protect the government's privileged

15  information while not being able to respond to Plaintiffs' allegations with evidence of how it *actually*

16  investigated PFI.  The unfairness of that position is what has caused courts in similar circumstances to

17  dismiss entire claims because of a party's inability to defend itself.  For example, courts regularly

18  dismiss attorney malpractice cases when information necessary to a defendant's defense cannot be

19  disclosed because of a third-party claim of attorney-client privilege.  *See McDermott, Will & Emery*

20  *v. Superior Court*, 83 Cal. App. 4th 378 (2000); *Solin v. O'Melveny & Myers, LLP*, 89 Cal. App. 4th

21  451 (2001); *Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189 (2010); *Reilly v.*

22  *Greenwald & Hoffman, LLP*, 196 Cal. App. 4th 891 (2011).  Dismissal here is not required, but this

23  evidence has to be excluded.

24                                    **III.    CONCLUSION**

25          For these reasons, the Court should grant Umpqua's motion *in limine* to exclude evidence,

26  theories, and argument related to materials covered by the SAR privilege.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 5 TO PRECLUDE EVIDENCE OR ARGUMENT RE TRANSFERS TO PERSONAL ACCOUNTS**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

### I.   INTRODUCTION

By this motion, Umpqua seeks an *in limine* order excluding any argument or evidence about the allegedly suspicious nature of transfers from PFI's business accounts to the personal accounts of Ken Casey and Lewis Wallach as contrary to California Financial Code § 1451.

Section 1451 states that banks may presume debits initiated by an authorized signer are duly authorized and for a valid purpose, including debits payable to the authorized signers personally.  A long line of California cases holds that this statute "allows a bank to presume that the depositor authorized checks which are drawn by a corporate officer authorized to make withdrawals from the account, even when the officer draws the funds to his personal order" and this is true "'[r]egardless of whatever suspicion might have lurked in the mind of the tellers as to the destination of the proceeds . . . .'" *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 538 (1998) (quoting *Boston Ins. Co. v. Wells Fargo Bank & Union Trust Co.*, 80 Cal. App. 2d 59, 66 (1947)).

In contravention of this statutory mandate and case law, Plaintiffs intend to introduce evidence and argument about transfers from PFI's business accounts to the personal accounts of Ken Casey and Lewis Wallach.  They then intend to argue that these transactions suggest Umpqua knew about PFI's alleged fraud.  The Court cannot let Plaintiffs circumvent the controlling provisions of California law that define the scope of their claims in this fashion.

### II.   ARGUMENT

**A.   California Financial Code Section 1451.**

California Financial Code § 1451 states that banks may presume that any debit drawn on a deposit account initiated by an authorized signer is duly authorized and for a valid purpose, including specifically debits drawn to an authorized signer's personal account:

> When the depositor of a commercial or savings account has authorized any person to make withdrawals from the account, the bank, in the absence of written notice otherwise, may assume that any check, receipt, or order of withdrawal drawn by such person in the authorized form or manner, including checks drawn to his personal order and withdrawal orders payable to him personally, was drawn for a purpose authorized by the depositor and within the scope of the authority conferred upon such person.

Cal. Fin. Code § 1451.

By instructing banks to presume that transactions initiated by authorized signers are duly authorized and undertaken for a proper provision, Section 1451 sets forth the "long-standing principle first codified in the 1925 Bank Act . . . that banks have no duty to monitor withdrawals made by authorized parties in an authorized manner." *The Law Firm of Fox & Fox v. Chase Bank, N.A.*, 95 Cal. App. 5th 182, 201 (2023) (citing *Kurtz-Ahlers, LLC v. Bank of America, N.A.*, 48 Cal. App. 5th 952, 956 (2020)). This absence of a duty to monitor or police customer activity has been acknowledged and discussed at length in California case law dating back over 70 years. *See, e.g.*, *Boston Ins.*, 80 Cal. App. 2d 59; *Desert Berm. Props. v. Union Bank*, 265 Cal. App. 2d 146 (1968).

The Court of Appeal's decision in *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 538 (1998) provides illustrative guidance. *Chazen* rejected an attempt to hold a bank liable for failing to police its depositors or their deposit accounts. 61 Cal. App. 4th at 532. There, plaintiffs had purchased second mortgages, serviced by a mortgage loan broker, and plaintiffs lost over a million dollars from the broker's theft of mortgage payments that had been placed into trust accounts at defendant bank to be held for plaintiffs' benefits. *Id.* at 536. Plaintiffs sued the bank for negligence, arguing the bank had "'actual or constructive notice of the [broker's] conversion of [their] funds based upon irregular activities,'" which included "'overdrafts of funds in fiduciary accounts, numerous telephone transfers of large amount of funds from fiduciary accounts into general and personal accounts of the [broker], coupled with repeated overdrafts in personal and general accounts ....'" *Id.* at 536, 540. The California Court of Appeal rejected plaintiffs' arguments. *Id.* at 536–37.

Instead, it recognized that the California Financial Code[4] both allows "a bank to disregard adverse claims to accounts unless they are made in one of two authorized forms" and allows "bank[s] to presume that . . . checks which are drawn by a corporate officer authorized to make withdrawals from the account" are valid, "even when the officer draws the funds to his personal order." *Id.* at 538. It explained that banks have the right to rely upon these provisions and honor debits "'[r]egardless of whatever suspicion might have lurked in the mind of the tellers as to the destination of the proceeds . . . .'" *Id.* (quoting *Boston Ins.*, 80 Cal. App. 2d at 66). As *Chazen* explained, these provisions "play

---

[4] In *Chazen*, the court analyzed California Financial Code §§ 952, 953, which were subsequently renumbered as California Financial Code §§ 1450, 1451.

an essential role in carrying out contemporary policies favoring the expedited availability of funds." *Id.* at 539. "The present banking system under which an enormous number of checks are processed daily could not function effectively if banks were not required to make prompt and effective decisions on whether to pay or dishonor checks." *Id.* (quoting *L.A. Nat'l Bank v. Bank of Canton*, 31 Cal. App. 4th 726, 744 (1995)). They also protect the depositor's right to privacy. *Id.* at 538.

Based on these principles of California law, the *Chazen* court rejected the plaintiffs' allegations that the bank knew or should have known of the broker's conversion based on the irregular activities. *Id.* at 540. It recognized that "the inevitable result of these allegations would be to require banks to police fiduciary accounts so as to prevent breaches of fiduciary duty," but such a result would directly contradict the bank's obligations under the California Financial Code. *Id.* The California Financial Code, instead "obliged" the bank "to honor withdrawals from [the] accounts by authorized persons" and "required" the bank "to disregard notice of adverse claims to the account, including notice conveyed by circumstantial evidence or documents in the bank's possession, unless the claims are made through an appropriate affidavit or court order." *Id.* at 541. The *Chazen* court thus concluded "[t]hough the bank may be free to terminate the account, *it incurs no liability by failing to do so.*" *Id.* (emphasis added).

## B. Evidence or Argument About the Suspicious Nature of Transfers Between PFI's Accounts and Casey's and Wallach's Personal Accounts Would Violate Section 1451.

Here, Plaintiffs impermissibly want to introduce evidence of transfers between PFI's business accounts to the personal accounts of Ken Casey and Lewis Wallach to suggest that such transfers were indicative of wrongdoing and thus a basis for inferring that Umpqua had knowledge of PFI's scheme. The Court should exclude this evidence as contrary to California law.

Plaintiffs have repeatedly asserted throughout this action that Umpqua's alleged knowledge of the transfers from PFI accounts to the personal accounts of Casey and Wallach demonstrate Umpqua's aiding and abetting liability. Plaintiffs have asserted that "the backbone of [their] aiding-and-abetting claim" includes "Umpqua's knowledge that PFI was using newly deposited investor funds to . . . fund transfers to Casey's and Wallach's personal bank accounts." *See* Dkt. 162 at 20–21. And Plaintiffs introduced evidence at summary judgment to argue "[a]mong the indications that Umpqua knew PFI

24

and PISF were engaged in a fraudulent Ponzi scheme are . . . transfers of investor funds to Ken Casey's and Lewis Wallach's personal accounts." Dkt. 162-1, ¶ 24. To promote this theory, Plaintiffs have retained a banking expert, Catherine A. Ghiglieri, who has offered an opinion that "[t]here are numerous indications Umpqua knowingly assisted the PFI Ponzi scheme," including that "Umpqua employees personally conducted several of the illicit transfers of investor funds to Ken Casey's and Lewis Wallach's personal accounts."[5]  *See* Ghiglieri Report at 41–43.

This argument regarding these transfers to Casey's and Wallach's accounts directly contradicts Section 1451. For example, Ms. Ghiglieri opines that a bank is required "to inquire into the reason for the transaction" and "[o]nly if the stated reason for the transfer was a permissible and legitimate basis for transferring funds from that particular business account to a personal account, and only if that reason was consistent with the business and recent account activity, would it be permissible to approve a business-to-personal transfer." *See* Ghiglieri Report at 62–63. As another example, Ghiglieri also argues that Umpqua's employees "knew that the transfers were illicit" because there is no evidence "that Umpqua ever inquired into the reason for the transfers or that PFI ever provided a legitimate business reason." *See* Ghiglieri Report at 64.

Plaintiffs must be precluded from offering any evidence or argument of this point at trial because it is inconsistent with California law. Under § 1451, as a matter of law, Umpqua was entitled to presume these transfers were for legitimate business purposes.

### III.    CONCLUSION

For the reasons discussed above, this Court should preclude Plaintiffs from introducing evidence or argument regarding the allegedly suspicious nature of transfers from PFI's business accounts to the personal accounts of Ken Casey and Lewis Wallach.

---

[5] Umpqua is concurrently filing a *Daubert* motion challenging Plaintiffs' attempt to introduce certain of Ghiglieri's opinions. In this motion, Umpqua does not provide any argument of whether Ghiglieri's proposed opinions are proper. Umpqua instead merely cites to Ghiglieri's opinions to help illustrate the problem; which would arise even if Ms. Ghighlier's opinions are excluded.

