Amy M. Zeman (SBN 273100)
Linda P. Lam (SBN 301461)
E. Wynne Tidwell (SBN 348179)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
 amz@classlawgroup.com
lpl@classlawgroup.com
ewt@classlawgroup.com

*Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELA CAMENISCH, et al.<br><br>Plaintiffs,<br><br>v.<br><br>UMPQUA BANK,<br><br>Defendant. | Case No. 5:20-cv-5905-PCP<br><br>**DECLARATION OF AMY M. ZEMAN IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Date: May 22, 2025<br>Time: 10 a.m.<br>Place: Courtroom 8, 4th Floor (via Zoom)<br><br>Judge: Hon. P. Casey Pitts |

I, Amy M. Zeman, declare:

1. I am a partner at Gibbs Mura LLP, one of the law firms appointed to represent the certified class in this lawsuit. I make this declaration based on personal knowledge and in support of Plaintiffs' motion for preliminary approval of the class settlement.

2. This case was first filed in August 2020, shortly after PFI's fraud was publicly exposed. Class Counsel actively prosecuted the case for nearly five years after that. We successfully defended the class's aiding-and-abetting claims against two motions to dismiss and two motions for summary judgment, obtained and evaluated more than 1.5 million pages of documents, and took or defended approximately 40 depositions.

3. We successfully moved for a class certification order permitting the class claims to be tried on a collective basis and resisted multiple efforts to partially or fully decertify the class, opposed three *Daubert* motions and numerous motions seeking to exclude key evidence supporting the class's claims, and presented the class's claims to a jury over the course of a four-week trial featuring more than thirty witnesses.

4. Prior to trial, the parties engaged in private mediation with two separate neutrals but remained far apart on their valuation of the class claims. Following trial, the Court directed the parties to participate in a mandatory settlement conference before Magistrate Judge Cousins. At the conclusion of the settlement conference, Judge Cousins made a mediator's proposal of $55 million, which both parties accepted. The parties subsequently memorialized the classwide settlement in a formal agreement, a true and correct copy of which is attached hereto as **Exhibit A**.

5. With Umpqua's input, Plaintiffs have selected Epiq Class Action and Claims Solutions to act as the Settlement Administrator, subject to Court approval, for purposes of notifying class members about the settlement and distributing the settlement fund. Plaintiffs solicited bids from Epiq and Angeion Group. Both administrators proposed notice by mail and e-mail, as well as distribution of settlement funds by check and presented competitive pricing. The parties ultimately selected Epiq because it was the administrator who distributed notice about class certification in 2023. Epiq has already demonstrated success with reaching class members, previously set up a website to keep class members apprised, and has been maintaining that website since it sent out class notice in 2023.

1

Zeman Decl. ISO Motion for Preliminary Approval
Case No. 5:20-cv-5905-PCP

6. As Epiq described in its Azari Declaration Regarding Notice Plan (Dkt. 170-2), it has robust procedures in place for keeping class member data secure. Epic protects client data with firewalls and intrusion prevention systems. It also deploys endpoint detection, response, and anti-virus solutions to its endpoints and servers, and requires multi-factor authentication to access its systems. Epiq's data centers are defended by CCTV, alarms, biometric devices, security guards, and formal ID requirements, 24 hours per day, 7 days per week. These centers also have robust environmental controls. Epiq employs security teams with trained and qualified professionals. Additionally, Epiq follows local, national, and international privacy regulations and holds several industry certifications, including TISAX, Cyber Essentials, Privacy Shield, and ISO 27001. Epiq employees routinely undergo cybersecurity training. All data provided to Epiq is only used for the purpose of providing administration services. Upon completion of a project, Epiq continues to host all data until otherwise instructed in writing by a customer to delete, archive or return such data. Epiq also accepts responsibility for errors that may arise in the course of disseminating notice and distributing settlement payments. It maintains adequate insurance for such errors.

7. If the Court preliminarily approves the settlement, Epiq will implement a notice plan that mirrors the plan that Judge Seeborg approved at class certification. Epiq will disseminate both Mailed Notice and Emailed Notice to the class using contact information provided by Class Counsel. Epiq reached approximately 99% of class members when it disseminated notice using the same two methods at class certification. That reach is likely to be the same or better here, as Class Counsel has been in contact with many class members since then, and has received better contact information for many of them.

8. The Mailed Notice is a long form notice that will be sent to all class members via U.S. mail. Epiq will first obtain address information from Class Counsel for all 1,219 class members, and then will update the addresses by running them through the U.S. Postal Service's National Change of Address database. After sending notice by first class mail to all class members, Epiq will make reasonable efforts to re-mail notices that are returned as undeliverable (including searching for better addresses using third-party data sources).