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 6 TO PRECLUDE EVIDENCE OR ARGUMENT RE ALLEGEDLY SUSPICIOUS ACCOUNT TRANSACTIONS TO ESTABLISH UMPQUA'S KNOWLEDGE**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## I.   INTRODUCTION

Under California law, a bank has no duty to police activities on depositor accounts and cannot be held liable for failing to detect and stop illicit activity by its depositors.  A bank is instead instructed to ignore adverse claims to funds unless made in a specified form, and to presume that transactions undertaken by authorized signatories, including drafts made to the authorized signer personally, are duly authorized and drawn for a proper purpose.  As *Casey v. U.S. Bank N.A.*, 127 Cal. App. 4th 1138 (2005) explains, these principles "narrowly circumscribe[]" the permissible scope of a depository bank's prospective "aiding and abetting" liability under California law by limiting a bank's liability to circumstances when it had "actual knowledge" of a specific tortious scheme.  *See id.* at 1152.

Here, in contravention of this law, Plaintiffs intend to introduce evidence and argument at trial about how allegedly suspicious transactions can be used to establish Umpqua's liability for "aiding and abetting" under California law.  Among other things, they intend to introduce evidence and argument about (i) alleged "commingling" of funds between and among PFI's accounts and alleged use of new investor funds to pay existing investors; and (ii) account shortages or overdraft.  Plaintiffs intend to use this evidence to suggest that Umpqua had "actual knowledge" that PFI was perpetrating an alleged "Ponzi scheme."[6]  This is improper and this evidence and argument should be excluded.

## II.   ARGUMENT

### A.   Under California Law, A Depository Bank's "Aiding and Abetting" Liability Is "Narrowly Circumscribed" by the California Financial Code Principles Codifying How Banks Have No Duty to Police Customer Activity

The California Financial Code and settled California case law makes clear that depository banks have no duty to police activity on customer accounts and instead directs that they ignore adverse claims to a depositor's funds and presume that transactions initiated by authorized signers are duly authorized and drawn for a proper purpose.  *See Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 538 (1998); *Kurtz-Ahlers, LLC v. Bank of America, N.A.*, 48 Cal. App. 5th 952, 956 (2020).  Those

---

[6]  Umpqua recognizes that when this Court denied Umpqua's motion for summary judgment, it did so based on a finding that a triable issue of fact existed regarding Umpqua's actual knowledge of PFI's scheme. Dkt. 144 at 13.  In reaching that ruling, however, the Court did not address the permissible scope of evidence that may be presented to the jury to support such a finding—which is the distinct question presented here.

"no duty" principles, in turn, also cabin the permissible scope of a depository bank's prospective liability for "aiding and abetting" a customer's alleged misconduct.

*Casey* is the seminal decision in California on when depository banks may be liable for "aiding and abetting" a depository's tortious conduct. In *Casey*, the Court of Appeal grappled with whether, considering the controlling provisions of the California Financial Code codifying the principle that depository banks have no duty to police activity on customer accounts, depository banks may be held liable for "aiding and abetting" a customer's tortious conduct. 127 Cal. App. 4th at 1150–51. As that decision recognized, "California banking law makes clear that . . . the banks' alleged knowledge of the [depositors'] suspicious account activities—even money laundering—*without more*, does not give rise to tort liability for the banks." *Id.* at 1151. Rather, it is only if a bank had "actual knowledge" of its depositor's tortious conduct and knowingly assisted the same that liability "for aiding and abetting the theft (or breach of fiduciary duty)" would attach. *Id.*

To "reconcil[e] these competing principles within the sensitive context of a claim against a bank for aiding and abetting a customer's wrongdoing," the *Casey* court explained that "a strict application of the pleading requirement for the knowledge element of the aiding and abetting claim" is required. *Id.* at 1152. More specifically, it held that to allow an aiding and abetting claim to proceed, "a court must carefully scrutinize whether the plaintiff has alleged the bank had actual knowledge of the underlying wrong it purportedly aided and abetted" because it is only by "narrowly circumscrib[ing] [the claim] in this fashion, [that] such an aiding and abetting claim against a bank [becomes] a reasonable exception to the case law limiting bank duties to nondepositors." *Id.*

Applying this legal framework, the *Casey* court then explained why the trustee's reliance upon suspicious activity or transactions was insufficient to support a claim for aiding and abetting under California law because it did not establish that the depositor bank had actual knowledge of the specific scheme it allegedly helped facilitate. *Id.* at 1152–53. Specifically, the court acknowledged that the plaintiff had alleged that the defendant bank: (a) "knew *something* fishy was going on with the accounts opened by the [fraudsters]"; (b) permitted the fraudsters to open "accounts in the names of the Fraudulent Entities despite knowing these entities were not 'legitimate' businesses'" (c) "knew that the [fraudsters] were withdrawing money from these accounts with the use of forged checks and

28

checks that exceeded written limits"; (d) that the fraudsters "were carrying large, unreported amounts of cash out of the bank in 'unmarked duffel bags;'"; and (e) knew the fraudsters were "involved in a criminal or dishonest and wrongful enterprise and were, at the very least, laundering money." *Id.* at 1149.  However, it held that because a bank does not owe any duty to investigate an account holder's suspicious activities, a bank's knowledge of an account holder's "suspicious account activities—even money laundering" was insufficient to sustain an aiding and abetting claim. *Id.* at 1151.

In sum, *Casey* demonstrates that banks cannot be held liable, even for aiding and abetting liability, on the basis of "suspicious transactions alone."  But, as explained below, this is precisely what Plaintiffs are attempting to do here.  The Court should not let this happen.

**B.     Allegedly Suspicious Transactions Cannot Be Utilized To Establish Umpqua's Alleged "Actual Knowledge" of PFI's "Ponzi Scheme"**

Plaintiffs impermissibly want to prove Umpqua's alleged "actual knowledge" by introducing evidence and argument about allegedly "suspicious" transactions, including (i) alleged "commingling" of funds and the use of new investor funds to pay existing investors; and (iii) account shortages or overdraft.  This is revealed by Plaintiffs' pleading, summary judgment briefing, and expert reports. The Court should exclude this evidence as contrary to California law.

As *Casey* explains, under the California Financial Code, "a bank has no duty to prevent wrongdoing (such as commingling, improper disbursements, or misappropriation) in connection with fiduciary accounts." *Casey*, 127 Cal. App. 4th at 1151.  "'Instead, the bank is obliged under Financial Code section 953 to honor withdrawals from fiduciary accounts by authorized persons . . . and it is required by Financial Code section 952 to disregard notice of adverse claims to the account, *including notice conveyed by circumstantial evidence* or documents in the bank's possession, unless the claims are made through an appropriate affidavit or court order.  *Though the bank may be free to terminate the account, it incurs no liability by failing to do so*.'" *Id.* (quoting *Chazen*, 61 Cal. App. 4th at 541) (emphasis in original).

Thus, this Court should preclude Plaintiffs from introducing any evidence or argument about allegedly suspicious transactions, including Umpqua's alleged knowledge of the commingling of funds, account shortages, or overdrafts.

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

**C.   Because It Is Not a Basis to Impose "Aiding And Abetting" Liability, All This Evidence Is Irrelevant and Unfairly Prejudicial**

Because evidence or argument about supposedly "suspicious transactions" is not a basis for imposing liability upon Umpqua, even for "aiding and abetting" under *Casey*, all such evidence and argument should be excluded as both irrelevant and unfairly prejudicial under Rules 402 and 403.

Under Rule 402, only relevant evidence is admissible and "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Further, under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The Federal Rules of Evidence confer 'broad discretion on the trial judge to exclude evidence on any of the grounds specified in Rule 403.'" *JH Kelly, LLC v. Aecom Tech. Servs.*, 605 F. Supp. 3d 1295, 1303 (N.D. Cal. 2022) (quoting *United States v. Hearst*, 563 F.2d 1331, 1349 (9th Cir. 1977)).

As explained above, under California law, because the California Financial Code codifies how depository banks are not supposed to police activity on customer accounts, any evidence of purportedly suspicious transactions is both irrelevant and unfairly prejudicial. Stated plainly, such evidence is irrelevant because it has no tendency to prove or disprove any disputed issue in the case. Further, even if it was relevant, it would be unfairly prejudicial because it would risk conflating the issues for the jury and encouraging them to find liability not based upon any notion of "actual knowledge," but rather based upon an inapplicable negligence standard.

### III.   CONCLUSION

For the reasons discussed above, this Court should preclude Plaintiffs from introducing evidence or argument regarding allegedly suspicious account activity to establish Umpqua's alleged knowledge.

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 7 TO EXCLUDE ANY EVIDENCE, ARGUMENT, OR COMMENT ON OTHER DISPUTES AND LITIGATION INVOLVING UMPQUA BANK AND RELATED ENTITIES**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

# I.   INTRODUCTION

Plaintiffs claim that Umpqua Bank aided and abetted PFI in conducting a Ponzi scheme and breaching certain fiduciary duties owed to Plaintiffs.  Umpqua moves this Court for an order *in limine* precluding Plaintiffs from introducing any evidence, argument, or comment at trial regarding any disputes or litigation involving Umpqua Bank, Columbia Banking System, Circle Bank, their predecessors, or any other related entities, other than the present matter.

# II.   ARGUMENT

Pursuant to Federal Rules of Evidence 401, 402, and 403, Umpqua moves the Court for an order excluding the introduction of any evidence, argument, or comment at trial regarding any disputes or litigation involving Umpqua Bank, Columbia Banking System, Circle Bank, their predecessors, or any other related entities, other than the present matter.  Such evidence is not relevant to the present matter, would be unfairly prejudicial to Umpqua, and is likely to confuse the issues and mislead the jury.  *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

"Evidence of prior lawsuits should be excluded when the possible prejudice to a party outweighs any probative value."  *In re NFL's "Sunday Ticket" Antitrust Litig.*, No. ML 15-02668, 2024 WL 2264171, at *5 (C.D. Cal. Apr. 26, 2024) (quoting *Unicolors, Inc. v. Urban Outfitters, Inc.*, 686 F. App'x 422, 424–25 (9th Cir. 2017) (unpublished)).  "Courts generally exclude evidence of other lawsuits, even if the other lawsuits are related to the case before the court."  *Moore v. Rubin*, No. 17-CV-6404, 2020 WL 13573582, at *3 (E.D.N.Y. Jan. 31, 2020) (*citing Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 254 (S.D.N.Y. 2012)); *Bd. of Trustees of AFTRA Ret. Fund*, 860 F. Supp. 2d at 254 (S.D.N.Y. 2012) ("[C]ourts generally exclude evidence of other related lawsuits."); *Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037, 2014 WL 12719192, at *3 (N.D. Cal. Nov. 18, 2014) (ruling "the parties are prohibited from eliciting evidence or referring

to other courts' decisions, factual findings, or credibility assessments").  "Such evidence is excluded because the probative value of the existence of other lawsuits typically is substantially outweighed by the danger of unfair prejudice." *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11-cv-445, 2014 WL 12843521, at *3 (E.D.N.Y. Jan. 27, 2014); *see Woods v. Lecureux*, 110 F.3d 1215, 1219 (6th Cir. 1997) (upholding district court's decision to exclude documents from other litigation because it "was likely to be confusing and unfairly prejudicial").