2

Zeman Decl. ISO Motion for Preliminary Approval
Case No. 5:20-cv-5905-PCP

9. The Emailed Notice includes all the same information that is in the Mailed Notice. As of this filing, Class Counsel has email addresses for 1,069 class members. The Email Notice will be drafted in such a way that the subject line, sender, and body of the message would overcome spam filters. The email will include easy-to-read text without graphics, tables, images, attachments, and other elements that increase the likelihood that the message would be blocked by an Internet Service Provider (ISP) and/or spam filters. The Email Notice will include an embedded link to the case website, where class members will be able to access additional information about the case. For any Email Notice that "bounces" back indicating that it was undeliverable, Epiq will make at least two additional attempts to deliver the Email Notice.

10. If the Court grants final approval of the settlement, Epiq will distribute the net settlement fund to class members. Class members will not need to file a claim to receive a settlement payment. They will automatically be mailed a settlement check within 14 days of the settlement's effective date. Epiq will make reasonable efforts to contact any class members who do not timely cash their settlement checks and ensure that each class member receives their portion of the settlement funds. If any settlement checks remain uncashed 60 days after the latest issued settlement check is stale, Epiq will send them to the unclaimed property fund for the state where the class member was last known to reside.

11. Over the last two years, my firm has engaged Epiq in the following cases: *In re: Midwestern Pet Foods Marketing, Sales Practices and Product Liability Litigation*, Case No. 3:21-cv-00007 (S.D. Ind.); *Belyea v. Greensky, Inc.*, Case No. 20-cv-01693-JSC (N.D. Cal.); *In re PG&E Corp.*, Case No. 19-30088 (Bankr. N.D. Cal.); *Georgia Carol Workman v. Park National Bank*, Case No. 22-CV-01217 (Licking Cnty. Ct., Ohio); *Matthew Levy, et al. v. Westfield Bank*, Case No. 3:24-cv-30004-MGM (D. Mass); *Tanya Owens, et al. v. MGM Resorts International, et al.*, Case No. 2:20-cv-00376-GMN (D. Nev.). We have also engaged Epiq in connection with two settlements of mass arbitrations against T-Mobile and AirBnB. We believe these are the only matters where either Class Counsel firm has worked with Epiq in the last two years.

12. Epiq estimates that it will charge $24,889 for all administration expenses, including disseminating notice and distributing settlement funds. The parties have agreed that all administration

3

Zeman Decl. ISO Motion for Preliminary Approval
Case No. 5:20-cv-5905-PCP

expenses will come out of the $55 million that Umpqua will pay to settle this case, though, as a practical matter, Class Counsel may pay some of Epiq's invoices directly and include a request for reimbursement of those payments in its motion for attorneys' fees and expenses.

13. Class Counsel intends to request attorney's fees of 25% of the entire settlement fund. Class Counsel has spent more than 22,500 hours prosecuting this case, and our lodestar using our typical hourly billing rates is $16,500,000. Thus, the requested fee of $13,750,000 would represent an approximate 0.83 multiplier of the present lodestar.

14. Class Counsel has also advanced over $1,300,000 in litigation expenses to date, which includes over $700,000 on expert witness fees. We intend to ask for reimbursement of these expenses from the gross settlement fund.

15. Class Counsel also intends to request a service award of $5,000 for each of the four class representatives. Each has devoted considerable time over the past several years to respond to written discovery requests, produce communications they have had with other investors, sit for lengthy depositions, and testify at trial.

16. This proposed settlement is the only agreement between the parties; there are no side agreements.

17. As part of Plaintiffs' motion for preliminary approval, Class Counsel has proposed a formula for allocating the net settlement fund among class members. That formula would allocate a pro rata share of the net settlement fund to each class member based on the ratio between (i) the class member's remaining net loss of principal and (ii) all class member's remaining net loss of principal. This is the same approach that was used to allocate proceeds among class members in the PFI bankruptcy, except that the allocation formula here considers only investments made on or after January 1, 2007. Based on Class Counsel's extensive communications with class members over the duration of this litigation, it is also the approach that class members expect and consider fair. Based on those communications, Class Counsel anticipate that class members would strongly object if any members of the class were to receive settlement compensation for prejudgment interest before all class members have fully recovered the full amount of their principal investments. The Notice that discloses Plaintiffs' proposed allocation methodology is attached hereto as **Exhibit B**.

4

Zeman Decl. ISO Motion for Preliminary Approval
Case No. 5:20-cv-5905-PCP

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 2, 2025                                     By: /s/ Amy M. Zeman
                                                           Amy M. Zeman

5

Zeman Decl. ISO Motion for Preliminary Approval
Case No. 5:20-cv-5905-PCP