Umpqua believes Plaintiffs may try to link this matter to prior Ponzi scheme-related litigation involving Umpqua or its predecessors.  *See* Holmes Decl., Ex. 11 at 2 (Matthias Gafni, *This Bay Area bank ignored $350 million Ponzi scheme despite 'obvious' fraud, lawsuit says*, S.F. CHRONICLE (June 12, 2023), *found at* https://www.sfchronicle.com/bayarea/article/ponzi-scheme-umpqua-bank-18139149.php).  Here, too, evidence of other litigation involving Umpqua Bank, Columbia Banking System, Circle Bank, their predecessors, or any other related entities is inadmissible.[7]  Such evidence is irrelevant: it has no probative value as prior disputes and/or litigation would involve different parties, different evidence, and different decisionmakers, and therefore has no "tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Even if such evidence were relevant, it is unfairly prejudicial to Umpqua, and likely to confuse the issues and mislead the jury, where such evidence of any other litigation will not assist the jury in determining the key elements at issue in this matter.  Rather, introducing evidence of other disputes and/or prior litigation that Umpqua and its predecessors have been involved in could lead the jury to decide the case not based on the evidence presented at trial.  *See, e.g.*, *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975) ("A jury is likely to give a prior verdict against the same defendant more weight than it warrants. The admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it.").[8]  And allowing

---

[7] Umpqua does not contend that testimony or documents produced during discovery in *Bagatelos v. Umpqua*, which was consolidated with the present matter per the Court's order on July 17, 2023, Dkt. 193, is inadmissible in this matter on the grounds articulated in the present motion.

[8] To the extent that Federal Rule of Evidence 404(b) applies to corporations, evidence of prior litigation also constitutes impermissible "other acts" evidence.  *See* Fed. R. Evid. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" except that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"); 22B Charles Alan

Plaintiffs to introduce "evidence of these prior allegations will result in mini-trials regarding these alleged instances of unrelated" litigation, which courts have held "will unduly delay these proceedings and may confuse the jury." *Fahmy v. Jay Z*, No. 2:07-cv-05715, 2015 WL 5680299, at *15 (C.D. Cal. Sept. 24, 2015); *In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865, 2022 WL 17582008, at *19 (N.D. Cal. Dec. 7, 2022) ("Admission of the SEC materials could create a 'mini-trial' in which Defendants would have to defend against both Plaintiff's claims and the SEC's now-dismissed claims."). Such evidence could lead the jury to "become bogged down in collateral issues and likely become confused about the issues to be decided." *See In re Catanella & E.F. Hutton & Co. Sec. Litig.*, No. CIV.A. 82-3176, 1988 WL 33440, at *2 (E.D. Pa. Apr. 8, 1988) (granting motions in limine to exclude evidence of prior customer disputes and prior judgment against defendant). Such evidence should therefore be excluded from trial.

## III.    CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* precluding Plaintiffs from introducing any evidence, argument, or comment at trial regarding any disputes or litigation involving Umpqua Bank, Columbia Banking System, Circle Bank, or any other related entities, other than the present matter.

---

Wright, *Federal Practice and Procedure* § 5234 (2d ed.) ("We think it safe to say that as of this writing the proper method of handling issues of corporate character remains an open question"); *compare Feighan v. Res. Sys. Grp. Inc.*, No. CV 20-03759, 2023 WL 4623123, at *10 (D.D.C. July 19, 2023) ("Applying Rule 404 to corporations is consistent with the interests served by the general bar on admissibility of character evidence since such evidence 'tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.'" (quoting Fed. R. Evid. 404 (advisory committee's note to 1972 proposed rules))) *with David Sansone Co. v. Waiaha Ridge LLC*, No. CV 20-00411, 2023 WL 6958813, at *3 (D. Haw. Oct. 20, 2023) ("Rule 404(b) applies to evidence of the character of a 'person,' not a corporation.").

1

2

3

4

5

6

7

8

9

10

11

12

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 8 TO PROHIBIT LAY WITNESSES FROM TESTIFYING ABOUT UMPQUA'S OR PFI'S ACTIONS IN THIS MATTER UNLESS THEY HAVE THE REQUISITE PERSONAL KNOWLEDGE**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## I.    INTRODUCTION

Plaintiffs claim that Umpqua aided and abetted PFI in conducting a Ponzi scheme and breaching certain fiduciary duties owed to Plaintiffs.  A key issue at trial will be PFI's alleged Ponzi scheme and Umpqua's actions and alleged knowledge.  During depositions, a number of plaintiffs offered their personal opinions about PFI's alleged Ponzi scheme and Umpqua's actions, even though they had no personal knowledge of such actions.  Therefore, Umpqua moves this Court for an order *in limine* prohibiting lay witnesses from testifying about Umpqua's or PFI's actions in this matter unless they have contemporaneous personal knowledge of said actions (including any testimony from any of the named plaintiffs, who had no dealings with Umpqua or knowledge of PFI's alleged fraud).

## II.    ARGUMENT

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony."  Fed. R. Evid. 602.  Lay witnesses may only testify to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Under Federal Rules of Evidence 401 and 402, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," and "[i]rrelevant evidence is not admissible."  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

During depositions, several plaintiffs testified about their opinions regarding Umpqua's liability and facts related to Umpqua, even though they had no relationship with Umpqua or personal knowledge of those facts.  *Compare* Holmes Decl., Ex. 12 (Deposition of Peter Bagatelos) at 42:24–43:2 ("And it seemed to me that the bank was very well aware of the volume and amount and number of monies going from accounts belonging to different investors."), *and id.* at 44:9–10 ("I don't think Umpqua did due diligence and was not careful."), *with id.* at 8:25–9:1 ("Q Have you ever had an

36

account at Umpqua Bank? A No."), *and id.* at 33:5–9 ("Q Have you ever spoken to anyone who works at Umpqua Bank? MS. ZEMAN: Objection. Vague and ambiguous. Overly broad. THE DEPONENT: Not that I am aware."); *compare* Holmes Decl., Ex. 13 (Deposition of Eva King ("King Depo.")) at 12:2–7 ("Q. (BY MR. LE) And what happened between the investors and PFI, do you believe, that Umpqua should have protected you from? MR. SCHRAG: The same objection. THE WITNESS: Failure to notice the lack of funds by PFI."), *with id.* at 30:13–19 ("Q. Did you ever learn about PFI from Umpqua? A. No. Q. Did you ever speak with anyone at Umpqua about whether or not you should invest in PFI? A. No. Q. Did Umpqua encourage you to invest in PFI? A. No."), *and id.* at 70:25–71:5 ("Did Umpqua play any role in your decision to invest in PFI? A. No. Q. Did you ever communicate with Umpqua about your decision to invest? A. No."). Some Plaintiffs also testified about their opinions about PFI's alleged Ponzi scheme, despite having no personal knowledge of the same. *Compare, e.g.*, King Depo. at 58:11–13 ("Q. Is it your opinion that PFI ran a Ponzi scheme? A. Yes.") *with id.* at 75:15–18 ("Q. When you made your investment with PFI, did you know that PFI was using new investor money to pay old investors? A. Absolutely not."). Mr. Goldberg also testified in his fact deposition that PFI was a Ponzi scheme, despite having no percipient knowledge of the same. *See* Holmes Decl., Ex. 14 (Fact Deposition of Michael Goldberg) at 71:4–6 ("This was one of the clearest Ponzi schemes or as clear as any Ponzi scheme I've ever been involved in.").

Given that the plaintiffs and Mr. Goldberg had no personal knowledge of Umpqua's actions or PFI's fraud, they should not be allowed to testify regarding what Umpqua or PFI did or did not do, or knew or did not know. Any such testimony would not be based on personal knowledge or "rationally based on the witness's perception." Fed. R. Evid. 701. Plaintiffs' testimony about Umpqua's actions is also irrelevant to this matter because it lacks a basis in fact and therefore has no "tendency to make a fact more or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. And even if such testimony were admissible, the probative value would be substantially outweighed by unfair prejudice to Umpqua, who would be forced to defend against individual Plaintiffs claiming they knew what Umpqua and PFI had done. Such testimony is also highly likely to confuse the issues and mislead the jury into crediting Plaintiffs' testimony in lieu of exercising independent judgment to assess Plaintiffs' claims. *See* Fed. R. Evid. 403.

### III.     CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to preclude lay witnesses from testifying about Umpqua's or PFI's actions in this matter unless they have contemporaneous personal knowledge of said actions (including any testimony from any of the named plaintiffs, who had no dealings with Umpqua or knowledge of PFI's alleged fraud).

1

2

3

4

5

6

7

8

9

10 **UMPQUA BANK'S MOTION *IN LIMINE* NO. 9 TO PRECLUDE LAY WITNESS**

11 **TESTIMONY REGARDING STANDARD OF CARE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## I.    INTRODUCTION

Plaintiffs claim that Umpqua aided and abetted PFI in breaching certain fiduciary duties owed to Plaintiffs.  A key issue at trial will be the standard of care that applies to PFI.  Plaintiffs should be excluded from offering lay witness testimony regarding the applicable standard of care because the standard of care of PFI is not within the common knowledge of a layperson, making layperson testimony impermissible under Federal Rule of Evidence 701.  Therefore, Umpqua moves this Court for an order *in limine* precluding any and all lay witness testimony regarding the standard of care that PFI owed Plaintiffs, if any.

## II.    ARGUMENT

Federal Rule of Evidence 701 limits lay witnesses' testimony to opinions that are, "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  If a matter is one within the knowledge of experts only, such as the standard of care in a professional industry, plaintiff must introduce expert opinion evidence.  *See U.S. Fid. & Guar. Co. v. Lee Invs., LLC*, 641 F.3d 1126, 1139 (9th Cir. 2011) ("California requires expert testimony on the standard of care 'unless the conduct required by the particular circumstances is within the common knowledge of the layman.'") (quoting *Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal. 4th 992, 1001 (1994)); *see also Miller v. L.A. Cnty. Flood Control Dist.*, 8 Cal. 3d 689, 702 (1973) ("If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case.").

In this action, Plaintiffs contend that Umpqua aided and abetted PFI in breaching PFI's duties as a professional fiduciary.  To prevail on this claim, Plaintiffs must first prove that non-party PFI breached its fiduciary duty to class members.  *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005) ("Liability may … be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered,

40

constitutes a breach of duty to the third person.") (alteration in original) (internal quotations omitted). In order to prove PFI breached its duties as a professional fiduciary, Plaintiffs must show that PFI's conduct fell below the applicable standard of care in the performance of its professional services. *See Wilkinson v. Rives*, 116 Cal. App. 3d 641, 647 (1981).

The applicable standard of care in the financial industry plainly falls under "technical, or other specialized knowledge" and thus requires expert testimony. *See e.g., Estate of Beach*, 15 Cal. 3d 623, 635 (1975) (noting that the liability of a bank, as a professional fiduciary, "must be determined by more stringent standards than would the liability of a lay executor" and therefore requires expert testimony); *Barrett v. JP Morgan Chase Bank*, No. 14-cv-2976, 2016 U.S. Dist. LEXIS 83950, at *15 (S.D. Cal. June 27, 2016) ("Since a bank's execution of wire transfers is not a matter of common experience such that the 'common knowledge' exception should apply, expert testimony is required to establish the standard of care in this case.").  The average layperson has neither the training nor experience regarding the standard of care that is owed by a real estate business to its investors. Consequentially, lay witness testimony regarding the standard of care is improper. *See* Fed. R. Civ. 701(c); *U.S. Fid. & Guar. Co.*, 641 F.3d at 1139.

### III.     CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to exclude any and all lay witness testimony regarding the standard of care Umpqua or PFI owes Plaintiffs, if any.

1

2

3

4

5

6

7

8

9

10

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 10 TO EXCLUDE ANY EVIDENCE,**

11

**ARGUMENT, OR COMMENT ON ANY SEC OR CRIMINAL COMPLAINTS OR**

12

**ALLEGATIONS MADE IN THE SAME**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## I.   INTRODUCTION

A key issue at trial will be whether PFI did, in fact, operate a Ponzi scheme, and if so, the duration and extent of such a Ponzi scheme.  The SEC and the Department of Justice filed at least five complaints and/or criminal informations against individuals and entities related to the alleged PFI Ponzi scheme, and Umpqua anticipates that Plaintiffs may try to introduce evidence related to those documents and allegations therein.  Any such evidence would be hearsay, not subject to any exception, and overly prejudicial to Umpqua.  Therefore, pursuant to Federal Rules of Evidence 402, 403, and 802, Umpqua moves this Court for an order *in limine* excluding any evidence, argument, or comment on any SEC complaints or criminal informations related to PFI.  This motion includes but is not limited to:

- the information in *United States v. Wallach*, 3:20-cr-00365 (N.D. Cal.), Dkt. 1, *see* Holmes Decl., Ex. 15 ("Wallach Information");
- the complaint in *SEC v. Wallach*, 3:20-cv-06756 (N.D. Cal.), Dkt. 1, *see* Holmes Decl., Ex. 16 ("Wallach Complaint");
- the complaint in *SEC v. The Estate of Kenneth J. Casey*, 3:21-cv-04164 (N.D. Cal.), Dkt. 1, *see* Holmes Decl., Ex. 17 ("Casey Complaint");
- the complaint in *SEC v. Romero*, 3:22-cv-02067 (N.D. Cal.), Dkt. 1, *see* Holmes Decl., Ex. 18 ("Romero Complaint"); and
- the complaint in *SEC v. Dow Rockwell LLC et al.*, 3:22-cv-02069 (N.D. Cal.), Dkt. 1, *see* Holmes Decl., Ex. 19 ("Rockwell Complaint").

## II.   ARGUMENT

### A.   The SEC and Criminal Complaints Related to PFI Are Hearsay, Not Subject to Any Exception.

"Hearsay is a statement that a declarant 'does not make while testifying at the current trial or hearing' and is 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v. Morales*, 720 F.3d 1194, 1201 (9th Cir. 2013) (quoting Fed. R. Evid. 801(c)).  Hearsay statements are inadmissible unless a rule or statute holds otherwise.  *See* Fed. R. Evid. 802.

The SEC complaints and criminal information against Lewis Wallach, the Estate of Ken Casey, Manuel Romero, Dow Rockwell LLC, Richard Dow Rockwell, and any other similar documents or the allegations contained therein are out-of-court statements and, if offered for the truth of the matter asserted, are hearsay.  *See Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05-cv-633, 2010 WL 11508761, at *10 (S.D. Cal. Jan. 27, 2010) ("The allegations and judgment in prior civil cases and regulatory

43

proceedings in general are out of court statements and therefore are inadmissible hearsay to the extent they are offered for the truth of the matter asserted.").

Additionally, no exceptions to the hearsay rule apply.  Although Plaintiffs may argue that the public records exception under Federal Rule of Evidence 803(8) applies, it does not.  *See* Fed. R. Evid. 803(8) (a "record or statement of a public office" is admissible in a civil case if it sets out "factual findings from a legally authorized investigation" and the opponent does not show a lack of trustworthiness).  Courts, including this one, have found that complaints and allegations therein do not fall under the public records exception.  *In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865, 2022 WL 17582008, at *19 (N.D. Cal. Dec. 7, 2022) (excluding SEC complaints as hearsay and concluding the public records exception did not apply); *Africano v. Atrium Med. Corp.*, No. 17-cv-7238, 2021 WL 4477867, at *2 (N.D. Ill. Sept. 30, 2021) ("But obviously, a complaint contains mere allegations, not factual findings.").  The court should exclude the SEC complaints and criminal information at issue here and any other similar documents as hearsay, not subject to any exception.

## B.   Admitting the SEC and Criminal Complaints Related to PFI Would Be Unfairly Prejudicial to Umpqua.

Under Federal Rules of Evidence 401 and 402, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," and "[i]rrelevant evidence is not admissible."  The court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

The SEC complaints and criminal information against Lewis Wallach, the Estate of Ken Casey, Manuel Romero, Dow Rockwell LLC, and Richard Dow Rockwell allege misappropriation of funds, commingling, and a "Ponzi-like scheme."  *See, e.g.*, Wallach Information, ¶¶ 6–10 (alleging a "scheme to defraud" from "a time unknown but no later than 2015, and continuing through in or about May 2020"); Wallach Complaint, ¶¶ 32–33 (alleging a "Ponzi-like" scheme from "September 2015 through May 2020"); Casey Complaint, ¶¶ 31–32 (alleging a "Ponzi-like" scheme from "September 2015

[through] May 2020"); Romero Complaint, ¶ 1 (alleging a "Ponzi" and/or "Ponzi-like" scheme); Rockwell Complaint, ¶¶ 21–22 (alleging a "Ponzi-like" scheme).

Admitting the SEC complaints or criminal information or the allegations contained therein would be unfairly prejudicial to Umpqua, because it would signal to the jury that such allegations actually occurred and supplant the role of the jury in this matter.  The Ninth Circuit has held that admitting an SEC complaint in a criminal matter "may have permitted the jurors to succumb to the simplistic reasoning that if the defendant was accused of the conduct, it probably or actually occurred." *United States v. Bailey*, 696 F.3d 794, 801 (9th Cir. 2012); *see also In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865, 2022 WL 17582008, at *18 (N.D. Cal. Dec. 7, 2022) ("The fact that the SEC complaints are 'virtually identical' to the case at hand increases the risk that the jury would impermissibly assume that Defendants are liable for the accused conduct and thus magnifies the unfair prejudice."). Admitting the complaints is also likely to mislead the jury and confuse the issues, given the variety of ways and time frames the various documents use to describe the alleged misconduct in this matter. The Court should exclude any evidence, argument, or comment on any SEC complaints or criminal information related to PFI as overly prejudicial under Rule 403.

### III.    CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to exclude any evidence, argument, or comment on any SEC or criminal complaints related to PFI or allegations made in the same.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 11 TO EXCLUDE ANY EVIDENCE, ARGUMENT, OR COMMENT ON ANY CONSENT DECREES, JUDGMENTS, OR PLEAS IN WHICH GUILT IS NOT ADMITTED**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## I.    INTRODUCTION

Plaintiffs claim that Umpqua aided and abetted PFI in conducting a Ponzi scheme and breaching certain fiduciary duties owed to Plaintiffs.  The SEC filed several complaints against related individuals and entities that resulted in consent decrees and judgments, including:

- the judgments in the SEC's proceedings against Lewis Wallach, *SEC v. Wallach*, 3:20-cv-06756 (N.D. Cal.), Dkt. 16, 54, *see* Holmes Decl., Exs. 20, 21 ("Wallach Judgments");
- the consent decree and judgment in the SEC's proceedings against the Estate of Ken Casey, *SEC v. The Estate of Kenneth J. Casey*, 3:21-cv-04164 (N.D. Cal.), Dkt., *see* Holmes Decl., Ex. 22 34 ("Casey Final Judgment and Consent Decree");
- the consent decree and judgment in the SEC's proceedings against Manuel Romero, *SEC v. Romero*, 3:22-cv-02067 (N.D. Cal.), Dkt. 8, *see* Holmes Decl., Ex. 23("Romero Final Judgment and Consent Decree"); and
- the judgments in the SEC's proceedings against Dow Rockwell LLC and Richard Rockwell, *SEC v. Dow Rockwell LLC et al.*, 3:22-cv-02069 (N.D. Cal.), Dkt. 46, 47, *see* Holmes Decl., Exs. 24, 25 ("Rockwell Final Judgments and Consent Decrees").

Umpqua moves this Court for an order *in limine* precluding any evidence, argument, or comment on any consent decrees, judgments, or pleas in which guilt is not admitted, because any such evidence would be hearsay, not subject to any exception, and overly prejudicial to Umpqua.

## II.    ARGUMENT

### A.    Consent Decrees, Judgments, and Pleas in Which Guilt is Not Admitted Are Hearsay, Not Subject to Any Exception.

"Hearsay is a statement that a declarant 'does not make while testifying at the current trial or hearing' and is 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v. Morales*, 720 F.3d 1194, 1201 (9th Cir. 2013) (quoting Fed. R. Evid. 801(c)).  Hearsay statements are inadmissible unless a rule or statute holds otherwise.  Fed. R. Evid. 802.  The consent decrees, judgments, or pleas in which guilt is not admitted and any other similar documents or the allegations contained therein are out-of-court statements and, if offered for the truth of the matter asserted, are hearsay.  *See Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05-cv-633, 2010 WL 11508761, at *10 (S.D. Cal. Jan. 27, 2010) ("The allegations and judgment in prior civil cases and regulatory proceedings in general are out of court statements" and therefore hearsay); *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987) (civil "judgments are . . . not to be usable in subsequent proceedings as evidence of the facts underlying the judgment; for as to those facts, the judgment is

47

hearsay"); *United States v. Wheeler*, No. 95-15852, 1996 U.S. App. LEXIS 8230, at \*7–8 (9th Cir. Apr. 2, 1996) (unpublished) (concluding that findings of fact in consent decree were inadmissible hearsay).

Although Plaintiffs may argue that the public records exception under Federal Rule of Evidence 803(8) applies, it does not. *See* Fed. R. Evid. 803(8) (a "record or statement of a public office" is admissible in a civil case if it sets out "factual findings from a legally authorized investigation" and the opponent does not show a lack of trustworthiness). The Ninth Circuit has held that because Rule 803 contains specific exceptions for other judgments, Rule 803(6) does not apply to general civil judgments. *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004). Similarly, consent decrees are also considered "judicial act[s]," rather than factual findings from investigations. *Africano v. Atrium Med. Corp.*, No. 17-cv-7238, 2021 WL 4477867, at \*2 (N.D. Ill. Sept. 30, 2021) (internal quotations omitted).

The court should exclude the Wallach Judgments, Casey Final Judgment and Consent Decree, Romero Final Judgment and Consent Decree, and Rockwell Final Judgments and Consent Decrees, and any other similar documents, as hearsay, not subject to any exception.

**B.      Consent Decrees Are Inadmissible Under Rule 408.**

"Rule 408 prohibits introduction of evidence of acceptance of consideration for compromising a claim to prove the validity of the claim." *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1055 (9th Cir. 2015). "The rule has been interpreted to bar admission of civil consent decrees to prove the governments' allegations." *Id.*; *see also Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2018 WL 10609658, at \*2 (N.D. Ill. Apr. 2, 2018) (concluding "consent orders are considered settlements for purposes of Rule 408"). Here, the Casey Final Judgment and Consent Decree, Romero Final Judgment and Consent Decree, and Rockwell Final Judgments and Consent Decrees, and any other similar documents, should all be excluded under Rule 408.

**C.      Admitting Into Evidence Consent Decrees, Judgments, and Pleas in Which Guilt is Not Admitted Would Be Unfairly Prejudicial to Umpqua.**

Under Federal Rules of Evidence 401 and 402, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of

consequence in determining the action," and "[i]rrelevant evidence is not admissible." Fed. R. Evid. 401, 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, the consent decrees and judgments at issue are not probative of any relevant issues in this case, because, as the Ninth Circuit has held, "[a]dmitting prior conduct charged but settled with no admission of liability is not probative of whether the defendant committed the prior conduct, much less whether he committed the conduct in question." *United States v. Bailey*, 696 F.3d 794, 800 (9th Cir. 2012). And, any probative value of the consent decrees, judgments, and pleas in which guilt is not admitted is substantially outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury. *See U.S. v. Sine*, 493 F.3d 1021, 1033–35 (9th Cir. 2007) ("jurors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder" and therefore "the use as evidence of facts as found in a judicial opinion can unfairly prejudice a party."); *Lewis v. Cnty. of San Diego*, No. 3:13-CV-02818, 2017 WL 11420279, at *2 (S.D. Cal. Mar. 10, 2017) ("Juries are likely to give undue weight to facts found by a judge in a previous case."). For these reasons as well, the Wallach Judgments, Casey Final Judgment and Consent Decree, Romero Final Judgment and Consent Decree, and Rockwell Final Judgments and Consent Decrees, and any other similar documents should be excluded under Rule 403.

### III.    CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to exclude any consent decrees, judgments, or pleas in which guilt is not admitted.

**MOTION *IN LIMINE* NO. 12 TO EXCLUDE ANY EVIDENCE, ARGUMENT, OR COMMENT ON UNPLED THEORIES**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## I.    INTRODUCTION

Over the four years this case has been litigated, Plaintiffs have consistently claimed that Umpqua aided and abetted PFI in conducting a Ponzi scheme and breaching certain fiduciary duties owed to Plaintiffs.  They should not now be able to change their claims and theories, on the eve of trial.  Therefore, Umpqua moves this Court for an order *in limine* precluding Plaintiffs from presenting any evidence, argument, or comment on unpled theories, under Federal Rules of Evidence 401, 402, and 403.

## II.    ARGUMENT

Pursuant to Federal Rules of Evidence 401, 402, and 403, Umpqua moves the Court for an order excluding the introduction of any evidence, argument, or comment at trial on any theory, claim or allegation not specifically set forth in Plaintiffs' First Amended Complaint.  *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Courts regularly grant motions to conform the evidence and theories at trial to match the operative complaint.  *See, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."); *Pac. Marine Ctr., Inc. v. Philadelphia Indem. Ins. Co.*, 248 F. Supp. 3d 984, 993–94 (E.D. Cal. 2017) (prohibiting plaintiff from introducing new theory of liability at trial where plaintiff "never moved to amend the complaint in order to attempt to expand its theory of liability, and the operative complaint simply does not allege" the new theory); *Accentra Inc. v. Staples, Inc.*, No. CV 07-5862, 2010 WL 8450890, at *6 (C.D. Cal. Sept. 22, 2010) (granting motion to prohibit plaintiff from pursuing new "theories or introduc[ing] evidence in support of these theories at trial" where "[t]hese theories were never pled in [plaintiff's] complaint, never provided in five iterations of [plaintiff's] infringement contentions, and not pursued during

1  discovery"); *see also U.S. Fid. & Guar. Co. v. Lee Invs*. *LLC*, 641 F.3d 1126, 1137 (9th Cir. 2011)

2  (concluding the district court "did not abuse its discretion in declining to allow the belated assertion

3  of an entirely new theory on the eve of trial, when discovery would have to be re-opened and the

4  theory was of dubious merit").

5      Over the four years that this case has been vigorously litigated by the parties, Plaintiffs have

6  consistently alleged that they believe Umpqua to be liable for aiding and abetting PFI's alleged Ponzi

7  scheme and alleged breaches of fiduciary duties to investors.  *See, e.g.*, First Amended Class Action

8  Complaint, Dkt.  41 ("FAC"), ¶¶ 57–65 (alleging that Umpqua is liable for aiding and abetting PFI's

9  alleged Ponzi scheme and breaches of fiduciary duty to investors); Plaintiffs' Motion for Class

10  Certification, Dkt. 160, at 16 ("Plaintiffs propose to try two similar causes of action on a classwide

11  basis: a claim for aiding and abetting fraud and a claim for aiding and abetting breach of fiduciary

12  duty.").  Given the robust motions practice, discovery, and other aspects of this litigation, permitting

13  plaintiffs to present evidence related to unpled theories at this late date would allow for irrelevant

14  evidence and be unduly prejudicial to Umpqua under Federal Rules of Evidence 401, 402, and 403.[9]

15      This motion includes but is not limited to any newly alleged fraudulent concealment theory.

16  Plaintiffs have begun referring to a fraudulent concealment theory in briefing and expert reports on

17  the eve of trial.  *See* Goldberg Report, ¶ 24; Plaintiffs' Opposition to Umpqua's Motion for Summary

18  Judgment, *Bagatelos* Dkt. 88 at 11 ("These practices are what both the Class Plaintiffs and the TIC

19  Plaintiffs claim make PFI liable for fraudulent concealment as well as for breach of fiduciary duty—

20  whether those practices are referred to as a Ponzi scheme or simply as a fraudulent scheme."); *see also*

21  Defendant Umpqua Bank's Reply in Support of Motion for Summary Judgment as to the Claims of

22  the *Bagatelos* Plaintiffs, *Bagatelos* Dkt. 89 at 5–9 (discussing how fraud and fraudulent concealment

23  are different claims).  Fraud and fraudulent concealment are separate claims under California law, with

---

[9] Umpqua recognizes that the pleadings will be supplemented by the upcoming Joint Pretrial Statement and Order, and would oppose any attempt by Plaintiffs to include new theories in that Statement and Order. *See* Guidelines for Final Pretrial Conference in Civil Jury Cases Before Chief District Judge Seeborg at 3, https://www.cand.uscourts.gov/wp-content/uploads/2023/03/Chief-Judge-Seeborg_s-Guidelines-for-Final-Pretrial-Conferences-in-Civil-Jury-Cases.pdf ("Binding Effect of the Joint Pretrial Statement and Order: The Joint Pretrial Statement and Order described above shall recite, directly above the signature lines of each party, the following: The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this cause, unless modified to prevent manifest injustice.").

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

different legal elements. *Graham v. Bank of Am.*, N.A., 226 Cal. App. 4th 594, 605–06 (2014) (describing the required elements for fraud and fraudulent concealment separately); *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 845 (2007) ("Claims for negligent misrepresentation and intentional concealment deviate from [the elements of fraud].")." For the reasons listed above, Plaintiffs should not now be allowed to allege a fraudulent concealment theory or any other unpled theory.

### III.    CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to exclude any evidence, argument, or comment on unpled theories.

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 13 TO EXCLUDE EVIDENCE OF**

**PLAINTIFFS' FINANCIAL HARDSHIPS**

## I.    INTRODUCTION

Plaintiffs claim that Umpqua aided and abetted PFI in conducting a Ponzi scheme and breaching certain fiduciary duties owed to Plaintiffs.  Umpqua moves this Court for an order *in limine* precluding Plaintiffs from introducing evidence, argument, or comment at trial regarding the past, present, or future financial hardships suffered by the class or individual class members.

## II.    ARGUMENT

Pursuant to Federal Rules of Evidence 401, 402, and 403, Umpqua moves the Court for an order excluding the introduction of any evidence, argument, or comment at trial regarding past, present, or future financial hardships suffered by the class or individual class members. Such evidence is not relevant to Umpqua's alleged liability or Plaintiffs' alleged damages, would be unfairly prejudicial to Umpqua, and is likely to confuse and mislead the jury. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Testimony by class members as to past, present, or future financial hardship or other evidence of the same is irrelevant and should be excluded under Federal Rule of Evidence 402.  Any financial hardship experienced by the class, named plaintiffs, or unnamed class members has no bearing on Umpqua's liability, which turns on whether Umpqua knew of the alleged Ponzi scheme and substantially assisted in the commission of the same.  Moreover, evidence of financial hardship is irrelevant to Plaintiffs' damages calculations in this matter. Plaintiffs intend to establish damages by presenting the expert testimony of Dan Salah.  Holmes Decl., Ex. 26 (expert report of Dan Salah ("Salah Report"), ¶ 1).  Using a database produced by PFI in this matter, Mr. Salah calculated each class members' alleged damages by identifying a class member's principal investment, and deducting from that sum the amount of all payments made to the class member by PFI and the PFI Trust. *See id.,* ¶ ¶ 20-37; *see also* Holmes Decl., Ex. 27 ("Plaintiffs' Rule 26(a)(2) disclosures") (seeking

55

economic damages).  As such, the only evidence relevant to Plaintiffs' damages theory is evidence of money paid and received.  Testimony of the class members or named plaintiffs as to their financial hardships or other evidence of the same has no tendency to prove or disprove the amounts paid and received.  *Rookaird v. BNSF Ry. Co.*, No. C14-176RSL2016, WL 1258388, *3 (W.D. Wash. Mar. 31, 2016) (where available relief did not include consequential damages, evidence regarding financial condition of plaintiff was not relevant to plaintiff's recovery).

Furthermore, any probative value of testimony as to individual class members' financial hardships would be greatly outweighed by the substantial likelihood of unfair prejudice to Umpqua. Evidence may be unfairly prejudicial under Federal Rule of Evidence 403 "when there is a significant danger that the jury might base its decision on emotion, or when non-party events would distract reasonable jurors from the real issues in a case." *Wright v. Watkins & Shepard Trucking, Inc.*, No. 2:11-CV-01575, 2016 WL 10749220 (D. Nev. Jan. 19, 2016) (citing *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985)).  Were Plaintiffs to offer testimony of the named or unnamed class members as to, for example, financial hardship suffered as a result of PFI's alleged Ponzi scheme, there is significant danger that the jury might base its decision on sympathy for Plaintiffs or some other emotional basis.  That would be legally impermissible and patently unfair in this derivative liability case, where the outcome turns on Umpqua's alleged knowledge of and assistance to the tortious conduct of another.  *See Layton*, 767 F.2d at 556 (evidence was properly excluded where emotional impact would divert jury's attention from the pertinent issues in the case); *Yates v. Sweet Potato Enters., Inc.*, No. C 11-01950, 2013 WL 4067783 (N.D. Cal. Aug. 1 2013) (prejudicial effect of "sympathy-inducing" evidence relating to plaintiff's general day-to-day hardships attributable to his disability substantially outweighed its probative value in action for denial of access under ADA); *Van Bumble v. Wal-Mart Stores, Inc.*, 407 F.3d 823, 826 (7th Cir. 2005) (evidence regarding the plaintiffs' relative wealth or poverty was irrelevant and would have been prejudicial to the jury's determination of damages).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to exclude evidence of the class's, named plaintiffs', and unnamed class members' past, present, and future financial hardships.

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 14 TO EXCLUDE EVIDENCE OF**

**UMPQUA'S FINANCIAL CONDITION**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## I.    INTRODUCTION

Plaintiffs claim that Defendant Umpqua aided and abetted PFI in conducting a Ponzi scheme and breaching certain fiduciary duties owed to Plaintiffs.  Umpqua moves this Court for an order *in limine* precluding Plaintiffs from introducing evidence, argument, or comment at trial regarding Umpqua's or its predecessors' financial condition, including financial size, revenue, and market capitalization,[10] as irrelevant and unfairly prejudicial to Umpqua.

## II.    ARGUMENT

Pursuant to Federal Rules of Evidence 401, 402, and 403, Umpqua moves the Court for an order excluding the introduction of any evidence, argument, or comment at trial regarding Umpqua's or its predecessors' financial size, revenue, and market capitalization. Such evidence is not relevant to Umpqua's alleged liability or Plaintiffs' alleged damages, would be unfairly prejudicial to Umpqua, and is likely to confuse and mislead the jury.  *See* Fed. R. Evid. 401 (evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible"); Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Evidence of Umpqua's or its predecessors' financial condition, including financial size, revenue and market capitalization, is not relevant to any of the issues in the case and should be excluded under Federal Rule of Evidence 402.  Courts, including this one, routinely agree that evidence of a defendant's wealth or financial status is not relevant unless the plaintiff is seeking punitive damages.  *See, e.g.*, *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4129193, at *4 (N.D. Cal. July 8, 2015) ("The Court finds that Defendant's and third parties' financial size, market capitalization, and overall revenue is of little probative value and would unfairly prejudice Defendant. . . ."); *Nanometrics, Inc. v. Optical Sols., Inc.*, No. 18-CV-00417-BLF, 2023 WL 7169549,

---

[10] Umpqua does not request that the Court exclude evidence regarding Umpqua's or its predecessors' deposits, as it appears from expert reports and other potential evidence that such evidence would be relevant and not overly prejudicial to Umpqua.

at *3 (N.D. Cal. Oct. 30, 2023) (granting motion to exclude evidence of defendant's "size, public company status, market capitalization, corporate transactions, or revenue, or to the parties' respective financing of litigation or ability to pay any damage award"); *cf. Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 549 (N.D. Cal. 2012) ("Under California law, three factors are considered relevant in determining whether a punitive damages award is excessive.  These are the degree of reprehensibility of the defendant's conduct; the amount of compensatory damages awarded; and the defendant's financial condition or wealth.") (citations omitted)); *Pearson v. Deutsche Bank AG*, No. 21-CV-22437, 2023 WL 2784966, at *2 (S.D. Fla. Apr. 5, 2023) ("Evidence of Deutsche Bank's assets, market capitalization, or other evidence implying Deutsche Bank is a wealthy company is excluded during the non-punitive damages phase of the trial").

Evidence of Umpqua's or its predecessors' financial condition, including its financial size, revenue, and market capitalization has no bearing on Umpqua's liability, which turns on whether Umpqua knew of the alleged Ponzi scheme and substantially assisted in the commission of the same. Moreover, evidence of Umpqua's or its predecessors' financial condition is irrelevant to Plaintiffs' damages calculations, and Plaintiffs are not seeking punitive damages. *See* Salah Report; *see also* Plaintiffs' Rule 26(a)(2) disclosures.

Furthermore, any probative value of testimony as to Umpqua's or its predecessors' financial condition would be greatly outweighed by the substantial likelihood of unfair prejudice to Umpqua. Evidence may be unfairly prejudicial under Federal Rule of Evidence 403 "when there is a significant danger that the jury might base its decision on emotion, or when non-party events would distract reasonable jurors from the real issues in a case." *Wright v. Watkins & Shepard Trucking, Inc.*, 2016 WL 10749220 (D. Nev. Jan. 19, 2016) (citing *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001)); *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985)). And this Court has recognized that evidence of a defendant's financial condition or size may "constitute an improper attempt to garner juror sympathy based on a 'David v. Goliath' argument unrelated to the merits of the action." *Nanometrics*, 2023 WL 7169549, at *4 ("Any relevance of the difference in the parties' sizes is substantially outweighed by the risk of unfair prejudice to Nanometrics of appearing as a 'Goliath' to Optical's 'David.'").

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

### III.   CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to exclude evidence of Umpqua's or its predecessors' financial condition, including financial size, revenue, and market capitalization.

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

1

2

3

4

5

6

7

8

9

10 **UMPQUA BANK'S MOTION *IN LIMINE* NO. 15 TO EXCLUDE THE FTI ACCESS**

11 **DATABASE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

# I.    INTRODUCTION

Umpqua seeks to exclude the Microsoft Access database (hereinafter "FTI Access Database") purporting to contain PFI's financial and investment records from evidence.  The FTI Access Database was prepared by PFI's retained experts at FTI Consulting, Inc. ("FTI") solely for purposes of this litigation.  It is not something that PFI maintained or utilized in the ordinary course of its business.  The FTI Access Database is instead a derivation of yet another "financial transactions database" (which was produced) that was again created by FTI solely for the purposes of yet another litigation— PFI's bankruptcy proceedings.  And, like the FTI Access Database, the "financial transactions database" is not maintained or utilized in the ordinary course of PFI's business.  It was instead created to administer PFI's bankruptcy by, among other things, calculating investor claim amounts.

The FTI Access Database is indisputably hearsay and Plaintiffs cannot cure the multiple hearsay problem they face through any hearsay exception.  That is because neither it, nor the underlying "financial transactions database" from which it was created, is a proper business record given that they were not created contemporaneously in the ordinary course of PFI's business and were instead made, years later, specifically for litigation.  Further, the Court previously excluded the underlying business records that were used to create the original "financial transactions database" that was prepared for PFI's bankruptcy proceedings, making Federal Rule of Evidence 1006 inapplicable.  For these reasons, Umpqua requests an order excluding the FTI Access Database from evidence at trial.

# II.    ARGUMENT

There can be no legitimate dispute that the FTI Access Database constitutes hearsay.  It is, by definition, "[a]n out-of-court statement offered to prove the truth of the matter asserted. . . ." *United States v. Lucas-Hernandez*, 102 F.4th 1039, 1043 (9th Cir. 2024).  As explained below, no valid hearsay exception applies to the FTI Access Database, and it must therefore be excluded.

## A.    The FTI Access Database Does Not Qualify Under the Business Records Exception.

The FTI Access Database does not satisfy the elements of the business records exception under Federal Rule of Evidence 803(6).  *First*, the FTI Access Database was not made at or near the time of the act in question.  Fed. R. Evid. 803(6)(A).  FTI was first retained by PFI on October 13,

2020 (through approval from the Bankruptcy Court) to convert PFI's unstructured business records into a "financial transactions database" that would be used in the bankruptcy proceeding to administer PFI's affairs.  Herman Decl., ¶¶ 12-13.  FTI subsequently created three iterations of a "Microsoft Access database" derived from the "financial transactions database" that were produced in this action.  *Id.*, ¶¶ 21–24.  The latest iteration is the FTI Access Database on which Dan Salah relies to formulate his opinions.  *Compare id.*, ¶ 24 *with* Salah Report, ¶ 22 n.29.  As Salah explains, the FTI Access Database "summarize[s] financial transactions between investors and [PFI] from January 1, 2007 through September 12, 2020."  Salah Report, ¶ 23.  In other words, the "financial transactions database" (from which the FTI Access Database is derived) was created over a decade after many of the transactions in question.  On that undisputed record, it cannot be said that the FTI Access Database was made at or near the time of the transactions in question.  *See U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1044 (9th Cir. 2009) (computer data base can be admissible as business record only if  "the underlying data was entered into the database at or near the time of each payment event"); *United States v. Catabran*, 836 F.2d 453, 457 (9th Cir. 1988) (to establish business records exception, authenticating witness would have to testify that "she put into the computer sales, inventory, payroll, and tax information on a current basis").

*Second*, the FTI Access Database is not a record kept by PFI in the ordinary course of its business.  Fed. R. Evid. 803(6)(B), (C).  This element is not satisfied because the FTI Access Database was not "made pursuant to established company procedures for the systematic or routine and timely making and preserving of company records, [or] relied upon by the business in the performance of its functions."  *Clark v. Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) (internal quotations and citation omitted).  Rather, the FTI Access Database was made specifically for the purposes of the bankruptcy litigation and more specifically  "to administer the company's affairs through bankruptcy and to make partial restitution to PFI's investors."  Herman Decl., ¶ 13.  PFI's bankruptcy filing could not be further from PFI's ordinary business activity.  *See In re Platinum Oilfield Servs., LLC*, No. 19-81492, 2020 Bankr. LEXIS 175, at *7–8 (Bankr. E.D. Okla. Jan. 22, 2020) (observing that "filing bankruptcy is not a routine business activity" and that "the filing of a Chapter 11 bankruptcy proceeding represents a radical departure from how any entity carries on its business outside of

bankruptcy") (citations omitted).  For similar reasons, the FTI Access Database is not a record kept in the ordinary course of FTI's business.  *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984) (holding audit reports were not business records of auditor because they were the result of "a special audit ordered in response to [plaintiffs'] suspicion of irregularities").

*Third*, given that the FTI Access Database and financial transactions database were both admittedly created specifically for the purposes of litigation, they are inherently untrustworthy.  Fed. R. Evid. 803(6)(E);  *Clark*, 650 F.2d at 1037 ("[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness.") (citations omitted).  The fact that the data underlying the FTI Access Database was originally created for purposes of a bankruptcy proceeding does not alter this analysis.  *Big Wheel Holding Co. v. Fed. Wholesale Co.*, 223 B.R. 669, 672 (Bankr. D. Del. 1998) (finding that a report was not a business record because it "was prepared in anticipation of filing [an] adversary proceeding").  Moreover, as explained by Umpqua's expert Jennifer Marietta-Westberg, the FTI Access Database contains numerous unexplained data inconsistencies that undermine its reliability.  Holmes Decl., Ex. 28 ("Marietta-Westberg Report"), ¶¶ 30-38.  These inconsistencies cannot be explained or tested because the "financial transactions database" from which the FTI Access Database was derived was not produced, and the unstructured data underlying the "financial transactions database" was excluded from evidence.  Dkt. 179 at 3-4.

**B.    The FTI Access Database Is Not a Rule 1006 Summary of Business Records**

Plaintiffs may contend that the FTI Access Database is admissible under Federal Rule of Evidence 1006 as a summary of voluminous writings.  Dkt. 106 at 12.  Because the Court excluded PFI's underlying business records (*see* Dkt. 179), Rule 1006 does not apply.  *United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979) ("the proponent of the [Rule 1006] summary must establish that the underlying materials upon which the summary is based are admissible in evidence. . . ."); *United States v. Aubrey*, 800 F.3d 1115, 1130 (9th Cir. 2015) (same).

### III.    CONCLUSION

For the reasons discussed above, this Court should exclude the FTI Access Database.

1
2
3
4
5
6
7
8
9
10

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 16 TO PRECLUDE MICHELLE HERMAN**

11

**FROM TESTIFYING AS AN EXPERT OR LAY WITNESS**

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## I.   INTRODUCTION

Through this motion, Umpqua seeks to preclude Michelle Herman from testifying as either an expert or lay witness.  The grounds for this motion are straightforward.  *First*, although Plaintiffs have been vague about whether they intended to designate Michelle Herman as an expert witness, the Declaration of Michelle Herman—served at the deadline for expert disclosures—makes clear that she is not offering any expert opinions.  Accordingly, given the requirements of Rule 26, Michelle Herman simply cannot testify as an expert witness or offer expert opinions in this case.  *Second*, to the extent Plaintiffs intend to offer Michelle Herman as a lay witness, the Declaration of Michelle Herman makes clear that the scope of her testimony would be limited to authenticating a "Microsoft Access database" that was produced by PFI in this action.  However, as set forth in Motion in Limine No. 15 ("MIL #15"), Umpqua is moving to exclude this "Microsoft Access database" on the grounds that it is inadmissible hearsay.  Thus, to the extent that MIL #15 is granted, Michelle Herman will have nothing to testify about.  For these reasons, Michelle Herman should be precluded from testifying at trial.

## II.   BACKGROUND

Umpqua previously moved to exclude a subset of PFI's underlying financial records (also referred to as the "unstructured data") because they were produced months after the close of fact discovery and Umpqua had been hamstrung by the late production of the same.  The Court granted that motion.  Dkt. 179 at 3-4.  In June 2023, a group of individual plaintiffs (represented by the same counsel representing that class in this action) filed the action *Bagatelos et al. v. Umpqua Bank*, Case No. 23-cv-02759-RS ("*Bagatelos* Action"), which was consolidated with this action.  The Court rejected Plaintiffs' attempt to introduce the "unstructured data" into evidence through the *Bagatelos* action, finding that even if "the documents would be properly the subject of discovery in *Bagatelos*, the fortuity of its filing is not basis to avoid the exclusion order in *Camenisch*."  Dkt. 197 at 2.

On May 3, 2024, Plaintiffs served the expert report of their damages expert, Dan Salah.  In offering his damages opinions, Salah relied exclusively on "five data tables" provided to him by PFI.  Salah Report, ¶ 22.  These data tables (hereinafter "FTI Access Database") were created by FTI Consulting, Inc. ("FTI"), the forensic accounting firm retained by PFI for purposes of PFI's bankruptcy proceedings.  *Id.*, ¶ 22 & n.29.  That same day, Plaintiffs also served the declaration of

Michelle Herman, a Senior Managing Director of FTI who was involved in the preparation of the FTI Access Database, to explain how the FTI Access Database was created. Herman Decl. The Herman Declaration does not contain any opinions, and Herman testified that she would not be offering any opinions at trial.  Holmes Decl., Ex. 29 ("Herman Depo.") at 16:22–17:8; 120:22–123:1.

### III.    ARGUMENT

### A.    Herman Should Be Precluded from Testifying as An Expert

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)(i), an expert's written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them[.]"  "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  Accordingly, the failure to comply with Rule 26 is grounds for excluding an expert from testifying.  *ClearOne Communs., Inc. v. Biamp Sys.*, 653 F.3d 1163, 1176 (10th Cir. 2011) ("As a general rule, when a party fails to comply with Rule 26(a)'s disclosure requirements, that party 'is not allowed to introduce the expert witness's testimony . . . at trial.'") (quoting *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008)).

The Herman Declaration—tellingly styled a "declaration" as opposed to a report—plainly fails to comply with Rule 26.  The declaration confirms that Herman's anticipated testimony is factual in nature and that she has not offered any expert opinions.  Herman explains that she was retained to "testify regarding [the FTI Access Database] that were produced by PFI" and that "PFI has identified [her] as the person most knowledgeable ('PMK') about the [FTI Access Database], and as such, [is] prepared to testify about their creation."  Herman Decl., ¶ 2.  Herman goes on to explain that her "expected testimony" is not based on any scientific, technical, or other specialized knowledge, as required under Evidence Rule 703, but that it is "based upon personal knowledge that I acquired while working as one of PFI's financial advisors."  *Id.,* ¶ 3.  Herman's anticipated testimony, which by her own admission is based on her personal knowledge, is not expert opinion.  It is fact testimony seemingly proffered to authenticate the FTI Access Database that was produced by PFI.  What is more, the Herman Declaration does not contain any opinions at all.  *See generally id.*  Thus, even if Plaintiffs attempted to offer Herman as an expert, Herman would be precluded from testifying due to the failure

to comply with Rule 26(a)'s disclosure requirements.  *See* Fed. R. Civ. Proc. Rule 37(c)(1); *Settrini v. City of San Diego*, No. 3:20-cv-02273, 2023 U.S. Dist. LEXIS 150785, at *8 (S.D. Cal. Aug. 25, 2023) (granting motion *in limine* precluding expert from offering opinions not covered in his Rule 26 report).

Although that should end the inquiry, Herman also admitted at deposition that she was only able to offer fact testimony.  When asked what opinions, if any, she would be offering at trial, Herman responded: "I don't know if my testimony will be considered an opinion or a fact-based testimony, but I would anticipate discussing the response to the subpoena that resulted in the three databases that we produced."  Herman Depo. at 17:1–5; *see also* 120:22–123:1 (confirming that she would not be offering any expert opinions).

For these straightforward reasons, Herman should be precluded from testifying as an expert.

**B.   Herman Should Be Precluded from Testifying as A Fact Witness**

Umpqua's MIL #15 seeks the exclusion of the FTI Access Database for a variety of reasons. As explained above, Herman's expected testimony solely concerns the creation of the FTI Access Database.  *See* Herman Decl., ¶¶ 2, 13–14, 22–23 (explaining how FTI was retained to create the "financial transactions database" and how FTI used it to create the FTI Access Database).  In other words, the sole purpose of Herman's expected testimony is to authenticate the FTI Access Database. But if the FTI Access Database is excluded, there is nothing left to authenticate, rendering Herman's testimony wholly irrelevant and devoid of any probative value.  *See* Fed. R. Evid. 402.  For the reasons stated in MIL #15, the FTI Access Database should be excluded, and as a result, Herman's testimony should be excluded as well.

## IV.   CONCLUSION

For the reasons discussed above, this Court should preclude Herman from testifying as an expert or lay witness.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UMPQUA BANK'S MOTION *IN LIMINE* NO. 17 TO PRECLUDE PLAINTIFFS FROM ELICITING TESTIMONY OR PRESENTING ARGUMENT THAT PFI OR ITS ENTITIES "COMMINGLED" FUNDS**

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS

## I.    INTRODUCTION

Umpqua moves to preclude Plaintiffs from introducing evidence and argument purporting to show that PFI improperly "commingled" funds between and among its various investment accounts. Plaintiffs intend to use such evidence and argument to suggest that the alleged "Ponzi scheme" affected all of PFI's investment offerings.  Such evidence and argument should be precluded because Plaintiffs lack the necessary evidentiary foundation to support such a contention.  Critically, Plaintiffs' claim that PFI "commingled" funds requires Plaintiffs to show that PFI was, in fact, obligated to keep funds separate—a showing that requires expert testimony.  But Plaintiffs have failed to offer sufficient expert testimony establishing how and why PFI would be obligated to segregate funds from different investors or investments.  Without admissible expert testimony to lay that foundation, Plaintiffs should not be permitted to present argument or evidence of "commingling" because it is irrelevant and would be unfairly prejudicial.

## II.    ARGUMENT

### A.    Expert Testimony Is Necessary to Establish the Existence of a Professional Duty to Segregate Funds and Any Breach of Such a Duty

"Commingling" is a fiduciary concept that arises when there is a duty to keep funds or assets separate, and that duty is breached.  *See Commingling of funds*, Black's Law Dictionary (6th ed. 1990) ("Commingling of funds" is defined as an "[a]ct of fiduciary in mingling funds of his [or her] beneficiary, client, employer, or ward with his [or her] own funds." (alterations in original)).  However, not all instances of combining funds constitute improper "commingling."  In the absence of a duty to segregate funds, the use of funds between affiliated entities can be entirely legitimate intercompany borrowing.  *See* Goldberg Fact Depo. at 77:22-78:2 ("Q. What is intercompany borrowing?  …  A. When you have typically related companies and money goes back and forth between the companies and you keep a due-to/due-from sort of ledger."); Holmes Decl., Ex. 30 (Expert Deposition of Michael Goldberg ("Goldberg Expert Depo.")) at 177:24–178:12 (stating he does not know whether there is a "specific regulation specifically governing PFI" that would require them to segregate money); Holmes Decl., Ex. 31 (Rebuttal Deposition of Catherine Ghiglieri ("Ghiglieri Rebuttal Depo.")) at 130:13–131:1 (recognizing intercompany borrowing as a legitimate business practice).

Expert testimony is required in cases involving complex professional duties and standards of care when the subject matter falls outside the common knowledge of jurors.  *See Unigard Ins. Group v. O'Flaherty Belgum*, 38 Cal. App. 4th 1229, 1239 (1995) ("[A]s a general rule the standard of care against which the professional's acts are measured remains a matter peculiarly within the knowledge of experts.  Only their testimony can prove it, unless the lay person's common knowledge includes the conduct required by the particular circumstances."); *see also Miller v. L.A. Cnty. Flood Control Dist.*, 8 Cal. 3d 689, 702 (1973) ("If the matter in issue is one within the knowledge of experts only and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case."); *Estate of Beach*, 15 Cal. 3d 623, 635 (1975) ("[p]roof of liability for failure to possess or exercise these professional attributes requires the testimony of a qualified expert where the claimed injury and its causes are beyond common knowledge.").

Whether an investment company is legally required to keep funds separate, or is instead engaged in legitimate intercompany borrowing, is beyond the common knowledge of jurors. Therefore, determining whether PFI breached a standard of care by engaging in improper commingling versus proper intercompany borrowing, requires expert analysis and testimony to guide the trier of fact.  *See Unigard Ins. Group*, 38 Cal. App. 4th at 1239; *Barrett v. JP Morgan Chase Bank*, No. 14-cv-2976, 2016 U.S. Dist. LEXIS 83950, at *9 (S.D. Cal. June 27, 2016) ("Since a bank's execution of wire transfers is not a matter of common experience such that the 'common knowledge' exception should apply, expert testimony is required to establish the standard of care in this case."). That is particularly true in the present case, given the complexity of PFI's business structure and operations and the intricate financial ecosystem comprised of various entities and investment types. The myriad of transactions, potential business purposes, and relationships between PFI's various entities responsible for promissory notes, deeds of trust, and LLCs create a financial ecosystem that is not readily comprehensible without specialized knowledge.

In this case, expert evidence is required to establish the duties, if any, owed by PFI to its investors and the applicable standard of care.

1

2

**B.      Because Plaintiffs Have No Admissible Expert Testimony to Establish Any Duty or Standard of Care Owed by PFI To Segregate Funds, Evidence or Argument Regarding "Commingling" Is Irrelevant and Unfairly Prejudicial**

3      Michael Goldberg and Catherine Ghiglieri—Plaintiffs' only two experts who could

4   conceivably provide duty of care testimony—cannot and have not provided any admissible evidence

5   establishing that PFI had a duty to segregate funds.

6      Goldberg is an attorney who is not qualified to say what an investment company should do,

7   why or when money needs to be segregated, and has not done a flow of funds analysis.  *See* Goldberg

8   Expert Depo. at 177:24–178:12 (stating he does not know whether there is a "specific regulation

9   specifically governing PFI" that would require them to segregate money); *id.* at 73:21–74:5 ("I did not

10  do the underlying forensic work on the accounting and the flow of funds.").  Similarly, Ghiglieri has

11  no opinions about whether PFI's funds should have been kept separate and has no opinion about who

12  owned the funds in PFI's account (i.e., whether those funds belonged to PFI or were instead fiduciary

13  funds that PFI was holding on behalf of another).  *See* Ghiglieri Rebuttal Depo. at 130:13–131:1

14  (recognizing intercompany borrowing as a legitimate business practice); *id.* at 147:12–20 ("Q. So

15  again the question is, you, you cabined your last answer by saying or your, actually your previous

16  answer, by saying that you're not offering an opinion about who owned the funds at the time of the

17  bankruptcy.  And I want to be clear that you're not offering any opinion about who owned the funds

18  that were in PFI's account at any point in time, right? MS. LAM: Asked and answered. A. Yes.")

19     Given that Plaintiffs have not offered any admissible expert evidence that goes to PFI's duties

20  or the applicable standard of care with respect to the segregation of funds, Plaintiffs have no basis to

21  suggest that PFI engaged in "commingling" or (even more remotely) that Umpqua had knowledge of

22  the same.  Accordingly, all such evidence or argument regarding "commingling" should be excluded

23  as irrelevant and unfairly prejudicial under Federal Rules of Evidence 402 and 403.  Under Federal

24  Rule of Evidence 402, only relevant evidence is admissible and "[i]rrelevant evidence is not

25  admissible."  Fed. R. Evid. 402.  Under Federal Rule of Evidence 403, "[t]he court may exclude

26  relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

27  following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

28  needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "The Federal Rules of Evidence

73

confer 'broad discretion on the trial judge to exclude evidence on any of the grounds specified in Rule 403.'" *JH Kelly, LLC v. Aecom Tech. Servs.*, 605 F. Supp. 3d 1295, 1303 (N.D. Cal. 2022) (quoting *United States v. Hearst*, 563 F.2d 1331, 1349 (9th Cir. 1977)).

And there is ample indication that Plaintiffs intend to offer such irrelevant and prejudicial evidence at trial. To that end, Ghiglieri's report cites two examples of PFI's alleged "commingling" that fall far short of reflecting improper "commingling." In her first example, Ghiglieri cites transfers from different entities to help fund a real estate purchase. Ghiglieri Report at 106–10. In her second example, Ghiglieri points to a collection of funds used to make payments to Payroll Resource Group (PRG), which was making distribution to investors. *See id.* at 111–18. But, without knowing whether PFI was required to keep such funds separate (or analyzing whether there could be a legitimate business justification for these transfers, such as rollovers, repayments of intercompany balances, pooling of funds for a disbursement, etc.), the jury should not hear about this alleged "commingling."

As explained, because Plaintiffs have not presented any expert testimony on whether PFI owed Plaintiffs a duty to keep certain funds separate or whether PFI breached that duty, any evidence or argument that PFI "commingled" funds is irrelevant and would serve only to prejudice the jury against Umpqua. Such evidence would be irrelevant because there is no evidence that PFI was even required to keep funds separate in the first place. Moreover, even if relevant, it would be unfairly prejudicial because it would risk conflating the issues for the jury, and in particular, conflating the distinction between improper commingling and legitimate intercompany transactions. It would also be prejudicial because the unsupported suggestion that PFI commingled funds and the negative connotations that come with it may encourage the jury to find that PFI engaged in a Ponzi scheme.

### III.   CONCLUSION

For these reasons, the Court should grant Umpqua's motion *in limine* to preclude Plaintiffs from eliciting testimony or presenting argument that PFI or its entities "commingled" funds.

1    DATED this 19th day of July, 2024.

2

3

4                                         STOLL STOLL BERNE LOKTING & SHLACHTER,
                                          P.C.

5

6                                         By: *s/ Lydia Anderson-Dana*
                                              **Keith Ketterling**, *Pro Hac Vice*
7                                             **Lydia Anderson-Dana**, *Pro Hac Vice*
                                              **Madeleine Holmes**, *Pro Hac Vice*
8                                             **Erin Roycroft**, *Pro Hac Vice*

9

10                                        209 SW Oak Street, Suite 500
                                          Portland, OR  97204
11                                        Telephone:  (503) 227-1600
                                          Facsimile:  (503) 227-6840
12                                        Email:      kketterling@stollberne.com
                                                      landersondana@stollberne.com
13                                                    mholmes@stollberne.com
                                                      eroycroft@stollberne.com

14                                        **Kasey J. Curtis**, SBN 268173
                                          **Kathryn M. Bayes**, SBN 334864
15                                        REED SMITH LLP
                                          355 South Grand Avenue, Suite 2900
16                                        Los Angeles, CA  90071
                                          Telephone:  (213) 457-8089
17                                        Facsimile:  (213) 457-8080
                                          Email:      kcurtis@reedsmith.com
18                                                    kbayes@reedsmith.com

19                                        **Charles P. Hyun**, SBN 307817
                                          REED SMITH LLP
20                                        599 Lexington Avenue, 22nd Floor
                                          New York, NY  10022
21                                        Telephone:  (212) 521-5400
                                          Facsimile:  (212) 521-5450
22                                        Email:      chyun@reedsmith.com

23                                        ***Attorneys for Defendant Umpqua Bank***

24

25

26

27

28

DEFENDANT UMPQUA BANK'S OMNIBUS MOTIONS *IN LIMINE*
Case No. 3:20-cv-5905-RS